# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ASTELLAS PHARMA INC., ASTELLAS IRE-
LAND CO., LTD., and ASTELLAS PHARMA
GLOBAL DEVELOPMENT, INC.,

          Plaintiffs,

    v.

LUPIN LTD., LUPIN PHARMACEUTICALS,
INC., ZYDUS PHARMACEUTICALS (USA)
INC., and ZYDUS LIFESCIENCES LIMITED,

          Defendants.

C.A. No. 23-819-JFB-CJB

**JURY TRIAL DEMANDED**



PUBLIC VERSION FILED: September 30, 2024

## ASTELLAS' RESPONSE TO LUPIN'S OBJECTIONS TO ORAL ORDER (D.I. 311) DENYING DEFENDANTS' MOTION TO BIFURCATE

## <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION ...................................................................................................1

II. BACKGROUND ....................................................................................................1

III. STANDARD OF REVIEW ....................................................................................2

IV. ARGUMENT ..........................................................................................................2

    A.  Lupin's Futile, New Arguments Violate D. Del.'s Standing Order.........................2

    B.  Bifurcation Will Not Enhance Judicial Efficiency .................................................3

    C.  Bifurcation Will Not Avoid Prejudice .....................................................................7

    D.  Bifurcation Will Not Enhance Juror Understanding................................................9

V.  CONCLUSION......................................................................................................10

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bd. of Regents v. Bos. Sci. Corp.*,
2022 WL 17403478 (D. Del. Dec. 2, 2022)................................................................7

*Briggs & Stratton Corp. v. Chongqing RATO Power Co.*,
2013 WL 5963151 (N.D.N.Y. Nov. 7, 2013) .............................................................4

*Dutch Branch of Streamserve Dev. AB v. Exstream Software, LLC*,
2009 WL 2705932 (D. Del. Aug. 26, 2009) ...............................................................7

*Evertz Microsystems Ltd. v. Lawo Inc.*,
2021 WL 706457 (D. Del. Feb. 23, 2021)..................................................................9

*Georgia–Pacific Corp. v. U.S. Plywood Corp.*,
318 F. Supp. 1116 (S.D.N.Y.1970)............................................................................6

*Green v. Fornario*,
486 F.3d 100 (3d Cir. 2007).......................................................................................2

*HASH Asset Mgmt. v. DMA Labs*,
2023 WL 4314077 (D. Del. July 3, 2023) .................................................................4

*In re Gabapentin Litigation*,
No. 2:00-CV-2931 (D.N.J. May 9, 2011), D.I. 1152..................................................8

*Mike's Train House, Inc. v. Broadway Ltd. Imports, LLC*,
2011 WL 1045630 (D. Md. Mar. 17, 2011)................................................................7

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
659 F.3d 1142 (Fed. Cir. 2011)..................................................................................7

*Sciele Pharma, Inc. et al. v. Lupin, Ltd. et al.*,
No. 09-37 (D. Del. May 11, 2012), D.I. 530 ....................................................4, 8, 10

*SenoRx, Inc. v. Hologic, Inc.*,
920 F. Supp. 2d 565 (D. Del. 2013).................................................................. *passim*

*Sprint Commc'ns Co. v. Charter Commc'ns, Inc.*,
2021 WL 982730 (D. Del. Mar. 16, 2021) .......................................................4, 8, 9

*Toro Co. v. SCAG Power Equipment*,
No. 8:01-CV-279-JFB (D. Ne. Jan. 24, 2003), D.I. 192...............................5, 9, 10

*Vytacera Bio, LLC v. CytomX Therapeutics, Inc.*,
   2022 WL 1448694 (D. Del. May 9, 2022)...............................................................3

**Statutes**

35 U.S.C. § 103........................................................................................................5

**Rules**

Fed. R. Civ. P. 72(a) ...............................................................................................2

## I.        INTRODUCTION

Defendant Lupin's objections to Judge Burke's Order denying Defendants' bifurcation motion are surprising for two reasons.  First, Judge Burke expressly states in his order that he "discussed the issue with the District Judge" who "does not find it efficient to bifurcate issues of damages and willfulness for discovery purposes" and "is not generally inclined to bifurcate damages issues at trial."  D.I. 311.  It was "in light of the District Judge's views," that Judge Burke denied "the Motion as it relates to bifurcation of discovery."  *Id.*  Second, Judge Burke's Order is fully supported by the case law in this District, which on the same facts reached the same conclusion— bifurcation is not warranted.  *SenoRx, Inc. v. Hologic, Inc.*, 920 F. Supp. 2d 565, 572 (D. Del. 2013).  Accordingly, there is no legitimate reason for Lupin to lodge these objections.[1]

Lupin, nonetheless, contends that Judge Burke's oral order is somehow erroneous, but fails to specifically identify what error was made by the Court.  Instead, Lupin presents arguments— including, impermissibly, new arguments—that "emphasize generalities rather than specifics, and do not demonstrate why this case (as opposed to many other patent cases in this District) warrants two trials."  *Id.* Bifurcation is "the exception, not the rule", and Lupin's arguments should be rejected.  *Id.* at 568.

## II.       BACKGROUND

Lupin and Zydus commercially launched their ANDA Products on April 19, 2024 and September 4, 2024 (Lupin's 50 mg ANDA Product).  Astellas then filed its First Amended Complaint on July 23, 2024, D.I. 279, adding claims for damages and willful infringement, and served Defendants with discovery on those claims.  Rather than providing substantive responses,[2] Defendants instead filed a motion to bifurcate liability from damages and willfulness. D.I. 296.  Following

---

[1] Zydus, notably, does not join in Lupin's objections.
[2] Zydus's refusal is the subject of Astellas' pending discovery dispute motion.  D.I. 295.

briefing from both parties—D.I. 297, 300, 305, 308—and having "discussed the issue with the District Judge," Judge Burke denied Defendants' motion.  D.I. 311.  Judge Burke explained that the District Judge "does not find it efficient to bifurcate issues of damages and willfulness for discovery purposes" and "is not generally inclined to bifurcate damages issues at trial." *Id.*  "[I]n light of the District Judge's views," Judge Burke denied "the Motion as it relates to bifurcation of discovery." *Id.*  Judge Burke also denied bifurcation of issues at trial "without prejudice to renew later in [the] case with the District Judge (if necessary) . . . when the parties' understanding of their trial-related presentations/evidence will be better developed." *Id.*

## III.    STANDARD OF REVIEW

Objections to a magistrate judge's ruling on non-dispositive motions must be affirmed unless the ruling is "clearly erroneous or is contrary to law."  Fed. R. Civ. P. 72(a).  Lupin does not argue that Judge Burke's Order is contrary to law.  And under the clearly erroneous standard, the ruling is only overturned when the reviewing court is "left with the definite and firm conviction that a mistake has been committed."  *Green v. Fornario*, 486 F.3d 100, 104 (3d Cir. 2007).  With respect to bifurcation, the moving party "has the burden of establishing that it is appropriate." *SenoRx*, 920 F. Supp. 2d at 567.

## IV.    ARGUMENT

### A.    Lupin's Futile, New Arguments Violate D. Del.'s Standing Order

Lupin's brief raises new arguments, none of which this Court should consider.  Despite certifying in its objections that it was not presenting any new legal/factual arguments, D.I. 326 at 9, as it was required to do under this District's Standing Order,[3] Lupin failed to present any of the

---

[3] The D. Del. Standing Order for Objections Filed Under Fed. R. Civ. P. 72 states that a "party filing objections with a District Judge to a Magistrate Judge's order . . . must include, along with the objections, a written statement either certifying that the objections do not raise new

arguments below to Judge Burke in its prior briefing (D.I. 297, 305):

(1) "[T]he posture of this case differs from many cases denying bifurcation because it involves . . . separate different, accused products."  D.I. 326 at 7.

(2) The complexity of the preliminary injunction proceedings is probative of juror confusion. *Id.* at 7-8.

(3) "At the discovery stage, Defendants would need to take discovery of each other with respect to damages issues." *Id.* at 7.

(4) "[T]he vast majority of information relevant to Astellas's damages case is Astellas's own information, which Astellas already possesses." *Id.* at 5.

(5) "Astellas's intention to present multiple damages theories involving lost profits, price erosion, and reasonable royalty significantly heightens the complexity the jury will face." *Id.* at 8.

(6) "While 'in some cases courts have considered the infringer's sales as evidence of commercial success, . . . this is generally because, unlike here, the patentee did not itself practice the patented invention.'" *Id.* at 5 n.1 (citation omitted).

(7) "Astellas also suggests that evidence regarding non-infringing alternatives will overlap between the proposed liability and damages phases. But the liability phase will look at whether Defendants' products infringe the asserted patent, whereas the damages phase would involve consideration of whether alleged alternatives to Myrbetriq are infringing. These are two separate inquiries." *Id.* at 5-6.

Courts in this district regularly disregard such late arguments, and so too should Lupin's arguments be rejected.  *See, e.g.*, *Vytacera Bio, LLC v. CytomX Therapeutics, Inc.*, 2022 WL 1448694, at *2 (D. Del. May 9, 2022) ("[T]he Court agrees with CytomX that Vytacera has waived this argument, as it is raised for the first time in connection with its Objections . . . .").

## B.    Bifurcation Will Not Enhance Judicial Efficiency

Lupin first contends that it is a foregone conclusion, based on this Court's preliminary injunction ruling, that the '451 Patent will be invalidated.  But this Court explained that it "may not have had all of the evidence on the question of definiteness that a judge might later have at trial . . . [and] the question before the Court [was] not whether Defendants have *proven* invalidity [by clear and convincing evidence], but instead only whether they have put forward a 'substantial

---

legal/factual arguments, or identifies the new arguments and describes the good cause for failing to previously raise the new legal/factual arguments before the Magistrate Judge."

question' of invalidity" to show the claims "are *vulnerable* to such charge."  D.I. 200 at 34-35.  It is thus incorrect for Lupin to conclude that it will prevail at trial (and so its bifurcation motion should be granted), given (i) the heightened "clear and convincing evidence" standard and (ii) the likelihood of additional evidence that was not before the Court.  The same argument Lupin makes here was rejected by another court, which acknowledged that a preliminary injunction is not dispositive.  *Briggs & Stratton Corp. v. Chongqing RATO Power Co.*, 2013 WL 5963151, at *3-4 (N.D.N.Y. Nov. 7, 2013) (finding that a preliminary injunction is a "preliminary review" with a lower standard that is not an "adequate showing with respect to the merits of [a party's] position on liability to support a stay of discovery on damages or bifurcation at trial"); *Sciele Pharma, Inc. et al. v. Lupin, Ltd. et al.*, No. 09-37 (D. Del. May 11, 2012), D.I. 530 at 27-28 (Ex. A) (finding Lupin's argument that it will prevail at trial is "irrelevant" to determining bifurcation).  In contrast, Lupin cites no support for the notion that a finding during the preliminary injunction phase is a reason to bifurcate.

Lupin's argument based on the hypothetical that a second trial on damages/willfulness would not be necessary if Defendants prevail on liability "is not enough to show that judicial economy would be served through bifurcation."  *Sprint Commc'ns Co. v. Charter Commc'ns, Inc.*, 2021 WL 982730, at *3 (D. Del. Mar. 16, 2021); *HASH Asset Mgmt. v. DMA Labs*, 2023 WL 4314077, at *2 (D. Del. July 3, 2023) (bifurcation would not conserve resources if the court is "required to oversee two discovery periods, two sets of summary judgment briefing, and potentially two trials").  First, bifurcating liability from damages/willfulness would result in discovery inefficiencies, as evidenced by the parties' dispute pending before this Court as to whether certain discovery falls into a liability or damages/willfulness category.  D.I. 295 at 2-3.  As this Court noted, "with two separate trials, it is not only possible, but probable, that repeated discovery

disputes will arise over whether requested discovery is related to liability, damages, willfulness, or all of these issues, thereby leading to extended delay, unnecessary paperwork, more legal fees, and increased judicial intervention." *SenoRx*, 920 F. Supp. 2d at 570.  Already, Zydus has refused to provide discovery on issues that are related to more than just damages.  For example, Defendants refuse to provide discovery concerning Defendants' decision to develop, launch, manufacture, and sell their ANDA products, even though such information is relevant to infringement and secondary considerations of nonobviousness.  D.I. 295 at 2.

Second, there is substantial overlap of evidence relevant to liability and damages/willful-ness, including with respect to commercial success, indirect infringement, and non-infringing al-ternatives.  For example, much of the evidence, including sales and profit information and wit-nesses Astellas will present regarding commercial success, overlaps with damages.  *See, e.g.*, D.I. 105 at ¶ 41 (Dr. Velluro's commercial success analysis).  Astellas' arguments are based, *inter alia*, on the sales and profitability of Myrbetriq®—the same evidence that would be used for cal-culating the damages Astellas' is owed in lost profits.  Likewise, because Defendants have launched their ANDA Products at-risk, their profitability and sales amount also demonstrate com-mercial success in addition to damages.

Lupin also argues that evidence relating to commercial success is less extensive from that needed to prove damages, glossing over the significant overlap in evidence, including information showing the amount of their sales, revenue, profitability, and market share.  Courts recognize that "at least some evidence regarding the commercial success of the products-at-issue, relevant to a determination of obviousness under 35 U.S.C. § 103, will overlap with evidence necessary to as-sess damages." *SenoRx*, 920 F. Supp. 2d at 569; *Toro Co. v. SCAG Power Equipment*, No. 8:01-CV-279-JFB (D. Ne. Jan. 24, 2003), D.I. 192 at 2-3 (Ex. B) ("To establish one element of

[obviousness], the defendants may need to offer evidence about the economic success of the patented invention—evidence that also goes directly to damages, but that would nevertheless become duplicative in a separate damages phase.").  Bifurcation would force the parties to educate a second jury about the patented technology to allow the jurors to determine damages,[4] use identical information and witnesses to rebut obviousness in the liability phase, show that Astellas' inventions were significant advances over the prior art for damages,[5] and present identical sales and profit information regarding Astellas' and Defendants' products to rebut invalidity and show damages.

Similarly, there is substantial evidentiary overlap between liability and willfulness.  Astellas anticipates that much of the same evidence it will present regarding the knowledge requirements for willfulness and indirect infringement will overlap, including that Defendants copied Myrbetriq®.  Defendants have both asserted, as their sole non-infringing alternative, each of their own ANDA Products: proving infringement will thus demonstrate lack of non-infringing alternatives.  If bifurcated, these aspects of the case will require re-educating a second damages and willfulness jury on at least Defendants' infringing products, the asserted patent and Myrbetriq®, and the parties' expert opinions on what does or does not infringe.  Given this "significant" evidentiality overlap, bifurcation is not appropriate.[6]  *SenoRx*, 920 F. Supp. 2d at 569 (finding efficiency

---

[4] *Georgia–Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) (listing "the nature of the patented invention . . . and the benefits to those who have used the invention" and "the utility and advantages of the patent property over the old modes" as factors in the determination of a reasonable royalty).

[5] For example, the food effect summary in Astellas' NDA shows that the Mirabegron sustained release formulation had a reduced effect as compared to the prior art immediate release formulation, which was associated with unwanted cardiovascular side effects.  This evidence shows advances over the prior art for damages as well as unexpected results for secondary considerations of nonobviousness.

[6] Lupin's contention that "the vast majority of information relevant to Astellas's damages case is Astellas's own information," is not true.  D.I. 326 at 8.  Astellas cannot put on a damages case without information uniquely in Lupin's possession, including Lupin's financial and marketing

is not served "the more that two bifurcated trials . . . tread the same legal and evidentiary ground").

### C.    Bifurcation Will Not Avoid Prejudice

Lupin fails to articulate with specificity why the jury here will be more prejudiced by willfulness or damages evidence—much of which will overlap with liability—than in any other patent case. Lupin's argument about the inflammatory nature of willfulness evidence or that Astellas will present inflated damages figures to the jury is speculative and premature at best, given that Defendants have refused to produce such evidence to date. D.I. 295 at 1. Lupin's bogeyman arguments are no basis to bifurcate.

Lupin also cites to a number of cases to suggest that presenting damages and willfulness evidence with liability will prejudice a jury in determining liability. But each of those cases is inapposite. For example, in *Mike's Train House, Inc. v. Broadway Ltd. Imports, LLC*, the Court found that there might be prejudice once Defendants' offer an advice of counsel defense. 2011 WL 1045630, at *3 (D. Md. Mar. 17, 2011). Unlike *Mike's Train*, ▌▌▌▌▌▌▌▌▌▌▌▌ ▌▌▌▌▌▌▌▌▌▌▌▌ and Lupin has refused to state whether it intends to or not. D.I. 301 at 3; Email from Samoneh Schickel, Dated August 5, 2024, at 4-5 (Ex. C). In *Bd. of Regents v. Bos. Sci. Corp.*, the Cout found that there would be a reduction in prejudice by bifurcating trial given plaintiff's trial narrative regarding willfulness. 2022 WL 17403478, at *3 (D. Del. Dec. 2, 2022). Unlike *Bd. of Regents*, it is premature for Lupin to hypothesize as to the parties' trial narratives, when Defendants thus far have failed to produce any evidence of willfulness. And in *Dutch Branch of Streamserve Dev. AB v. Exstream Software, LLC*, the Court took the position that

---

information, Lupin's evidence of non-infringing alternatives, features of Lupin's ANDA Product that drive customer demand, Lupin's licensing practices, and any agreements Lupin contends include technology comparable to that in Astellas' asserted patent. Lupin's argument also begs the question of how bifurcation of discovery would increase judicial efficiency and reduce prejudice if so little damages discovery from Lupin is necessary.

bifurcation is necessary in nearly every patent case.  2009 WL 2705932, at *1 (D. Del. Aug. 26, 2009).  Such a position was later rejected by the Federal Circuit and this Court.  *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1156 (Fed. Cir. 2011) (explaining the "dangers with [the district court's] hard and fast rule regarding such bifurcation"); *SenoRx, Inc. v. Hologic,* 920 F. Supp. 2d at 568 (explaining that bifurcation in patent cases is "the exception, not the rule").  Nonetheless, Lupin ignores that most courts find no prejudice in trying liability, willfulness, and damages together.  *See, e.g.*, *SenoRx, Inc.*, 920 F. Supp. 2d at 569; *Sprint*, 2021 WL 982730, at *2.

Moreover, Astellas should not have to shoulder "the harm" that it would face "from, *inter alia*, the 'inevitable delay, and resulting prejudice . . . of two separate trials.'"  *SenoRx*, 920 F. Supp. 2d at 568-69.  "[S]uch prejudice is real, and cannot be mitigated by any action short of denying the request for separate trials."  *Id.*; *see also Sprint*, 2021 WL 982730, at *3 (refusing to bifurcate liability from damages/willfulness); *SenoRx*, 920 F. Supp. 2d at 572 (same).

Lupin's additional contention that bifurcation is warranted because this case involves two different defendants with two different products lacks merit, when Courts have denied bifurcation when there are three defendants with three different products at issue.  *In re Gabapentin Litigation*, No. 2:00-CV-2931 (D.N.J. May 9, 2011), D.I. 1152 at 1-2, 5 (Ex. D) (denying bifurcation of damages and liability where three different defendants with three different products were at issue).

Finally, while Lupin now contends that it would need to take discovery of Zydus with respect to damages to present a unified case, Defendants previously argued in their bifurcation motion that they would not "be able to coordinate and consolidate presentations. . . for any of the damages or willfulness issues."  D.I. 305 at 1.  Nonetheless, multiple defendants are routinely sued in related cases and litigate side-by-side.  Defendants in such cases collaborate on issues of common interest and follow their own paths on issues that are unique to each defendant's case.  To the

extent Lupin is concerned about its commercially sensitive information being disclosed to Zydus, "additional measures or precautions can be inserted into the protective order to protect the parties' interests." *Sciele*, D.I. 530 at 52, 75, 76 (finding that the protective order insured Lupin's interest in not disclosing its "highly sensitive" information to competitors that were parties to the litigation, and noting "[t]his type of information is routinely discovered in patent cases").

### D.    Bifurcation Will Not Enhance Juror Understanding

Defendants again fail to identify anything unique about this case that distinguishes it from any other patent case in this district.  This case involves, at most, 6 claims in one patent and two extremely similar, infringing products.  This case is straightforward, and less complex than other cases where bifurcation of liability from willfulness/damages was denied.  *Toro*, D.I. 192 at 2 (rejecting defendant's argument that "this is a complicated suit" due to the "mechanical and engineering questions raised by the four patents" and explaining that "[i]f counsel properly order[s] the presentation of the evidence, using appropriate demonstrative exhibits, the jury will quickly comprehend the issues with regard to each patent"); *Sprint*, 2021 WL 982730, at *2-3 (denying bifurcation motion that involved nine patents, multiple technologies relating to VoIP telephony, and "complicated" infringement theories outlined in a 3,271-page expert report); *SenoRx*, 920 F. Supp. at 571 (denying bifurcation motion involving two asserted patents, 20 asserted claims, and medical device engineering and brachytherapy technology).  Lupin also cites to this Court's preliminary injunction hearing as evidence of this case's complexity.  But each party only had 3.25 hours at that hearing to present evidence relating to infringement/noninfringement, validity/invalidity, and irreparable harm/public interest.  D.I. 150.  Neither party will be so limited at a one-week trial.  D.I. 280 at 2.  While Defendants' Objections seek to describe this case as a monumental undertaking because of "complex" technical concepts, "in this district, juries routinely decide complex liability and damages issue at the same trial." *Evertz Microsystems Ltd. v. Lawo Inc.*, 2021

WL 706457, at *2 (D. Del. Feb. 23, 2021).

As to the complexity of damages, Lupin's contention that Astellas intends to present multiple damages theories is unfounded.  Because Lupin has yet to produce any damages documents in this case, it is premature for Astellas to determine which damages theory it intends to pursue at trial.  But even if Astellas pursues multiple damages theories at trial, that still provides no basis for bifurcating damages from liability.  *Sciele*, D.I. 530 at 7, 28-29 (denying bifurcation motion where plaintiffs put forth "consequential damages as well as lost profits and reasonable royalty").

This, along with Lupin's concession that "any loss suffered by Astellas is easily calculable," belies its concern that damages would be more complicated to understand here than in a typical patent case.  D.I. 120 at 19.  And, unlike many patent cases where at least 6 years of financial data is at issue, only about 1.5 years of financial data will be at issue here when the parties go to trial in September 2025, since Defendants launched at risk on or around April 19, 2024.  Lupin's argument that the jury will be required to understand "complex" damages issues in the context of the pharmaceutical industry has previously been rejected by other courts.  *Sciele*, D.I. 530 at 25-26 (rejecting Lupin's argument that damages were "complicated" in a pharmaceutical case, finding that "[i]f the mere existence of complex or difficult damage and/or liability issues was a sufficient justification to bifurcate a case, then bifurcation would be routinely granted in complex litigation and virtually all patent cases" ); *SenoRx*, 920 F. Supp. 2d at 571 ("[A]lthough calculating . . . damages is not easy, those are the computations that juries are often called upon to confront in a patent case."); *Toro*, D.I. 192 at 2 ("The defendants have also not convinced me that the damages calculations in this case are so complex that they merit a separate trial. Indeed, artificially separating damages from the infringement and invalidity issues might create evidentiary problems.").

## V.      CONCLUSION

For the foregoing reasons, Lupin's Objections should be overruled.

OF COUNSEL:

Simon D. Roberts
Jason A. Leonard
Jayita Guhaniyogi
Vincent Li
MCDERMOTT WILL & EMERY LLP
One Vanderbilt Avenue
New York, NY 10017-3852
(212) 547-5400
simonroberts@mwe.com
jleonard@mwe.com
jguhaniyogi@mwe.com
vli@mwe.com

Samoneh Schickel
MCDERMOTT WILL & EMERY
300 Colorado Street, Suite 2200
Austin, TX 78701
(512) 726-2600
sschickel@mwe.com

James F. Hurst, P.C.
Bryan S. Hales
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-2000
james.hurst@kirkland.com
bryan.hales@kirkland.com

Jeanna M. Wacker
Ashley Ross
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800
jeanna.wacker@kirkland.com
ashley.ross@kirkland.com

MCCARTER & ENGLISH, LLP

*/s/ Daniel M. Silver*
Daniel M. Silver (#4758)
Alexandra M. Joyce (#6423)
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, Delaware 19801
(302) 984-6300
dsilver@mccarter.com
ajoyce@mccarter.com

*Attorneys for Plaintiffs*
*Astellas Pharma Inc.,*
*Astellas Ireland Co., Ltd., and*
*Astellas Pharma Global Development, Inc.*

Diva Hollis
Ashley Cade
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 389-5000
diva.hollis@kirkland.com
ashley.cade@kirkland.com

# EXHIBIT A

```
 1              UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF DELAWARE
 2

 3    _____

      SCIELE PHARMA, INC., et al,
 4
               Plaintiffs,              CIVIL ACTION NUMBER:
 5
               -vs-                     09-37
 6
      LUPIN, LTD., et al,               Various Motions
 7                                      (D. T. 415, 409, 411)
               Defendants.
 8    _____
               Mitchell H. Cohen United States Courthouse
 9             One John F. Gerry Plaza
               Camden, New Jersey 08101
10             May 11, 2012

11    B E F O R E:            THE HONORABLE JOEL SCHNEIDER
                              UNITED STATES MAGISTRATE JUDGE
12

13    A P P E A R A N C E S:

14    Polsinelli Shughart
      By: Robyn Ast, Esquire
15
      Richards, Layton & Finger
16    By: Steven J. Fineman, Esquire
      Attorneys for Plaintiff Andrx
17
      Morris, Nichols, Arsht & Tunnell, LLP
18    By: Jack B. Blumenfeld, Esquire
              David D. Bassett, Esquire
19            Karen Jacobs Louden, Esquire

20    Wilmer Hale
      By: David B. Bassett, Esquire
21            Somil B. Trivedi, Esquire

22    Connell Foley
      By: J. P. Murphy, Esquire
23    Attorneys for Plaintiff Shionogi Pharma

24

25
```

1

2

3

**APPEARANCES CONTINUED:**

4

5

6  Kelley Drye and Warren
By: Beth D. Jacob, Esquire
7       Stephen A. Wood, Esquire
        Barrett R. McVary, Esquire
8       Clifford Katz, Esquire
Bayard
9  By: Richard D. Kirk, Esquire

10  Sterns & Weinroth
By: Karen A. Confoy, Esquire
11  Attorneys for Defendant Lupin, Ltd.

12  McGuire Woods
By: Timothy Kratz, Esquire
13
Morris James, LLP
14  By: Mary B. Matterer, Esquire
Attorneys for Defendant Mylan

15

16

17

18

19

20

21

22

23

24  Certified as true and correct as required by Title 28,
U.S.C., Section 753.
25
                    /S/ Theodore M. Formaroli, CSR, CRR

|  | 1 | THE COURT:  Good morning, everyone.  Please be |
| | 2 | seated. |
| | 3 | We're on the record.  This is the matter of Shionogi |
| | 4 | versus Lupin, et al, docketed District of Delaware 09-027. |
| 11:03AM | 5 | Can we have the entries of appearances starting with |
| | 6 | the plaintiffs. |
| | 7 | MR. BLUMENFELD:  Your Honor, Jack Blumenfeld from |
| | 8 | Morris Nicholes for Shionogi, along with Dave Bassett. |
| | 9 | MR. BASSETT:  Good morning, your Honor. |
| 11:03AM | 10 | MR. BLUMENFELD:  Karen Jacobs Louden, Somil Trivedi. |
| | 11 | MR. TRIVEDI:  Good morning, your Honor. |
| | 12 | MR. BLUMENFELD:  And P. J. -- |
| | 13 | MR. MURPHY:  P. J. Murphy, Connell Foley. |
| | 14 | MR. BLUMENFELD:  And Mr. Fineman will introduce the |
| 11:03AM | 15 | Andrx people. |
| | 16 | MR. FINEMAN:  Good morning, your Honor. |
| | 17 | Steven Fineman from Richards, Layton & Finger on behalf of on |
| | 18 | behalf of the Andrx plaintiffs.  And with me is Robyn Ast from |
| | 19 | Polsinelli Shughart. |
| 11:04AM | 20 | MS. AST:  Good morning. |
| | 21 | THE COURT:  Good morning. |
| | 22 | MR. KIRK:  Richard Kirk, Bayard, P. A, the Delaware |
| | 23 | counsel for the Lupin defendants.  My colleagues from Kelly |
| | 24 | Drye and Warren are Beth Jacob, Steven Wood, Clifford Katz and |
| 11:04AM | 25 | Barrett Mc Vary.  And our Garden State colleague is Karen |

| | |
|---|---|
| | 1 Confoy from Sterns and Weinroth. |
| | 2      MS. CONFOY:  Good morning. |
| | 3      THE COURT:  So you have local counsel for a Delaware |
| | 4 case. |
| 11:04AM | 5      MR. KIRK:  It's local counsel for the local counsel. |
| | 6      THE COURT:  New Jersey counsel for Delaware counsel. |
| | 7      MS. MATTERER:  Good morning, your Honor.  Mary |
| | 8 Matterer for the Mylan defendants.  And I have with me my |
| | 9 colleague.  Timothy Kratz from McGuire Woods. |
| 11:04AM | 10      MR. KRATZ:  Good morning. |
| | 11      THE COURT:  Okay.  Welcome, everyone. |
| | 12      There are three motions before the court.  The first |
| | 13 motion is the motion to bifurcate and stay.  If that motion is |
| | 14 granted, the other two motions become moot and we don't have |
| 11:05AM | 15 to address them.  If the motion is denied, we'll address the |
| | 16 second two motions.  So I think a good place to start -- |
| | 17      MR. BASSETT:  Actually, your Honor, if I could just |
| | 18 correct one thing for the plaintiff.  I don't believe that |
| | 19 even granting the bifurcation motion would moot Shionogi's |
| 11:05AM | 20 motion for protective order because that relates to contention |
| | 21 deposition notices that go well beyond damages.  So I don't |
| | 22 believe it would moot that.  So I wouldn't want the court to |
| | 23 have improper motivations to grant that motion to bifurcate. |
| | 24      THE COURT:  I appreciate your clarifying the court's |
| 11:05AM | 25 motivation.  But in any event, let's start with the motion to |

|  | | |
| --- | --- | --- |
| | 1 | bifurcate and stay and we'll clarify exactly what it is and |
| | 2 | isn't that Lupin is requesting, and then we'll see if that is |
| | 3 | granted if it does or not does not moot out the other two |
| | 4 | motions.  So, Lupin. |
| 11:06AM | 5 | MS. JACOB:  Your Honor, Beth Jacobs with Kelly Drye |
| | 6 | for the Lupin defendants in support of the motion to |
| | 7 | bifurcate; and if that motion is granted, then we would ask |
| | 8 | that damage discovery be stayed. |
| | 9 | THE COURT:  As to everyone in the case or just to |
| 11:06AM | 10 | Lupin? |
| | 11 | MS. JACOB:  Well, at the moment the only damages |
| | 12 | issues are as to Lupin because Mylan has not gone on the |
| | 13 | market.  We can't speak for them, but I don't believe there |
| | 14 | are damages issues with respect to Mylan, which in fact could |
| 11:06AM | 15 | be considered another reason why bifurcation makes sense, so |
| | 16 | that the liability issues for all the parties can move rapidly |
| | 17 | and that we can get resolution on liability without that |
| | 18 | having to be delayed to deal with the damages issues which |
| | 19 | were complicated after Lupin launched, but have become |
| 11:06AM | 20 | exceedingly more complicated since we went back on the market |
| | 21 | after the preliminary injunction was stayed.  We went back on |
| | 22 | the market, the authorized generic went back on the market. |
| | 23 | So we now have two generics plus the brand and the possibility |
| | 24 | that if Mylan gets final approval when it's 30-month stay |
| 11:07AM | 25 | expires this spring or summer, who knows what other possible |

*United States District Court*
*Camden, New Jersey*

|        |    |                                                              |
|--------|----|--------------------------------------------------------------|
|        | 1  | other complications.  But, it's complicated enough just with |
|        | 2  | the information we have and the parties we have.             |
|        | 3  | THE COURT:  Were the damage issues in the case ripe          |
|        | 4  | until -- I should say it this way.  Was the damages issue ripe |
| 11:07AM | 5  | before plaintiffs amended their complaint?                  |
|        | 6  | MS. JACOB:  Well, there wasn't a claim for damages,          |
|        | 7  | no.  There was no claim for damages in this case until       |
|        | 8  | plaintiffs amended their complaint.  There was the bond on the |
|        | 9  | preliminary injunction, which would have been our claim, but |
| 11:07AM | 10 | we actually did a little checking to see whether that was    |
|        | 11 | something we would have to amend our pleadings for and the   |
|        | 12 | case law says no, that's an accounting issue for the court.  |
|        | 13 | So there was no damages claim until January when plaintiffs  |
|        | 14 | amended their complaint.  They say it was in this case since |
| 11:07AM | 15 | September, but there was nothing to bifurcate before then and |
|        | 16 | they, for whatever reason, waited until the last day to amend |
|        | 17 | their complaint to add it.  Technically you could say really |
|        | 18 | issue wasn't joined until we answered, which was only about  |
|        | 19 | two months before we moved to bifurcate.  And in those       |
| 11:08AM | 20 | intervening two months there really was no damages discovery, |
|        | 21 | the parties were on the whole focused on the Federal Circuit |
|        | 22 | appeal.                                                      |
|        | 23 | There was an exchange of damages, as well as other          |
|        | 24 | discovery requests, but we have received no documents from   |
| 11:08AM | 25 | plaintiffs.  There has been no discovery production from     |

11:08AM

1   plaintiffs, although we had asked, since they did a production

2   in connection with the preliminary injunction proceedings back

3   in the fall, and we have not even 200 documents from Shionogi.

4   So most of the damages discovery, virtually all of the damages

5   discovery that Lupin needs in terms of documents is yet to be

6   provided from the plaintiffs.

7        In terms of witnesses, we identified in our reply

8   papers there are a half a dozen witnesses who are just damages

9   witnesses who have been identified so far.  There may be

10   additional damages witnesses.  Plaintiffs have put in their

11   initial disclosures that they are claiming consequential

12   damages as well as lost profits and reasonable royalty.  I'm

13   not sure that that is justified or they will be able to claim

14   that, but we can't avoid taking discovery on it just because

15   we believe that it shouldn't be allowed.

16        THE COURT:  Consequential being lost profits?

17        MS. JACOB:  No, being loss of jobs, effect on their

18   relationship with their parent, effect on pipeline products,

19   effect on research and development.  They've taken the issues

20   that they raised as irreparable injury on the preliminary

21   injunction and they now say that those are things that can

22   justify money damages.  So that's a whole other area of

23   discovery that would be needed for damages that is really not

24   in the case otherwise, certainly not with respect to

25   liability.

1          In terms of discovery from Lupin, we have produced

2    very little in terms of damages.  Some of Lupin's forecasts

3    have been produced, but otherwise the dispute now is over, and

4    we might get it or might not --

5          THE COURT:  Highly sensitive confidential business

6    information.

7          MS. JACOB:  Absolutely.  I mean, there is certainly

8    some additional discovery from Lupin in terms of our overall

9    numbers which, granted, is going to have to be produced either

10   on damages or on commercial success, different kinds of

11   documents on each of them, but that's a whole dispute that the

12   court doesn't even have to reach unless and until damages

13   become an issue in the case.

14          So there is really -- it's not as if we are making

15   this motion after damages discovery was underway, this motion

16   is being made really at the outset of damage discovery.  As we

17   sat down, looked at the case, looked at the discovery, you

18   know, thought maybe it would make a lot of sense to bifurcate.

19   And that lot of sense became even more sensible.  Once the

20   Federal Circuit stayed the injunction, we were able to go back

21   on the market.  One, because it makes damages a much bigger

22   part of the case, we have a lot more to discover, a lot more

23   detail, a lot more complicated calculations and

24   quantifications that would have to be done by our experts, but

25   also, you know, predicting success, I don't think we need to

1   predict success for bifurcation.  It is one of the elements,

2   and that was the other point I wanted to make.  The statute is

3   in the alternative.  The court has the discretion to grant

4   bifurcation and the cases support granting bifurcation if any

11:11AM   5   one of the considerations is met in the case.  There is no

6   requirement that all of them be found.  But in any event, we

7   think it's encouraging that we may never have to get to

8   damages.  The Federal Circuit's rapid action is some

9   indication -- obviously, one can't predict -- but it's some

11:11AM   10  indication that they believe that the preliminary injunction

11  shouldn't have been granted.  As we said in our papers,

12  plaintiffs didn't even move on the '859 patent.  And we can

13  get into some of reasons why we're confident of our case

14  there, if the court wants, on the specifics, but it does look

11:12AM   15  as if there is a possibility that either on the merits or

16  because the parties will resolve it if I'm wrong, that we may

17  never get to damages.

18          Another point I wanted to raise is the current

19  scheduling order and whether if damages is kept in this case

11:12AM   20  we will be able to continue and meet those deadlines.  And I

21  think the answer is quite clearly no.  At the moment that

22  scheduling order says fact discovery will end June 29th.

23  There has been pretty much no damages discovery yet and we're

24  not that far away from June 29th for such a big action.

11:12AM   25          Plaintiffs say that they will be prejudiced by delay,

11:13AM 1  but they have not behaved in the context of discovery as if

2  they are really eager to move this case quite rapidly.  We

3  don't have their documents, we don't have dates for their

4  witnesses, they haven't accepted or even responded to our

5  offering of dates for our witnesses.  That's not a ripe

6  complaint to the court.  We're fine to let the case progress

7  in a way that works for both sides, but if we're going to try

8  to do damages as well as liability we're not going to meet

9  that deadline.

10         THE COURT:  Has Lupin propounded damages discovery on

11  plaintiffs?

12         MS. JACOB:  We have, your Honor.  We have not

13  received any documents back, but when we did the document

14  requests they included extensive damages requests.  If it's

15  bifurcated, we will obviously withdraw those.

16         THE COURT:  Have you taken any depositions on

17  damages?

18         MS. JACOB:  No, your Honor.  There have been two

19  depositions in this case, both of the inventors, which are

20  both on liability.

21         THE COURT:  Where does liability discovery stand?

22         MS. JACOB:  From Lupin's perspective we have produced

23  I don't want to say all, but substantially all of the

24  documents that have been requested from us on liability.  I'm

25  sure that there will be some discussion we'll have to have

Case 1:09-cv-00037-RBK-JS Document 1034 Filed 08/30/24 Page 28 of 139 PageID #: 21268

1  with plaintiffs in terms of gaps that they perceive, which we

2  will work with them on.  When we made document production it

3  was pretty much intended to complete our production either the

4  end of last week or the beginning of this week, I don't

11:14AM  5  remember.

6        We have identified the witnesses who we believe are

7  responsive to the 30(b)(6) request that plaintiffs have

8  propounded.  We have also given them dates for all of the

9  other witnesses they requested.  There is only -- well, there

11:14AM  10  is one potential issue, it's not really an issue, there is one

11  witness who we don't think we can bring to the United States

12  and plaintiffs have agreed to hold off on requiring her

13  deposition until they see whether it's needed.  So while Lupin

14  witnesses, none of them have testified yet -- and, I'm sorry,

11:14AM  15  there was one additional deposition in connection with the

16  Markman of one of our experts.  So there have been three

17  depositions, none of them, either liability or damages, that

18  have gone forward.

19        Mylan depositions are happening as we speak, I

11:15AM  20  believe, but I believe -- although, they are all liability

21  depositions.  And, as I said, in terms of our depositions of

22  plaintiffs, we've had two inventors.

23        THE COURT:  The question I have of you is what is

24  unique or special about this case as opposed to the scores of

11:15AM  25  other patent cases that we have that necessitates bifurcation?

Case 1:23-cv-00378-RBK-SJB   Document 50-34   Filed 09/30/24   Page 29 of 139 PageID #: 21269
Case 1:23-cv-00379-RBK-SJB   Document 58-1   Filed 08/30/24   Page 29 of 138 PageID #: 9154

12

```
 1    And I don't think you can tell me that this case is

 2    complicated and there are going to be discovery disputes,

 3    because that's par for the course in every patent case.  And

 4    if that argument was accepted, then there would be a rule or a

 5    practice to bifurcate these cases, and that doesn't exist.

 6    Each case stands on its own and each case, you know, is

 7    fact-specific and the bifurcation analysis is fact-specific.

 8    So, what is it about this case that doesn't exist in other

 9    cases that warrants a bifurcation and stay of discovery?

10         MS. JACOB:  Your Honor, if I could just rephrase the

11    issue.  I don't think the issue is how does this case differ

12    from other patent cases, I think the issue is how is this

13    case -- how is bifurcation appropriate in this case, what is

14    complex about this case.  The fact that it it a patent --

15         THE COURT:  I disagree with you.

16         MS. JACOB:  Okay.  It is not the most complicated

17    patent case ever, no question about that, it is certainly not

18    the most straightforward patent case either.  In a number of

19    the cases, including some of those that plaintiffs cited, they

20    say this is not a chemistry case because chemistry issues are

21    intrinsically difficult for jurors who rarely have any

22    background or a lot of background in the science.  And we

23    spent some time identifying what we thought some of the

24    issues -- some of the technologies that the jury would have to

25    be familiar with.  Again, not the most complex ever in a
```

11:15AM (line 5)
11:16AM (line 10)
11:16AM (line 15)
11:16AM (line 16)
11:16AM (line 20)
11:17AM (line 25)

1  patent case, I can think of some others which are more

2  complicated, but on the complicated side, when you start

3  getting into pharmacokinetics, when you start getting into --

4       THE COURT:  But if that argument is accepted,

5  counsel, wouldn't it result in a *de facto* bifurcation of

6  almost every patent case?  Almost every patent case, certainly

7  out of the District of Delaware, is complicated.  Certainly

8  every ANDA pharmaceutical case is complicated.  So if the mere

9  existence of a complicated or complex case was sufficient to

10  justify bifurcation, then in effect you'd be arguing for a

11  rule that every ANDA or pharma patent case should be

12  bifurcated.  That's just not the rule or practice.  So what is

13  unique about this case?

14       MS. JACOB:  Your Honor, I mean, it is not the

15  practice for all judges, but there are certainly a number of

16  the judges in the District of Delaware which do precisely,

17  accept that when you have a patent case, or especially when

18  you have an ANDA case, bifurcation is more appropriate than

19  not because of the intrinsic complication, because of the

20  intrinsic difficulty.

21       We also have a jury in this case, which is not usual

22  in a Hatch-Waxman or ANDA case.  So the considerations of

23  protection of the jury, protecting against or avoiding juror

24  confusion apply in this case, which does not apply in an ANDA

25  case.  Very often ANDA cases are tried to judges and the judge

11:17AM (line 5)
11:17AM (line 10)
11:18AM (line 15)
11:18AM (line 20)
11:18AM (line 25)

```
 1   can schedule them in a way that works for the court.  You

 2   can't do that for a jury.

 3          THE COURT:  Here's a question for you, counsel.  Can

 4   this court deny bifurcation for discovery and case management

 5   purposes but Judge Kugler decide later on down the road that

 6   he wants to bifurcate the issues for trial?

 7          MS. JACOB:  Certainly that would be possible.  It

 8   would seem to me that you would lose a lot of the benefits of

 9   bifurcation if we went through the fact discovery, went

10   through the expert discovery, and then not December 2012, but

11   sometime next spring or summer we're ready for the trial and

12   decided to do it in two stages to protect the jury.

13          THE COURT:  You don't think this case is going to try

14   by December 1212?

15          MS. JACOB:  Not if we have to do damages discovery,

16   no, I do not.

17          THE COURT:  You may want to reevaluate your thinking,

18   counsel, if damage discovery is permitted because I think

19   Judge Kugler wants to try this case before the end of the

20   year.

21          MS. JACOB:  I should rephrase.  If the court sets a

22   December trial date, we will try the case in December; if

23   damages are part of that case, we, of course, will have to do

24   everything we can to do it.

25          THE COURT:  Right.
```

*United States District Court*
*Camden, New Jersey*

|     |                                                                                  |
| --- | -------------------------------------------------------------------------------- |
| 1   | MS. JACOB:  But it will not be easy.  And I                                       |
| 2   | anticipate the parties coming in and in varying stages of                        |
| 3   | desperation asking the court for some time period because                        |
| 4   | plaintiffs haven't given dates for damages witnesses yet.  We                     |
| 5   | have asked.  If they were so eager to go forward with damages,                    |
| 6   | they should have been allowing us to take discovery on it                        |
| 7   | already so we wouldn't have to be more pushed in the last                        |
| 8   | couple of weeks of discovery.  They haven't given us their                       |
| 9   | documents yet, we don't even -- you know, maybe there won't be                   |
| 10  | any disputes over what they choose to give us.  I doubt it.                       |
| 11  | They have really set this up to make it extremely difficulty                     |
| 12  | for us to finish damages in the time we have allotted.                           |
| 13  | I believe that the court certainly has discretion to                             |
| 14  | bifurcate the case in part because it is a patent case which                     |
| 15  | has inherent complexities; the court I think has discretion                      |
| 16  | not to, that's what discretion means.  But the question is in                    |
| 17  | this case, as opposed to other ANDA cases which may have had                     |
| 18  | overlapping witnesses, may have less complicated discovery of                    |
| 19  | damages issues, may not have had both a brand and an                             |
| 20  | authorized generic on the market.  They have had one launch                      |
| 21  | and then an injunction, so you have a very defined time period                   |
| 22  | that you are looking at in terms of damages; that you are not                    |
| 23  | dealing very much with issues of did the market expand because                   |
| 24  | Lupin was on?  Are we taking sales from the brand?  Are we                        |
| 25  | taking sales from the authorized generic?  Are we taking sales                   |

11:20AM (line 5)
11:20AM (line 10)
11:21AM (line 15)
11:21AM (line 20)
11:21AM (line 25)

1:21AM

1  from the other similar products which are on the market

2  already, you know, now that there is generic competition for

3  those on the Fortamet®?  Issues which don't really arise if

4  you have a one time launch and then are enjoined, or it's much

5  easier to deal with, there are very small issues.

6       So in that case vista this separates this somewhat

7  from one of your -- I don't want to say run of the mill ANDA

8  case, but many of the other ANDA cases where bifurcation has

9  not been granted and makes it more like the ones where

1:22AM  10  bifurcation has been granted.

11       And as I said, in the District of Delaware I can't

12  say there is a hard and fast rule.  Of course there is not.

13  There are some judges there, however, who do pretty much start

14  saying these are complicated cases, difficult for the jury,

1:22AM  15  when there are damages we're going to bifurcate and let's deal

16  with liability first.

17       Thank you, your Honor.

18       THE COURT:  You'll have the last word, it's your

19  motion.

1:22AM  20       Plaintiff.

21       MR. BASSETT:  Your Honor, thank you.  Dave Bassett.

22  It is it all right if I go to the podium?

23       THE COURT:  If you feel more comfortable, that's

24  fine.

1:22AM  25       MR. BASSETT:  It makes it easier to read my notes.

1      Your Honor, we do think that Lupin brought this

2 motion too late.  They knew from the moment they launched at

3 risk in September 29, 2011 that there were going to be --

4 there were going to be damages claims added to this

11:23AM    5 litigation.

6           THE COURT:  Why did you -- oh, was it because of the

7 preliminary injunction issue?

8           MR. BASSETT:  Absolutely, your Honor.  We got the

9 sale stayed, then we went up to the Federal Circuit, back

11:23AM   10 down, went back up to the Federal Circuit.  We've been moving

11 this case forward judiciously, but obviously there has been a

12 lot of appellate practice that has demanded our attention over

13 the last few --

14           THE COURT:  But in fairness to Lupin, they couldn't

11:23AM   15 move to bifurcate until you amended your pleadings.

16           MR. BASSETT:  Absolutely, your Honor.

17           THE COURT:  So we're only talking about a month or

18 two.

19           MR. BASSETT:  Absolutely.  This court's order,

11:23AM   20 however, scheduling order said that for any of these types of

21 motions they had to be raised by the parties prior to the

22 April 5th discovery conference.  They didn't raise the issue,

23 so they did raise the issue too late.  However --

24           THE COURT:  I don't think that's your strongest

11:23AM   25 argument.

|    |    |
|----|----|
|       | 1 |          MR. BASSETT:  I don't think so either, your Honor. |
|       | 2 |          However, I would move on to the substance of the |
|       | 3 | argument.  As this court has eluded to, bifurcation is clearly |
|       | 4 | the exception, not the rule in patent cases.  And I must |
| 11:24AM | 5 | disagree with the representations made by counsel for Lupin |
|       | 6 | about the practice in the District of Delaware.  Several times |
|       | 7 | she said several of the judges in the District of Delaware |
|       | 8 | grant these motions to bifurcate.  In fact, that is not true. |
|       | 9 |          Judge Robinson has that rule; that is true.  She is a |
| 11:24AM | 10 | rare exception among federal district court judges in the |
|       | 11 | country.  Judge Sleet does not, Judge Stark does not, Judge |
|       | 12 | Andrews does not.  They are -- I have been trying |
|       | 13 | federal patent infringement cases for 25 years in the District |
|       | 14 | of Delaware, I have never had a case bifurcated between |
| 11:24AM | 15 | damages and liability, and many of those cases involved |
|       | 16 | technology that is much more complex than the technology |
|       | 17 | that's involved in this case. |
|       | 18 |          The patents here are -- certainly there are some |
|       | 19 | issues with them, of course, like there are with any patent. |
| 11:25AM | 20 | These are not uniquely complex patents.  The damages issues |
|       | 21 | are not uniquely complex, it's the standard straightforward |
|       | 22 | question of lost profits.  And if you can't prove lost |
|       | 23 | profits, the plaintiff can't prove lost profits, then |
|       | 24 | reasonable royalty.  It's the standard patent case.  There is |
| 11:25AM | 25 | nothing about this case that justifies bifurcation between |

11:25AM 1  liability and damages, certainly for discovery purposes, and

2  we would argue for trial as well.

3          Your Honor, we believe it's the duty of the attorneys

4  if the case to make the case clear and straightforward for the

5  jury.  We have no doubt we can do that in this case, do it

6  efficiently and do it with both liability and damages issues

7  in the same trial with no problem.  There will not be jury

8  confusion in this case.  This is not a difficult patent case.

9          I think that the argument that Lupin has made in its

10 briefing for judicial economy are purely speculative.

11 Obviously, in any case if the defendant wins, you don't have

12 to have damages, a damages trial, so that's the argument in

13 favor of bifurcation, but that's true in every single case

14 this court has ever had that has damages as part of the case.

15          Just to touch on the current scheduling order, we are

16 confident that we can get this case ready for trial on the

17 current schedule.

18          THE COURT:  Can I hold you to that?

19          MR. BASSETT:  Absolutely, your Honor.  We will do

20 everything in our power to do so.

21          THE COURT:  I know you will.

22          MR. BASSETT:  Yes.

23          THE COURT:  But can I hold you to that date?

24          MR. BASSETT:  You can hold me to the trial date, your

25 Honor.

Case 1:23-cv-00078-RBK-SJB   Document 5034   Filed 08/09/24   Page 37 of 100 PageID: 21277

11:26AM

1      THE COURT:  I didn't say the trial date.  The fact

2  discovery date?

3      MR. BASSETT:  Well, your Honor, look, to be

4  completely fair I'm not going to stand here and represent to

5  this court that we would never come and ask for another week

6  or two.

7      THE COURT:  I understand that.

8      MR. BASSETT:  But I'm assuming --

9      THE COURT:  I think that's a fair statement.

10      MR. BASSETT:  We've had a pretty good working

11  relationship with opposing counsel in this case and I'm sure

12  that we can reach a reasonable accommodation.

13      I would just point out, however, that they say -- I

14  heard counsel say that we set them up by not giving them

15  discovery on damages and now we're pushing for --

16      THE COURT:  I didn't hear that.

17      MR. BASSETT:  Okay, all right.  Then I won't -- since

18  you didn't hear, I won't even address it.

19      THE COURT:  No, I didn't get that impression that

20  that was their argument.  And if it was, it has no merit.

21      MR. BASSETT:  Okay.  Well, your Honor, unless you

22  have further questions for me, those are the primary points I

23  want to make about bifurcation.

24      THE COURT:  Lupin says you didn't produce your

25  documents.

```
 1          MR. BASSETT:  That's where I disagree.  We have

 2  produced between 30 and 40,000 documents in discovery in this

 3  case thus far.  We are in the midst of producing damages

 4  related documents.  The delay on discovery of these motions

 5  are Lupin's absolute refusal to give us any discovery on

 6  damages.

 7          THE COURT:  Have you produced "damage" documents?

 8          MR. BASSETT:  We have produced some, there will be

 9  more, your Honor.

10          THE COURT:  When do you intend on supplementing if

11  the motion is denied?

12          MR. BASSETT:  Very soon.

13          MR. TRIVEDI:  Collection is currently underway, so

14  then it's only a matter of transferring documents and

15  producing them to the court.

16          THE COURT:  So what's the answer?  If the motion is

17  denied, when will the damage documents be produced?

18          MR. TRIVEDI:  Two weeks.

19          MR. BASSETT:  Within two weeks, your Honor.

20          THE COURT:  Did Lupin propound damage discovery to

21  the plaintiffs?

22          MR. BASSETT:  Extensive damages discovery.

23          THE COURT:  Interrogatories and document requests?

24          MR. BASSETT:  Absolutely.

25          THE COURT:  Have you answered those damages
```

11:27AM  
11:28AM  
11:28AM  
11:28AM  
11:28AM

1    interrogatories?

2         MR. BASSETT:  Yes.

3         THE COURT:  And you are just waiting to produce the

4    responsive document?

11:28AM  5         MR. BASSETT:  We're not waiting to produce them, but

6    we're in the process of producing them, yes, your Honor.

7         THE COURT:  Do you have anything else, counsel?

8         MR. BASSETT:  No, your Honor.

9         THE COURT:  Thank you.

11:29AM  10         MR. BASSETT:  Thank you.

11         THE COURT:  Last word.

12         MS. JACOB:  Your Honor, just taking it in somewhat

13    disorganized order.  First, the 30 to 40,000 documents which

14    have been produced were produced primarily by Andrx and they

11:29AM  15    primarily have to do with liability, they are not damages.

16         I'm encouraged to hear we will get damages documents

17    from Shionogi they say in two weeks.  That mean we will be

18    getting the documents one month before fact discovery ends, so

19    it's going to be a very intense month if we stick to the

11:29AM  20    current schedule.

21         I don't think we -- we certainly propounded document

22    requests on damages, no question about that, and we tried to

23    make them extensive and broad because if we're going forward

24    with damages we're going to need this information.  I don't

11:29AM  25    think we propounded interrogatories on damages, however.  I

don't remember them.  We're checking and if I'm wrong about

that I'll correct the record on that.  But, we certainly have

not -- what we have gotten on damages from the plaintiffs was

their supplemental initial disclosures where they basically

11:30AM   5 say these are the theories of our damages perhaps, but we need

more documents, we need more discovery, we need more

information before we can start calculating figuring them out.

        I wanted to return to the patents and the

technologies in the case.  There are two patents -- well,

11:30AM  10 really there are four patents in this case.  They are in

pairs.  And the counterclaim patents are in the case.

Plaintiffs denied that we didn't infringe them and denied that

they were not valid.  If we don't get a ruling on them, then

they could come back and sue us for infringing those patents

11:30AM  15 at any time.  So we really do need a decision on those

patents.  They are listed on the orange book against

Fortamet®.  So those are validly in the case through our

counterclaims.

        But, there are very different technologies on the two

11:30AM  20 patents.  One has to do with the formulation, has to do with

the characteristics of the membrane, has to do with the

characteristics of the release mechanism.  We've already had

some discussion about whether it was osmotic release or not.

Lupin says that its product has what we call an expanding

11:31AM  25 polymer through a permeable membrane; the plaintiffs claim no,

 1  that we have a semipermeable membrane and there is a

 2  passageway that is formed *in vivo* in the body, but we don't

 3  really have any information from them on how they are going to

 4  prove it, step one, what kind of science and technology.

 5  We then have the second patent which deals with

 6  pharmacokinetics, what's called a trema and how it behaves --

 7  how this product behaves in the body.  Not how it's released,

 8  but how the body deals with the active ingredient.  So it's

 9  perhaps only two patents or two sets of patents, but two

10  totally different technologies and areas of science and

11  lineups of experts that are going to be dealt with, which is

12  an additional complicating factor.

13  And I think that's pretty much what I wanted to say.

14  I do agree, I was not trying to suggest in any way that we

15  were set up by the plaintiffs, I was just pointing to what we

16  see as some of the reality of the way discovery is going

17  forward.

18  THE COURT:  I think I made it clear that in no way,

19  shape or form did I take your argument to be something of that

20  sort.

21  MS. JACOB:  And I wanted to just clarify for counsel

22  that it wasn't heard and it wasn't contended.

23  Thank you, your Honor.

24  THE COURT:  Thank you, counsel.

25  Okay, the court is prepared to rule on the motion.

1   This will serve as the court's oral opinion.

2           This matter is before the court on the motion to

3   bifurcate liability and damages and to stay damages discovery

4   filed by the Lupin defendants.  Document number 415.  The

11:32AM   5   court received plaintiffs' opposition and Lupin's reply and

6   held oral argument this date, May 11, 2012.

7           Pursuant to Federal Rule of Civil Procedure 42(b), a

8   court may order a separate trial of one or more separate

9   issues, claims, cross claims, counterclaims or third-party

11:33AM   10   claims.  The court has broad discretion in deciding whether

11   bifurcation of a case is justified.  Ciena Corp. v. Corvis

12   Corp. 210 F.R.D. 519 page 520 (D. Del. 2002).  The court must

13   consider whether bifurcation will avoid prejudice, conserve

14   judicial resources and enhance juror comprehension of the

11:33AM   15   issues presented in the case.

16           As the moving party, Lupin has the burden of showing

17   that bifurcation is appropriate.  Lupin cites several cases

18   for the uncontroversial position that at the discretion of the

19   court unduly complex or difficult issues regarding damages may

11:34AM   20   be bifurcated from liability issues.  However, the court finds

21   that Lupin has not shown that the damage issues in the case

22   are unduly complex or difficult.  If the mere existence of

23   complex or difficult damage and/or liability issues was a

24   sufficient justification to bifurcate a case, then bifurcation

11:34AM   25   would be routinely granted in complex litigation and virtually

1    all patent cases, however, this is plainly not the law.

2         The fact is that this case, which involves only two

3    plaintiffs and two defendants and only four patents, is no

4    more complex than numerous other matters on the court's

11:34AM    5    docket.  Although Lupin cites difficult discovery disputes

6    currently before the court, these disputes are routine in

7    these cases.  The parties' discovery disputes in this case are

8    no more or less complex than the routine disputes the court

9    addresses in its patent cases.  In short, Lupin's arguments

11:35AM    10   are insufficient to demonstrate that the ultimate question of

11   damages will add burdensome complexity to the jury's

12   deliberations.

13        Defendants have not met their burden under the

14   applicable case law to bifurcate the case and the court does

11:35AM    15   not conclude that the presentation of liability and damages in

16   a single proceeding will either clutter the record or confuse

17   the jury.  Furthermore, Lupin has not shown that the

18   bifurcation of liability and damages will provide any relative

19   benefits or material relative benefits in terms of clarity,

11:35AM    20   efficiency or fairness.

21        The main thrust of Lupin's argument in support of

22   bifurcation is that the question of liability will require a

23   jury to consider substantial evidence and complex issues.

24   While this may be true, this same situation exists in

11:36AM    25   virtually all patent cases.  In addition, the jury will have

|  |  |
|---|---|
| | 1 | to consider substantial evidence and complex issues whether or |
| | 2 | not bifurcation is granted. |
| | 3 | Lupin does not advance a meaningful argument for the |
| | 4 | conclusion that bifurcation would mitigate the complexity of |
| 11:36AM | 5 | the case and the court does not believe that bifurcation would |
| | 6 | result in a material conservation of judicial resources or |
| | 7 | greater efficiency in adjudicating the relative liability and |
| | 8 | damages issues.  In fact, to the extent a single jury must |
| | 9 | address trial issues, the greater burden may arise by |
| 11:36AM | 10 | requiring jurors to sit for two, rather than one trial.  In |
| | 11 | addition, bifurcation will undoubtedly delay the ultimate |
| | 12 | resolution of the case.  The court is not willing to further |
| | 13 | delay the proceedings in view of the importance of the issues |
| | 14 | at stake and the age of the litigation. |
| 11:37AM | 15 | In addition, bifurcation, in this court's view, will |
| | 16 | create unnecessary discovery disputes.  Undoubtedly, if |
| | 17 | Lupin's motion is granted, it will lead to differences of |
| | 18 | opinion as to whether discovery is directed to liability or |
| | 19 | damage issues.  Since there is often no bright dividing line, |
| 11:37AM | 20 | and liability and damages discovery often overlaps, the court |
| | 21 | will avoid these disputes by denying Lupin's motion.  Other |
| | 22 | efficiencies would occur if the court bifurcates.  For |
| | 23 | example, needless duplicate depositions of the same witnesses. |
| | 24 | The court notes one factor that it did not take into |
| 11:38AM | 25 | consideration in deciding this motion; that is, the court's |

1    prediction as to who will ultimately prevail at trial.  In

2    addition to being, in this court's view, irrelevant to the

3    court's analysis, this court will not weigh in on this issue.

4    The court is convinced that both sides are equally confident

5    that they will win and the other side will lose.

6         Although it is evident, the court also points out

7    that this order has no affect on Judge Kugler's decision as to

8    how to conduct the trial.  This order is directed to the

9    pretrial and discovery phases of the case.  It is, of course,

10   Judge Kugler's prerogative if he wants to bifurcate the case

11   for trial.  If Judge Kugler decides to do this, this court

12   sees nothing inconsistent about denying bifurcation as to

13   damages discovery and then later bifurcating the actual trial

14   in the interests of fairness and efficiency.  The final

15   decision as to whether any issue should be bifurcated for

16   trial is left to Judge Kugler.

17        As to Lupin's argument for a stay of discovery, it

18   presumes the bifurcation of liability and damages.  Because

19   the court concludes that bifurcation is not appropriate, the

20   court will also deny Lupin's request to stay damages

21   discovery.  The most efficient way to proceed is to address

22   all relevant discovery issues in one pretrial phase.  How the

23   issues will be presented at trial is Judge Kugler's decision

24   to make.

25        Accordingly, and for all the foregoing reasons, the

1    court will be entering an order that Lupin's motion to

2    bifurcate liability and damages and to stay damages discovery

3    is denied.  That order will be entered promptly, counsel.

4          The next issue I'd like to address then is the issue

5    about the 30(b)(6) depositions on the contention issues.  And

6    I think this is plaintiffs' motion.

7          MR. BLUMENFELD:  This is plaintiffs' motion, your

8    Honor.  Jack Blumenfeld from Morris Nichols in Wilmington.

9          We have a little bit of an unusual situation here in

10    that we have ten District of Delaware decisions that we've

11    cited, I think it's ten, that all come out the same way by

12    five district judges, two of whom are now on the Third

13    Circuit, and one special master, and notwithstanding those ten

14    decisions, Lupin argues that whether contention depositions

15    can be taken is an open issue in the District of Delaware.

16    And for those of us who have been practicing in Delaware for

17    the last 30 years, this is not an open issue.  It hasn't been,

18    you know, since I can remember starting quite a few years ago.

19          There is very much a bright line rule in the District

20    of Delaware that you take contention discovery by

21    interrogatories, you don't take contention discovery by

22    depositions.  There is nothing unequivocal, select, whatever

23    words Lupin used in its brief, about the decisions; they are

24    quite emphatic.

25          THE COURT:  What about Lupin's argument that it is

1   not taking contention discovery but it only seeks the facts to

2   support certain contentions?

3         MR. BLUMENFELD:  Your Honor, first of all, that's not

4   the way their topics are written.  Their topics are written as

5   either Shionogi or Andrx's contentions.  But putting that

6   aside --

7         THE COURT:  I agree with you.  But I think when they

8   step up to the podium or stay at the table I think they are

9   going to say really what they want are just the facts.

10        MR. BLUMENFELD:  And that is a distinction without a

11  difference because when you ask for the facts underlying your

12  contentions, or they ask for the facts underlying our

13  contentions, that is a contention deposition.  That's exactly

14  what both judge Stapleton held in the <u>Tico</u> case that we cited

15  and what Judge Jordan held in the <u>Pharmacia</u> case that we

16  cited, and I think in some of Judge Robinson's opinions.  But

17  coming in and saying tell me the facts that support your

18  infringement theory is nothing different than a contention

19  deposition.

20        And just to put a point on that issue, it's hard to

21  imagine what witness we're going to put up on "tell me the

22  facts that support your," let's pick infringement, "your

23  infringement contentions."  Someone would have to testify as

24  to what the patent claims mean, what the defendant's proposed

25  product -- in this case with Lupin its actual produce is, and

1  how the patent claims apply to that product.  Those are our

2  contentions, those are not facts.  We don't have a fact

3  witness who can testify as to what Lupin's product is.

4  It's not asking for facts to say what do your patent

11:43AM  5  claims mean, how do they apply to Lupin's product, those are

6  contentions, and it's hard to even imagine who would do that.

7  The only people who ultimately in this case do that are the

8  lawyers who formulate the contentions and later on the

9  experts, or in this case we already had some expert discovery,

11:44AM  10  but, you know, the experts later on who are going to do that.

11  And it's no different with validity.  We don't have

12  fact witnesses who can step up and sit there and say this is

13  what the prior art is and here's how it's different than the

14  patent claims.  To the extent that those are facts, those are

11:44AM  15  our contentions, this is how the prior art differs from the

16  patented inventions.

17  THE COURT:  Can I ask you a question?  And I'm going

18  to ask Lupin the same question.  Has Lupin served

19  interrogatories seeking the same information that they are

11:44AM  20  seeking in these 30(b)(6) depositions?

21  MR. BLUMENFELD:  They have served interrogatories,

22  they are attached to the papers, that are virtually identical.

23  I believe that their first interrogatory is tell us the basis

24  for your exceptional case, you know, allegation.  They've sent

11:44AM  25  us infringement contention interrogatories, they've sent us

1  validity contention interrogatories, and we have given them

2  full responses.  Because of the way this case played out with

3  the preliminary injunction, if you look at the attachment I

4  believe to our reply brief, there are pages and pages and

5  pages of infringement contentions and pages and pages and

6  pages of responses to their invalidity contentions, our

7  validity contentions.

8       THE COURT:  With regard to the answers, I'll ask

9  Lupin the same question, do these we'll call them contention

10 interrogatories that you say you fully answered, has Lupin

11 ever advised you that they considered the answers deficient

12 and have you ever had a meet-and-confer regarding the alleged

13 deficient answers?

14      MR. BLUMENFELD:  Your Honor, to the best of my

15 knowledge they have not complained about the sufficiency or

16 insufficiency of our answers and there has been no

17 meet-and-confer.  And, you know, certainly if they have issues

18 with our answers, they know how to raise them; the parties

19 here haven't been that shy about raising discovery issues; and

20 that to the best of my knowledge has not happened.  And if you

21 look at the responses that are attached to the reply brief,

22 they are very, very full responses.

23      THE COURT:  Has Lupin pointed out other alleged

24 deficiencies in your client's answers to interrogatories aside

25 from the damage contention interrogatories?

1        MR. BLUMENFELD: I think there has been -- over the

2  time period this case being going on, I think there has been a

3  lot of back and forth about it.  And we've supplemented

4  interrogatory answers I think more than once.  So yes, they

5  have raised other issues, but not with respect to our

6  infringement and invalidity or validity contentions.

7        THE COURT:  Have the plaintiffs served parallel

8  contention interrogatories on the defendants similar to those

9  that plaintiffs have served and have those been answered?

10        MR. BLUMENFELD:  There have been infringement and

11  validity contentions exchanged on both sides, yes, your Honor.

12        THE COURT:  I know the contentions.  What about

13  interrogatories?

14        MR. BLUMENFELD:  And interrogatories I believe also.

15        THE COURT:  Have the plaintiffs served

16  interrogatories of the same type that Lupin has served on the

17  plaintiffs?

18        MR. BLUMENFELD:  Yes, we have, your Honor.  We have

19  not served 30(b)(6) contention depositions, we've done it by

20  interrogatory the way that it is traditionally done in the

21  District of Delaware.  And so the answer to that is yes, and

22  that is the way that the court historically, as far as I know,

23  always has required the parties get contentions, through

24  interrogatories and not through depositions and --

25        THE COURT:  Is that the case in all districts?

11:46AM
11:47AM
11:47AM
11:47AM
11:48AM

11:48AM
11:48AM
11:49AM
11:49AM
11:49AM

```
 1        MR. BLUMENFELD:  I don't believe that is the case in
 2   all districts, but I think the vast majority of districts.
 3   They've cited some cases in their brief where courts have
 4   permitted contention depositions.  I think there was one from
 5   about 20 years ago in the Eastern District of Pennsylvania,
 6   although there is a more recent Eastern District of
 7   Pennsylvania case that came out the other way.  I'm not
 8   aware -- you know, I know that there is Northern District of
 9   California cases that come out the same way as the Delaware
10   case, I know I've had this issue in the District of New
11   Jersey, and where the parties have not taken contention
12   depositions, although I don't know of -- you know, not one
13   where the court decided it, but where the parties agreed there
14   shouldn't be contention depositions.
15        And I don't think -- I think it's fair to say that in
16   the 30 years I've been practicing I've never had a contention
17   deposition in any case in the District of Delaware or in any
18   other district.  And it makes sense because, you know, as I
19   said before, what is it that a witness would do?  I mean, on
20   the infringement side and on the damages side it will depend,
21   in addition, on Lupin's confidential information.  I don't
22   even know how the plaintiffs, whose fact witnesses won't have
23   access to that information under the protective order, would
24   even, you know, purport to be deposed on what Lupin is doing.
25   It doesn't make any sense to us.
```

11:49AM

 1        The way infringement goes forward is we take fact

 2   discovery, they get our contentions; the parties both take

 3   expert discovery, and that's the record on issues like

 4   infringement and validity.  But it doesn't make any sense to

 5   us to have 30(b)(6) fact depositions on those issues.  And as

 6   I said, I've never seen it done in the District of Delaware or

 7   personally in any other court.

 8             THE COURT:   Thank you, counsel.

 9             MR. BLUMENFELD: Thank you.

10             THE COURT:  You'll get the last word since it's your

11   motion.

12             MR. BLUMENFELD:  Thank you.

13             MR. WOOD:  Good morning, your Honor.  May it please

14   the court, I'd like to address Lupin's response to plaintiffs'

15   motion for a protective order.  I guess the issue we should

16   deal with first is their claim that our 30(b)(6) discovery is

17   precluded by the local rule that bars this type of discovery

18   in all cases.

19             THE COURT:  I think you win that argument.

20             MR. WOOD:  Okay.

21             THE COURT:  There is no rule in the District of

22   Delaware that says you can't take these depositions.

23             MR. WOOD:  All right.

24             THE COURT:  And they overstate their case when they

25   say that.

1      MR. WOOD:  Yes.

2          THE COURT:  But I think what they really said was

3  there is a practice in the District of Delaware.

4          MR. WOOD:  And I believe that their papers do

5  demonstrate, your Honor, that this practice certainly before

6  some judges that don't -- they don't favor this type of

7  discovery; but I think that there are other judges who do

8  allow it.  And, in fact, there is a case -- they chide us in

9  their reply brief for not citing any Delaware authority that

10  permits this type of discovery and, in fact, we did cite a

11  case.  It's a 2010 published opinion, <u>Ethypharm v. Abbott</u>

12  <u>Laboratories</u>.  It's a drug case involving patent infringement

13  claims and antitrust claims.  And not only is it a published

14  opinion, it's 271 Federal Rules Decision 82 (2010).  And

15  candidly, your Honor, the issue, the primary issue before the

16  court in this case was whether or not the plaintiff could be

17  compelled to provide 30(b)(6) discovery with respect to a

18  foreign subsidiary.  That was the main issue, but there is

19  language in this case that bears directly on the dispute

20  before the court.

21          THE COURT:  Do they call that *dicta*?

22          MR. WOOD:  No, I don't believe it is *dicta* in this

23  case, your Honor, because the court allowed the discovery to

24  go forward.  And I think that the court's discussion about the

25  scope of discovery that's permitted is directly related to the

1   court's ruling.  I just wanted to read a brief part.

2           THE COURT:  Who wrote that opinion?

3           MR. WOOD:  Magistrate Judge Thynge.  In discussing --

4   just very briefly, your Honor, I don't want to dwell too much

11:52AM   5   on this, but I do think it's relevant.  In discussing a case

6   that was raised by the movant, the party seeking the 30(b)(6)

7   discovery there, the case is 20th Century Fox v. Marvel

8   Enterprises, a Southern District of New York case, 2002.  The

9   court says:  "In its analysis the court stated that a Rule

11:53AM   10  30(b)(6) designee presents the corporation's rather than his

11  personal position on a topic, and in addition to testifying

12  about facts within the corporation's knowledge, testifies

13  about the corporation's subjective beliefs and opinions and

14  its interpretation of documents and events."

11:53AM   15         The court went on to say:  "There is no logical

16  reason why the sources researched by a party in responding to

17  a discovery request should be dependent upon the particular

18  discovery vehicle used.  In all cases, the responding party

19  should be obligated to produce the information under its

11:53AM   20  control.  Application of this principle to 30(b)(6) discovery

21  is not only consistent with the judicial interpretations of

22  the other discovery provisions of the Federal Rules of Civil

23  Procedure, it is also consistent with the purpose of discovery

24  to make a trial less a game of blind man's bluff and more a

11:54AM   25  fair contest with the basic issues and facts disclosed to the

1   fullest practicable extent."

2         And in commenting on that language, the Delaware

3   court said:  "The court finds the conclusion of the 20th

4   Century Fox case concerning the discovery obligations of the

5   rules discussed therein to be persuasive."  And that was a

6   part of the court's holding in this case.  So I think --

7         THE COURT:  But what was the subject of the 30(b)(6)

8   notice in that case?

9         MR. WOOD:  There were -- the 30(b)(6) deposition

10  topics that are mentioned here specifically in the opinion, I

11  don't have a copy of the notice, are anticompetitive

12  agreements at issue in the case, testing of the technology

13  that was at issue in the patents, the context of the

14  infringement litigation.  I'm sorry.  The testing of the

15  technology in the context of the infringement litigation.  I'm

16  not sure exactly what that means.  I mean, it sounds like it

17  goes to the issue of infringement.

18        THE COURT:  But to cut to the chase --

19        MR. WOOD:  Right.

20        THE COURT:  -- would any of that be the "contention"

21  type of discovery that Lupin is seeking here in its 30(b)(6)?

22  Because what I heard you say is uncontroversial -- and I've

23  written on 30(b)(6) depositions -- a corporation has a duty to

24  search for relevant responsive information and they have to

25  produce a witness.  There is no dispute about that.  The issue

1    is whether the information that Lupin wants should be obtained

2    via interrogatories or a 30(b)(6) deposition.

3            MR. WOOD:  Right.  And on that point, your Honor, the

4    key part of the court's opinion here is the statement that a

11:55AM    5    30(b)(6) designee presents the corporation's position.

6            THE COURT:  No doubt about it.

7            MR. WOOD:  Right.

8            THE COURT:  How is that different from an

9    interrogatory answer certified by an appropriate corporate

11:56AM    10   representative?

11           MR. WOOD:  Well, that seems to get to the issue, your

12   Honor, whether depositions are better than interrogatories,

13   and courts have discussed this in opinions.  My personal view

14   is over the years having practiced law long enough, I am less

11:56AM    15   impressed with the ability to get information from an opposing

16   party, particularly a party represented by very capable

17   lawyers like we have here, through an interrogatory than I am

18   through a witness at a deposition.

19           THE COURT:  Well, what about the key question, which

11:56AM    20   is you want an answer on behalf of the corporation that's

21   binding on the corporation.  That's why you want to take a

22   30(b)(6).

23           MR. WOOD:  Right.

24           THE COURT:  Why isn't an answer to an interrogatory

11:56AM    25   certified by an appropriate authorized representative just as

binding on a corporation as a 30(b)(6) deposition?

MR. WOOD:  It is just as binding, to the extent of the answer.  And I think that's the issue, that's the problem.  You know, with a deposition, your Honor, there is an opportunity obviously for follow-up.  It's much, it's much more cumbersome, if there is that opportunity, with respect to interrogatories.

THE COURT:  But, plaintiff stood up at the podium and said that, and I said I would ask you this question, that Lupin has served interrogatories asking for essentially the same information requested in the 30(b)(6).

MR. WOOD:  Right.

THE COURT:  They believe they've answered them fully and yet they've never heard a word from Lupin that the answers are deficient in some respect.

MR. WOOD:  Your Honor, my response to that is that there have in fact been two rounds of motion practice in this case regarding the sufficiency of their interrogatory answers.

THE COURT:  As to the contention interrogatories?

MR. WOOD:  Well, they've supplemented them twice, I know that much.  All right.  We've gotten supplemental answers with respect to most of them, including contention interrogatories and second supplemental answers to two others, to interrogatories one and two, and I believe that at least one of those is a contention interrogatory.

1          THE COURT:  Okay.

2          MR. WOOD:  And, your Honor, my argument, my point is

3     their discovery responses, their interrogatory answers are

4     still deficient.  So we've gone through two rounds of motion

11:58AM   5     practice and we're not really getting to where we need to be.

6          THE COURT:  You said motion practice.  Have those

7     issues -- and they could have been, and if my memory is faulty

8     I can be corrected because there has been a lot of discovery

9     issues in this case.  You said there were two motions.

11:58AM   10          MR. WOOD:  Correct.

11          THE COURT:  Have there been applications to this

12     court about the contention answers that we've addressed or is

13     it just your meet-and-confer that you are talking about?

14          MR. WOOD:  No, I believe --

11:59AM   15          MS. JACOB:  Your Honor, I'll answer this just because

16     Mr. Wood is newer on the case than I am, but these are rounds

17     before the Markman hearings back when we were first before

18     this court.  Yes, we had several discovery conferences, it was

19     not formal motions, it was the letter motions that we

11:59AM   20     submitted to the court in preparation for the status

21     conferences.  But we've gone through two rounds of those.

22          MR. WOOD:  So that clarifies that point.

23          One more point here, your Honor, about the deposition

24     is that one of the arguments they've made in their papers is

11:59AM   25     that they've gotten the information in interrogatory answers,

1  we've given them everything they need or, you know, we've

2  given them everything in the interrogatory answers.  Typically

3  in cases, and this also applies to 30(b)(6) depositions, is

4  that we get an opportunity to test their answers.  We get an

11:59AM  5  opportunity to ask the witness about the sufficiency of those

6  answers and about documents that are produced, and it seems

7  like we're getting told here to be satisfied with the

8  interrogatory answer and we can't test that answer, the

9  sufficiency of that answer, with a live witness who can

12:00PM  10  respond to questions and follow-up questions.

11        THE COURT:  Well, the purpose of the contention

12  discovery interrogatory 30(b)(6) I take it is that you want to

13  know the basis of their claims so that you could prepare your

14  defense at trial.  Correct?

12:00PM  15        MR. WOOD:  That's correct, your Honor.

16        THE COURT:  So if their answer is complete -- I'm

17  sorry.  Assume for the sake of argument that their answer to

18  an interrogatory is incomplete.  You believe there is more

19  responsive information that they didn't give you.  And then

12:00PM  20  you get to trial and they try to use the information that they

21  have not previously identified.  Isn't your solution to move

22  to strike it because it wasn't revealed in response to your

23  discovery request?

24        MR. WOOD:  It absolutely is.  However, your Honor,

12:01PM  25  that doesn't pertain to information that they don't bring out

1 at trial. They could be in possession of information that's

2 helpful to me but not helpful to them and they are not going

3 to introduce that at trial. And what's my remedy? What's my

4 recourse then? It's discovery. So, that's the problem with

5 that.

6 I was prepared to address specific objections that

7 they've raised, your Honor. I'm happy to do that. I think

8 that once you get past the issue of the local rule, all the

9 objections that they've raised -- I think their arguments have

10 undermined all of the objections. For example, they can't

11 present someone because it would require access to Lupin's

12 confidential, highly confidential information. Well, there

13 must be facts that we can discover that don't depend on

14 Lupin's confidential information because, obviously, they had

15 a factual basis for bringing suit in the first place and they

16 didn't have any more information then.

17 THE COURT: So you want the facts supporting their

18 contentions, except those that have been identified as

19 attorneys eyes only?

20 MR. WOOD: Well, information that has been disclosed

21 by us, produced by us in discovery that's marked confidential,

22 attorneys eyes only, there would have to be a discussion about

23 whether or not that could be shown to a particular witness.

24 But frankly, under the protective order I don't know if that

25 information can be shown to a witness in preparation for a

```
 1    deposition.  I just don't know.

 2            THE COURT:  They're saying that part of the

 3    information that they are relying upon is attorneys eyes only

 4    and that they are prohibited from showing that to their

 5    30(b)(6) witness under the protective order.

 6            MR. WOOD:  Right.  And if it wasn't allowed by the

 7    protective order, then they shouldn't have to produce that

 8    information.  But there must be other facts.

 9            One of the other arguments they make is about

10    privilege.  And, you know, we're after facts, that is correct,

11    but a fact doesn't become privileged because it's communicated

12    by a lawyer; the fact are facts.  And I don't understand how

13    privilege might be an objection to a 30(b)(6) deposition, but

14    in interrogatory it's okay.  So it seems inconsistent to me

15    and I think that objection is lacking in merit too.

16            We talked already, your Honor, about this issue of

17    duplication and I already indicated that I think we should be

18    given an opportunity here to follow-up their discovery

19    responses with, you know, questions directed to a witness in a

20    deposition.

21            As far as the argument that this is burdensome,

22    certainly there are some burdens imposed by the obligation

23    under Rule 30(b)(6).  We all know that.  Typically, a court

24    will engage in a proportionality analysis to determine whether

25    or not a particular discovery burden is warranted; and also
```

12:02PM (line 5)
12:03PM (line 10)
12:03PM (line 15)
12:04PM (line 20)
12:04PM (line 25)

consideration of costs versus the importance of the

information and relevance.  And I think on that issue they

lose, your Honor, because there is no dispute here that all of

these issues, all of these topics are relevant; they go to the

12:04PM   core issues in the case.

        For all these reasons, your Honor, we would request

their motion for protective order be denied and that we be

permitted to take discovery on the factual basis for our --

        THE COURT:  Thank you, counsel.

12:04PM         MR. WOOD:  Thank you.

        THE COURT:  Any last word from Lupin?

        MR. BLUMENFELD:  Two tiny points, your Honor.

        First, I'm not aware of any District of Delaware

authority permitting a Rule 30 contention deposition.  And if

12:05PM   you read Judge Stein's opinion in Ethypharm, it didn't have to

do with contentions, it had to do with the corporation's

subjective beliefs and opinions, I think was the term.  It had

to do with specific things that were historical, not

contentions.  That's the first point.

12:05PM         The second is the point that was made repeatedly is

they need an opportunity to follow up.  Well, if they've got

problems with our interrogatory answers or our written

contentions, they know how to find us, they know how to

discuss them, and we can work them out or they can bring them

12:05PM   to the court.  And they will have an opportunity to test

infringement and validity issues with a live witness in the

form of our expert, and that's the appropriate way to do it,

your Honor.

That's all that I have.

12:05PM    THE COURT:  Thank you, counsel.

Okay, the record is closed on this particular motion

and the court is prepared to read its oral opinion into the

record.

This matter is before the court on plaintiffs' motion

12:06PM    for a protective order regarding defendant Lupin's notices of

depositions to Shionogi and Andrx pursuant to Federal Rule of

Civil Procedure 30(b)(6).  Docket Number 409.  The court

received Lupin's response, plaintiffs' reply, and held oral

argument this date, May 11, 2012.

12:06PM    Plaintiffs request a protective order to bar Lupin

from taking its Rule 30(b)(6) deposition on certain topics and

instead to require Lupin to obtain the requested information

via interrogatories.  As best the court can determine, the

motion is directed to the notice directed to Shionogi, topics

12:07PM    4, 5, 6, 9, 7, 8, 18, 3 and 13, and the notice directed to

Andrx topics 5, 6, 7, 10, 8, 9, 14, 13 and 15.

Plaintiffs characterize the listed topics as asking

for their contentions.  Lupin argues it is simply asking for

facts supporting plaintiffs' contentions.  Lupin argues that a

12:07PM    Rule 30(b)(6) deposition is appropriate so it can learn

1  plaintiffs' corporate knowledge of the facts they will rely

2  upon at trial.  Plaintiffs do not deny that the requested

3  information is relevant, but instead argue that Lupin should

4  obtain the requested information from interrogatories rather

5  than Rule 30(b)(6) depositions.

6          Plaintiffs argue there is a practice in the District

7  of Delaware to obtain contention information through

8  interrogatory answers rather than via a Rule 30(b)(6)

9  deposition.  In support of their motion, plaintiffs argue

10  "contention depositions are not permitted in this district."

11  Brief at page 2.  Although the court believes plaintiffs

12  overstate their case and finds that no such rule exists, the

13  court is persuaded that a well established practice rather

14  than a rule exists in the District of Delaware that the

15  information Lupin requests is more appropriately obtained via

16  interrogatories rather than a Rule 30(b)(6) deposition.  This

17  is true whether Lupin's deposition notices are classified as

18  asking for contention information as opposed to the facts

19  supporting a contention.  This is supported by the authorities

20  in the transcripts attached to plaintiffs' brief, including,

21  but not limited to, Exhibits A, B, C, G, H, I, J, K and L.

22          As evidence of this practice, the court just points

23  out one example.  Plaintiffs' Exhibit B, transcript page 8,

24  lines 13 to 15, which states, and this is Judge Farnan in the

25  Reliant Pharmaceuticals case, March 7, 2008.  "In this

1    district, there is a practice that disfavors depositions on

2    contentions in deference to interrogatories."

3         The court also references page 20 of the same

4    transcript, lines 15 to 21.  The court states, "I think that

12:10PM    5    Reliant has correctly stated in its papers that in this

6    district there is a preference that contention discovery be

7    conducted by interrogatory, even when factual information is

8    sought, and then that information can be further probed in the

9    course of the other available mechanisms for discovery."

12:10PM    10         Another good example, in the Court's view, is Exhibit

11   G, page 21 lines 6 to 9.  That's Judge Robinson in the

12   McKesson case.  She says, "That is, with respect to the

13   depositions, number one, I have never thought contention

14   interrogatories are appropriately responded to via 30(b)(6)

12:11PM    15   depositions.  I still maintain that position."  That's page

16   21, lines 6 to 9.

17        Therefore, the court will grant plaintiffs' motion.

18   The first reason is because its motion is consistent with

19   local Delaware practice.  Furthermore, even if there wasn't a

12:11PM    20   practice in the District of Delaware to serve interrogatories

21   rather than a Rule 30(b)(6) deposition for the information

22   Lupin requests, the court would still grant plaintiffs' motion

23   pursuant to its authority under Federal Rule of Civil

24   Procedure 26(b)(2)(C)(i).  Under this rule, the court may

12:11PM    25   limit discovery where the information sought can be obtained

1    from another source that is more convenient or less

2    burdensome.

3           Here, the information Lupin seeks in its

4    Rule 30(b)(6) depositions can be obtained from a more

12:12PM  5    convenient source,  i. e. interrogatories.  This court is well

6    aware of problems associated with Rule 30(b)(6) depositions,

7    has written on the topic, and knows full well the enormous

8    resources that go into such depositions.  The court is also

9    well aware of the invariable problems that arise out of these

12:12PM  10   depositions when a witness can't answer every specific

11   question that is raised, which invariably leads to motion and

12   discovery practice about whether the witness was fully

13   responsive or not.  Given the enormous scope of Lupin's

14   deposition, the court predicts that if plaintiff was required

12:13PM  15   to produce this information via 30(b)(6) depositions, it would

16   require an inordinate effort that would lead to numerous

17   predictable discovery disputes.  Lupin can get everything it

18   wants from interrogatory answers.  The court believes this is

19   precisely the sort of situation that was envisioned when it

12:13PM  20   was given the discretion afforded it under

21   Rule 26(b)(2)(C)(i).  If problems arise with interrogatory

22   answers, the court will deal with them as they arise.

23           In sum, the court will grant plaintiffs' motion and

24   require Lupin to obtain the information it requests via

12:14PM  25   interrogatory answers.  The parties shall meet-and-confer

1  pursuant to the local rules and bring to the court's attention

2  issues they cannot resolve.

3      The court concludes by cautioning the parties that

4  its ruling does not give plaintiffs a "free pass" to object,

12:14PM  5  stall or obfuscate discovery.  If the court finds that this

6  occurs and Lupin is unable to obtain the information it seeks

7  through interrogatory answers, it will reconsider Lupin's

8  application to take its Rule 30(b)(6) depositions on all or a

9  limited number of focused topics.  Conversely, the court

12:15PM  10  expects Lupin to also act reasonably and to focus on relevant

11  information and information it reasonably needs to support its

12  claims and defenses rather than pursuing minutia and

13  information that will simply serve to burden plaintiffs rather

14  than materially aiding its claims and defenses.

12:15PM  15      An appropriate order will be entered.

16      Counsel, the last issue before the court I think is

17  the most difficult one, and that's the issue dealing with

18  confidential business information.  Counsel, what's your

19  preference?  Do you want to take a short bread for lunch?  Do

12:15PM  20  you want to work through lunch?  Counsel, what is your

21  preference?

22          (Short pause).

23      THE COURT:  Okay, counsel, the last motion is Lupin's

24  motion regarding what it characterizes as highly sensitive

12:16PM  25  confidential information.  I think we can just shorten it to

```
 1  confidential information.  In the Court's view, this is the
 2  most difficult issue before the court.
 3          So, Lupin, I think it's your motion, so why don't you
 4  start.
 5          MR. KATZ:  Thank you, your Honor.  Cliff Katz for
 6  Lupin.
 7          The plaintiffs here are requesting Lupin's highly
 8  ███████████████████████████████████████████████████
 9  ████████████████████████████████████████████████████████
10  ████████████████████████████████████████████████
11  ████████████████████████████████
12          THE COURT:  Is it your position that none of what
13  plaintiffs is requesting is relevant?
14          MR. KATZ:  I think there may have been some confusion
15  based upon the opposition that we saw from plaintiffs.  Lupin
16  did agree to produce some of the documents, which they don't
17  appear to have acknowledged, which include Lupin's forecasts
18  regarding the market for Fortamet® and the generic equivalent,
19  the overall net sales of Lupin's products, as well as the
20  overall total units of Lupin's products sold.
21          THE COURT:  Is it correct, and I think there is even
22  exhibits in the record, that plaintiffs have produced some of
23  the type of information that you're objecting to?  For
24  example, I think I saw in the record some Power Points dealing
25  with forecasts.
```

12:17PM (line 5)
12:17PM (line 10)
12:17PM (line 15)
12:18PM (line 20)
12:18PM (line 25)

```
 1              MR. KATZ:  Are you referring to Shionogi's forecasts

 2    or Lupin's forecasts?

 3              THE COURT:  Shionogi.

 4              MR. KATZ:  Shionogi has produced a business plan and

 5    a marketing plan, a 2008 plan and 2010 plan, relating to its

 6    products.

 7              THE COURT:  Is that what you classify as highly

 8    sensitivity confidential information?  Doesn't that fit into

 9    that category?

10              MR. KATZ:  Well, I can't speak for what would be

11    highly sensitive to Shionogi, but Lupin has agreed to produce

12    its forecasts in this case.  What we're concerned about is

13    identifying the specific customers and the specific terms with

14    the customers such that if it were disclosed, Lupin's direct

15    competitors here of Andrx, now Watson, and Shionogi can

16    recreate Lupin's pricing, marketing and sales strategy,

17    undercut them in the market, compete with them for the same

18    customers and take away customers and business.

19              THE COURT:  Have you ever had a meet-and-confer with

20    plaintiffs about what I call the nitty gritty of these

21    discovery requests?

22              MR. KATZ:  We did have a meet-and-confer regarding

23    the highly sensitive information.  We did.

24              THE COURT:  Because what you're saying now is

25    something that really wasn't developed in the papers.  It just
```

12:18PM (lines 5–6)
12:18PM (line 10)
12:19PM (line 15)
12:19PM (line 20)
12:19PM (line 25)

1  seems that in the papers  Lupin was taking the position that

2  none of this should be produced.  I mean, you cited Judge

3  Kugler and the order was inadequate, and other arguments.  But

4  I'm hearing from you now that you are not arguing that none of

5  this information should be produced, but you are more

6  concerned about the scope of what they are asking for.

7          MR. KATZ:  I apologize if we weren't clear in our

8  papers.  We did put into expert declarations from our expert

9  Ivan Hoffman, and he specifically -- explicitly says in those

10  declarations to his knowledge Lupin has agreed to produce its

11  forecasts, net sales and the total units sold.  We did say

12  that specifically in our reply brief as well, after we

13  received their opposition and it became clear that they didn't

14  seem to acknowledge that we had already agreed to produce

15  that.

16          We did not object to producing forecasts and we've,

17  in fact, produced some of those documents already.  And they

18  are aware of the total units sold of our product, and we are

19  prepared to produce the total net sales as well.  And we've

20  put in an affidavit from our vice president of sales and

21  marketing, Robert Hoffman, which wasn't acknowledged in

22  Shionogi's brief, about the harm that Lupin would suffer if

23  its information were to fall in the hands of competitors.

24          Shionogi says, well, Lupin, and as we say in the

25  Hoffman declaration, Lupin protects this information with

12:21PM

```
 1   confidentiality agreements all the time, but those

 2   confidentiality agreements are with our customers and not with

 3   our competitors.  Competitors have motivation to act on the

 4   information and to take customers away from Lupin, number one;

 5   and number two, each customer doesn't get the entire picture

 6   of Lupin's entire sales, marketing and pricing strategy, they

 7   only know the terms of their own particular deal.  So, it's

 8   not true that Lupin's regular course of business is just to

 9   disclose all of this information such that someone could

10   recreate their whole strategy.
```

12:22PM

```
11           THE COURT:  What is it about this protective order

12   that is inadequate to protect the confidentiality of the

13   information that plaintiffs request?

14           MR. KATZ:  Well, first of all, we think that a
```

12:22PM

```
15   protective order is never a hundred percent guarantee.  And I

16   think Judge Kugler recognized that during the briefing on the

17   preliminary injunction he said something to the effect that

18   "if this information were to escape the confines of the

19   protective order."  And there are cases that say the same
```

12:22PM

```
20   thing, that protective orders don't offer a guarantee, and as

21   well --

22           THE COURT:  Can you point to anything specific that's

23   in there that you are uncomfortable with or is there something

24   you would like added to that order that would give your client
```

12:23PM

```
25   more comfort?
```

1    MR. KATZ:  Well, in the protective order it does

2    provide for disclosing information to experts and other

3    third-party consultants.  And I imagine Shionogi, if they --

4    the problem is we don't think Shionogi needs the information,

5    but they would argue that their experts should be allowed to

6    use this information if it's produced.  I think we have to

7    take a step back and do a balancing between the harm if it's

8    disclosed, no matter how minimal it might be, versus

9    Shionogi's relevance and necessity for the documents.  And we

10   put in two declarations from our expert saying that there

11   is -- when you do this balancing, Shionogi does not have a

12   need that outweighs the harm to Lupin.  In fact, Shionogi put

13   in an expert declaration from a Mr. Gerardi, but nowhere in

14   that expert declaration or in Shionogi's papers do they

15   identify any concrete ways in which -- how they will use these

16   very specific, customer specific information or why they need

17   it.  There is nothing in there like that.

18        They attempt at one example about cross referencing

19   sales to one pharmacy for Lupin's product, which is the

20   Shionogi product, but that doesn't take into account the

21   realities of the prescription drug market.  They say they

22   needed that information to determine demand, but demand is

23   determined by the physicians prescribing behavior and whether

24   or not the generic is substituted for the brand is largely

25   dependent upon substitution laws, generic substitution laws.

*United States District Court*
*Camden, New Jersey*

12:24PM 1    So a physician might prescribe Fortamet®, for example, and the

2    patient will take that to a pharmacy, that prescription, and

3    there might be a mandatory substitution law and the Lupin

4    product will be substituted.  That's what interprets what drug

5    is dispensed.

6         As well, I mean, the pharmacy may have a Lupin

7    product or it might have a Watson product; that might be

8    largely dependent upon the relationship they have with

9    whatever wholesaler they have and what that wholesaler

12:25PM 10   carries.  Shionogi doesn't take into account that the

11   customers might be removed from this actual demand, from the

12   physicians and the mandatory substitution laws and the

13   patients actually getting the drugs.

14        They also point to price erosion as a potential

12:25PM 15   reason why they might need this information, but nowhere have

16   they ever said that there actually has been price erosion.

17   They never alleged that, they've never showed us any evidence

18   that prices have decreased, that there have been discounts and

19   rebates offered for Fortamet®.  There is absolutely no

12:25PM 20   evidence in the record of that.

21        And the burden should be on Shionogi to show the

22   relevance and need.  And as our expert explained, in terms of

23   price erosion you would look at Shionogi documents, you would

24   look at their prices to determine whether or not their prices

12:26PM 25   have actually gone down.

1    They also refer to market expansion.  We're dealing

2    with Fortamet®, the brand drug, but that's also competing

3    against another couple of other brand drugs, Glucophage® and

4    Glumetza®.  Lupin is not going to have their contracts

**12:26PM**  5    regarding Glucophage® or Glumetza®, you have to look at

6    third-party data from IMS, who collects market-wide data

7    regarding the entire market and to see where sales are going.

8    Is it going to Glucophage®, or is it going to the Glucophage®

9    generic?  Is it going to Fortamet® or is it going to the

**12:26PM**  10   generic equivalent?

11        THE COURT:  Is IMS a third-party?

12        MR. KATZ:  IMS is a third-party.

13        THE COURT:  Are they recognized in this business as a

14   recognized authority?  Do all the businesses in this industry

**12:26PM**  15   look to IMS for reliable statistics and information?

16        MR. KATZ:  I believe they do.  I don't think there

17   would be any dispute that all the experts in these type of

18   cases, they rely on IMS data for market information.  I don't

19   know if my counsel disagrees, but I've never heard a dispute

**12:27PM**  20   about that.

21        What Shionogi needs for their alleged lost profits

22   are the forecasts, which we've agreed to produce; their own

23   forecasts; their own profitability information, they have to

24   look at their own cost information, their own sales revenues.

**12:27PM**  25   And we will give them the total units sold, as we have given



1 them in the past with respect to the prior launch.

2         Now, they also claim they need our information for a

3 reasonable royalty. In a case like this when you are talking

4 about a drug, there is no reason to look at the infringer's

5 documents. You are not considering the patented features of

6 the product separately; either the drug is approved by the FDA

7 and it's substituted, or it not. It's sort of an all or

8 nothing type of thing.

9

10

11

12

13

14

15

16

17         THE COURT: I need help with this one, counsel.

18         MR. KATZ: -- determining a reasonable royalty. So

19 let me back up and let's talk about --

20         THE COURT: Yes, let's talk about this one. I need

21 some help on this.

22

23

24

25

*United States District Court*
*Camden, New Jersey*







21319









4          THE COURT:  Not in the context of litigation?  Isn't

5    that what all this is about?

1    relevant to your lost profits, royalty or some other damage

2    claim?

3              MR. BASSETT:  It is most directly relevant to our

4    reasonable royalty damages claim, your Honor, because this is

5    exactly what a reasonable royalty is, it's a hypothetical

6    negotiation that looks at what the value is the two parties

7    would put on this.

8    ████████████████████████████████████████████████████████

9    ████████████████████████████████████████████████████

10   ████████████████████████████████████████████████████████████

11   ██████████████████████████████████████████████████

12   ██████████████████████████████████████████████████████████

13   ██████████████████████████████████████████████████████

14   ██████████████████████████████████████████████

15   ████████████████████████████████

16             THE COURT:  You've got to show me something, counsel.

17   I mean, the Federal Circuit has addressed this relevance

18   issue --

19             MR. BASSETT:  Sure.

20             THE COURT:  -- in cases.  What is it, Micro Motion or

21   Mannington Mills, one of those cases.  You just can't say it's

22   relevant to damages.  That doesn't cut it.  That does not cut

23   it.  And I agree with that.

24             MR. BASSETT:  Okay.

25             THE COURT:  So you have to tell me why you need





1

2

3

4

12:44PM    5

6        THE COURT:  I didn't get the impression that they

7    were.

8        MR. BASSETT:  Right.  I mean, we were told we're not

9    giving you anything, and then as part of the briefing process

12:44PM   10    they said, well, we'll give you some of these forecasts and

11    such.  Which are helpful and it's relevant, but it's nowhere

12    near what we're entitled to under Rule 26.

13        THE COURT:  Did you give them the type of information

14    that they're -- I'm sorry.  Did you give them, did plaintiffs

12:45PM   15    give Lupin the type of information that you are now seeking

16    from Lupin?

17        MR. BASSETT:  Absolutely, your Honor.  There is a

18    fulsome detailed protective order in place in this litigation

19    and we are comfortable relying on that and relying on the good

12:45PM   20    faith of our opposing counsel.  Lupin brings this motion on

21    the presumption that this protective order is going to be

22    violated.  There is no reason for them to presume that, there

23    is no basis for that, and it's contrary to the law in this

24    area.

12:45PM   25        They have a burden of showing that the disclosure

*United States District Court*
*Camden, New Jersey*

Case 1:23-cv-00378-RBK-SJB   Document 5034   Filed 09/30/24   Page 87 of 100 PageID: 21327

12:46PM

12:46PM

12:46PM

12:46PM

12:46PM

12:47PM

1  will work "a clearly defined and serious injury."  They have

2  not done that.  It's conjecture, it's the possibility that

3  some of this might get into the wrong hands.  It won't happen.

4  If they think this protective order, which they negotiated,

5  which they agreed to, is inadequate, then let's work on the

6  protective order.

7        I've been involved in cases with competitors all of

8  the time.  We've got a case right now between Apple and

9  Samsung where we're counsel for Apple, direct competitors.

10  The parties have exchanged source code, which is the, you

11  know, the coin of the realm there.  It's the most important

12  thing, crown jewel, between direct competitors under a

13  protective order.  In that case, we've agreed that the source

14  code will be kept only in outside counsel's office on a

15  computer and anybody that wants to come there -- that's not

16  connected to the internet so that -- so there are steps that

17  can be taken to keep this information more protected.  We have

18  a three level protective order, if that's what they really

19  think they need here.  But this is a protective order they

20  negotiated and they agreed to.  We addressed the very specific

21  types of documents that they are refusing to give us in that

22  protective order.  We're talking about customer information,

23  financial information, sales information, all of which is

24  directly relevant, your Honor, to our damages assertions in

25  this case.

1    Lost profits is a customer by customer analysis

2    because we have a burden of proving that, but for Lupin's

3    infringement we, Shionogi, would have made those sales.  The

4    only way we can prove that is by knowing who the customers are

12:47PM    5    because there may be customers with whom Shionogi has no

6    dealings; never would.  Customers that only buy generic

7    products would never buy the name brand.

8    Moreover, they argue the market has expanded as a

9    result of Lupin's entry into the market.  Well, unless we know

12:47PM    10    which customers they are selling to and how much, we're not

11    going to know which ones fall in that expansion, that alleged

12    expansion, versus which ones are sales that were actually

13    taken from us.

14    Likewise, in the reasonable royalty analysis, one of

12:47PM    15    the factors is looking exactly at all of this information that

16    was in the custody and control and possession of the two

17    parties at the time the infringement began.  Unless we have

18    this information, we have no basis to know what Lupin would

19    have agreed to had we negotiated a hypothetical license

12:48PM    20    agreement at the time that the infringement commenced.

21    Your Honor, this is standard discovery in every

22    patent case.  As a matter of fact, the discovery requests that

23    Lupin is resisting literally comes from our file Standard

24    Discovery Requests in Patent Cases.  It's, you know, click,

12:48PM    25    put in the name of the other party.  We do these in every

single case; we get them in every single case.  I've been

doing this for 25 years, I've never had a defendant refuse to

give this type of information because it is so obviously

relevant to a lost profits and reasonable royalty analysis.

12:48PM      To the extent they think there is some danger that

the protective order is not going to work, the answer is to

amend the protective order, it's not to give us no discovery

related to these issues.  The fact that we get discovery from

some other sources doesn't solve the problem because we're

12:49PM  entitled to test that information.

IMS data, which companies do rely on, is not terribly

reliable.  Our experts tell us it often turns out to be very

wrong because it's often based on hearsay and information that

parties give, companies give to try to boost their image.  We

12:49PM  need to see the real data, that's what discovery is for, and

we will protect confidences, keep it under the protective

order.  That risk is there in every single case where you have

two competitors fighting about patent infringement.  There is

nothing unique about this case.

12:49PM      THE COURT:  Thank you, counsel.

MR. BASSETT:  Thank you.

MR. KATZ:  I just want to make a few quick points.

Irrespective of whether or not there is a protective order,

the Federal Circuit case <u>Micro Motion</u> requires that Shionogi

12:49PM  has to establish relevance and need.  They just haven't done

1    this here.  They don't take into account the realities of the

2    market.  They say again that they need to calculate their lost

3    profits on a customer by customer basis, but it just doesn't

4    work that way.  There are generic substitution laws and if

12:50PM    5    it's not filled by the brand, it will be filled by the generic

6    and we'll provide the total units sold, as well as the net

7    sales.

8         And they are not taking into account the fact that

9    generics and brands, they might have completely different

12:50PM    10    customers and distribution chains and they're not necessarily

11    overlapping.  It's not like, well, either buy from Lupin or

12    Shionogi.  They are distributing the product in different

13    ways.  So you want to know how much of the product is in the

14    market in total, it doesn't matter how it got to the end

12:50PM    15    patient.

16         As far as -- I don't know any basis for them saying

17    that the IMS data is not reliable.  I know that experts rely

18    on it regularly on both sides.  And I don't see if they are

19    not -- I don't see what they plan to rely on with respect to

12:51PM    20    market expansion regarding Glumetza ® and Glucophage ® and the

21    generic equivalent when the parties making those drugs are not

22    in this case.  We will be relying on IMS data for determining

23    the market for those drugs, I don't know what plaintiffs plan

24    to do.

12:51PM    25         THE COURT:  Thank you, counsel.

1    The record is closed on the latest motion.  The court

2    will read its oral opinion into the record.

3    This matter is before the court on Lupin's motion for

4    a protective order concerning its highly sensitive commercial

12:51PM  5    information involving commercial relationships and settlement

6    negotiations.  The background facts are well known to the

7    parties, as well as the procedural history, so the court does

8    not believe there is any need to repeat them in detail.

9    ████████████████████████████████████████████████

12:52PM  10   ██████████████████████████████████████████████████

11   ███████████████████████████████████████████████████

12   ██████████████████████████████████████████████████

13   ████████████████████████████████████████████████████

14   ███████████████████████████████████████████████████

12:52PM  15   ████████████████████████████████████████████████████

16   ██████████████████

17   First.  Lupin has argued in its papers, although not

18   here at oral argument, that Judge Kugler's previous comments

19   in October 2011 regarding plaintiffs' request for highly

12:53PM  20   sensitive commercial information are either binding or highly

21   persuasive regarding how this court should rule at this time.

22   With regard to this argument, the court agrees with Judge

23   Kugler that the requested information is sensitive.  The court

24   agrees with Judge Kugler that Lupin would be harmed if the

12:53PM  25   requested information gets into the hands of its competitors.

1   The court also agrees with Judge Kugler's apparent comment

2   that the requested confidential information was not terribly

3   important to the preliminary injunction issue before it.

4          However, the issue before this court is different

12:54PM   5   than the issue before Judge Kugler; therefore, Judge Kugler's

6   ruling that the confidential information should not be

7   produced in October 2011 for the purposes of his preliminary

8   injunction analysis is not determinative on whether Lupin's

9   present motion should be granted.

12:54PM   10          Secondly.  To the extent the argument is made, the

11   court disagrees that the current protective order is

12   inadequate to protect Lupin's interests.  Lupin has not

13   specifically identified why the protective order is

14   inadequate.  Lupin's confidential information is no more or

12:55PM   15   less entitled to protection than other confidential

16   information produced in the case.  The parties have been using

17   that order without any apparent problems and there is no

18   reason to expect that if the court orders Lupin to produce the

19   requested information there will be problems with it.

12:55PM   20          In addition, if necessary to protect the parties'

21   interests, the court has not foreclosed the possibility that

22   additional measures or precautions can be inserted into the

23   protective order to protect the parties' interests.  It is up

24   to Lupin to identify what these measures are and why they are

12:55PM   25   necessary.  The parties should be able to come to an agreement

on this issue, if in fact there is a dispute, because they
both have the identical interest in protecting their
confidential information.

Third.  As a general matter, to the extent the
argument is made, the court, of course, observes that there is
no bar to obtaining what has been characterized as highly
sensitive confidential information.  This type of information
is routinely discovered in patent cases and has been
discovered already in this case, and there is no carve-out in
Federal Rule of Civil Procedure 26 for this information.  This
is evidenced by the fact that this type of information has
already been exchanged in the case and further evidenced by
the fact that Lupin has requested highly sensitive
confidential information from plaintiffs and plaintiffs have
produced this information.

Getting to the crux of the issue on the present
motion, Lupin's key argument is that plaintiffs requests are
irrelevant and unnecessary.  This argument is primarily based
on the affidavits of Lupin's damages expert, Ivan Hoffman.
The sum and substance of Lupin's and Hoffman's argument is
that the court should completely discount the affidavits of
plaintiffs' damages expert, Christopher Gerardi, and accept
the averments of Mr. Hoffman.  Lupin argues Gerardi "ignores
the reality of the prescription drug market and the
information actually necessary and relevant to a damages

calculation in a Hatch-Waxman case like this one."  Reply

Brief at 1.

          The reasons for Lupin's argument are essentially

twofold.  One, it argues that Hoffman has more experience in

12:58PM  pharmaceutical patent cases than Gerardi; and two, Gerardi

doesn't focus on the peculiarities of ANDA and pharmaceutical

cases.  Without getting into the specifics of their defense of

Gerardi, it is no surprise that plaintiffs defend Gerardi and

dispute all of Lupin's arguments that Gerardi is either

12:58PM  unqualified or his methodology is wrong.

          For purposes of the present motion, the court will

not accept Lupin's invitation to act as a fact-finder and

decide at this time that Lupin's expert is more credible than

plaintiffs' expert.  This is not the appropriate time or

12:59PM  context to decide this issue.  In the Court's view, both

experts present facially plausible explanations at this stage

and the court will not discount one or the other.  At the

appropriate time Lupin can file a Daubert motion if it

believes the motion is appropriate.  If the Daubert motion is

12:59PM  not granted, then the jury and not this court will decide who

to believe.

          The court appreciates Mr. Hoffman's input on what he

believes is excessive and unnecessary discovery, and his

experiences in ANDA, patent and pharmaceuticals litigation;

01:00PM  however, whether information is discoverable is a decision for

1    this court to make and not an expert such as Mr. Hoffman.

2            The question then becomes where does this leave us

3    with regard to the motion?  For the purpose of the present

4    motion only, the court finds that plaintiffs have established

01:00PM    5    in a general manner that the damages information they request

6    is relevant and some or all of it must be produced in

7    discovery.  Plaintiffs have explained in detail their damage

8    theories, whether it be lost profits and/or reasonable

9    royalty, and how their requests are relevant to their

01:01PM    10   analysis.  Gerardi's affidavits are much more than, as Lupin

11   argues, an "an obscure showing" that the information may be

12   relevant.  Reply Brief at 2.

13   ████████████████████████████████████████████████

14   ████████████████████████████████████████████████████

01:01PM    15   ████████████████████████████████████████████████████

16   other words, plaintiffs have particularized why the

17   information they request is relevant to the claim and defenses

18   in the case for discovery purposes.  Obviously, this court is

19   not ruling on any admissibility issues for trial, that is left

01:01PM    20   to Judge Kugler.

21           Nonetheless, at this time the court will not order

22   that Lupin must produce all of the information plaintiffs

23   request.  For better or worse, the parties have been focusing

24   on what the court refers to as "big picture" issues rather

01:02PM    25   than the specifics of all of plaintiffs' requests.  It is

1  evident to the court that plaintiffs' requests paint with a

2  broad brush and in some instances appear to be overbroad and

3  unnecessary.  Since the parties have not held a detailed

4  meet-and-confer on the specifics of plaintiffs' requests, the

01:02PM  5  court will give them the opportunity to do this.

6       The court's ruling is that as a general matter,

7  plaintiffs' discovery requests ask for relevant information

8  and it will not grant Lupin's request in toto.  Therefore,

9  Lupin must be prepared to produce some of the information it

01:03PM  10  has been seeking to protect.  The court leaves it up to the

11  parties to meet and confer in good faith to attempt to agree

12  on what information must be produced.  The only thing the

13  court is ruling at this time is that as a general matter, the

14  information plaintiffs seek is relevant but not all of the

01:03PM  15  discovery plaintiffs request is necessary, reasonable or

16  appropriate.  To the extent the parties cannot agree, the

17  appropriate motions must be filed.  And before we adjourn

18  today, we'll set a date for that motion.

19       Given the time and resources devoted to this issue,

01:03PM  20  the court will not hesitate to impose costs if it finds that

21  one side or the other is unreasonable.  Given the stakes in

22  the case and the abilities and professionalism of counsel in

23  the case, the court expects the parties will be able to work

24  their issues out.  If ultimately the court has to decide what

01:04PM  25  it refers to as the nitty gritty of plaintiffs' discovery, it

1   will evaluate all of the factors in Rule 26(b)(2)(C).

2           In addition, the court will be guided by the rulings

3   in Micro Motion, 894 F. 2d 1318 (Fed. Cir.  1990), and

4   Mannington Mills 206, Federal Rules Decision 525 (D. Del.

5   2002).  The court will examine with particularity whether each

6   of plaintiffs' requests is relevant to its damage theories and

7   it will decide whether to order production while balancing

8   relevance, need, confidentiality and harm.  As noted in Micro

9   Motion and Mannington Mills, even if the requested information

10  is relevant, discovery is not allowed where there is no need

11  shown or where compliance is unduly burdensome or where the

12  potential harm caused by production outweighs the benefit.

13          There are three other issues the court wants to

14  address.

15          If the court recollects, the motion was directed to

16  30(b)(6) issues on this topic and interrogatories and requests

17  for production of documents.  The court is ordering the

18  parties to first address the interrogatories and the requests

19  for production, and 30(b)(6) depositions on these business

20  type issues that are relevant to this motion are stayed until

21  we resolve the document and interrogatory issues.  It may be

22  that that is sufficient and 30(b)(6) depositions on these

23  topics may not have to be taken.

24

25



01:07PM  5

01:07PM  10

01:07PM  15

14      The last issue the court wants to address is the

15  non-party issue.  The court is aware that apparently two

16  subpoenas for confidential business information was requested

17  of two non-parties, that those subpoenas were apparently

18  briefed and argued in at least one court but not decided, and

19  that the court and those parties deferred to this court.  This

01:08PM  20  opinion makes it perfectly clear that the court is not ruling

21  on the non-party subpoena issues.

22      With regard to non-party subpoenas, the court's

23  analysis is different.  There are protections in Rule 45 for

24  non-parties that in the court's view do not exist for parties

01:08PM  25  under Rule 26.  The court believes, based on the rule and

```
       1   applicable case law, that, of course, plaintiffs are entitled
       2   to relevant discovery from non-parties; however, the
       3   protections afforded non-parties for their trade secrets and
       4   confidential information is more extensive than it is for
01:09PM  5   parties.  So the court does not want its ruling with regard to
       6   the dispute between Lupin and plaintiffs to be determinative
       7   on the non-party subpoena issues.  The court hopes that this
       8   opinion will give guidance to the non-parties and to
       9   plaintiffs about the court's thinking and hopefully that will
01:09PM 10   result in a resolution of the issues.  But if, in fact, the
      11   non-parties cannot reach an agreement with plaintiffs on what
      12   should or should not be produced, then an appropriate motion
      13   should be filed.
      14           As to non-parties, the court will not address the
01:10PM 15   issue in a letter brief, it insists on a motion.
      16           So in sum, the court's ruling as to Lupin's motion is
      17   as follows:  The motion to prevent in toto the discovery of
      18   what has been classified as highly sensitive confidential
      19   information is denied.
01:10PM 20            With regard to the specifics of the parties'
      21   discovery requests, the parties are directed to
      22   meet-and-confer hopefully to resolve their disputes regarding
      23   the interrogatories and document requests.  The parties should
      24   hold off on Rule 30(b)(6) depositions regarding these issues
01:11PM 25   until what the court refers to as the paper discovery issues
```

1   are resolved.  The court will give the parties a date to file

2   motions regarding these discovery issues regarding

3   confidential information.

4          I will tell the parties in this case what I tell the

01:11PM   5   parties in every case.  This court has no problem dealing with

6   as many discovery issues and disputes as the parties present

7   to it.  The only thing the court asks is the parties exhaust

8   their reasonable good faith efforts to try and resolve their

9   disputes without court intervention.  The court believes that

01:11PM   10   parties can act in good faith and still have discovery

11   disputes, but the court insists that the parties exhaust their

12   reasonable efforts to resolve the disputes before it sets out

13   to decide the disputes.   Of course, discussions should be

14   guided by the parameters in this ruling.  I wish more

01:12PM   15   specificity could be given as to the nuts and bolts of what

16   we're talking about, but to be candid, counsel, for

17   understandable reasons the particularity that the court is

18   looking for was not briefed or argued.  We were dealing with

19   bigger picture issues, and given the stakes at issue, given

01:12PM   20   the documents requested, are just too important for the court

21   to decide without a sufficient record and argument, which the

22   court does not have at this time.  If necessary, if we're back

23   here on these discovery issues, we should be prepared to roll

24   up our sleeves and go document category and type by category

01:12PM   25   and type.  The court is going to insist that plaintiffs show

1    the necessity for each type of document it requests.

2           The court will enter an appropriate order to that

3    effect.

4           That completes at least the issues on the agenda

5    regarding the three motions.  What I'd like to address is the

6    schedule.  Counsel, with regard to the -- although plaintiff

7    has assured us that discovery would be done by the end of

8    June, and I thank you for that assurance, plaintiff --

9           MR. BASSETT:  Thanks for reminding me, your Honor.

10           THE COURT:  We won't forget that.

11           Counsel, meet-and-confer about this issue.  If you

12    come to a resolution of what you think is reasonable among

13    yourselves, a new schedule, present it to the court.  As long

14    as it's reasonable, it's going to be approved.

15           You should proceed under the assumption that Judge

16    Kugler is going to try this case in 2012, so adjust your

17    schedule accordingly.  So if you reasonably believe you need

18    to extend the end of June deadline, as long as you agree,

19    that's perfectly fine with the Court; if you disagree, let me

20    know and I'll decide how much time you get.

21           With regard to this damage and confidential business

22    discovery issue, I would like to tee up that issue if it is

23    going to be a dispute.  So I'm going to ask you to file your

24    motions within 30 days.  That will give you time to

25    meet-and-confer about these issues.

01:14PM
01:15PM
01:15PM
01:15PM

```
 1              Counsel, I mean what I say.  Hopefully you took the
 2    signal from the court's opinion that it is asking both sides
 3    to be reasonable.  The court does not believe that all of what
 4    plaintiffs asks for is necessary or appropriate, nor does the
 5    court believe that nothing -- Lupin, at least the court took
 6    it to argue that nothing was relevant and necessary and the
 7    court disagrees with that position.  So hopefully you can
 8    agree in the middle.  To the extent you can't, file your
 9    motions within 30 days and we'll deal with it.
10              Are there any other issues the parties want to
11    address?
12              MR. BASSETT:  Not from Shionogi, your Honor.
13              MS. JACOB:  No, your Honor, nothing that -- we need
14    to discuss with plaintiffs first before we brought it to the
15    court.
16              MR. BLUMENFELD:  We have nothing, your Honor.
17              THE COURT:  Okay.  Counsel, thank you very much.  It
18    looks like you can get out of here without having lunch in
19    Camden, so I congratulate you on your timing.  But good luck,
20    and if there is any problems, let us know.
21              THE DEPUTY CLERK:  All rise.
22              (Proceeding concluded at 1:15 PM.)
23
24
25
```

**'**

**'859** [1] - 9:12

**/**

**/S** [1] - 2:25

**0**

**08101** [1] - 1:9
**09-027** [1] - 3:4
**09-37** [1] - 1:5

**1**

**1** [1] - 77:2
**10** [1] - 46:21
**11** [3] - 1:10, 25:6, 46:14
**1212** [1] - 14:14
**13** [3] - 46:20, 46:21, 47:24
**1318** [1] - 80:3
**14** [1] - 46:21
**15** [3] - 46:21, 47:24, 48:4
**18** [1] - 46:20
**180** [1] - 62:22
**180-day** [1] - 59:9
**1990** [1] - 80:3
**1:15** [1] - 85:22

**2**

**2** [2] - 47:11, 78:12
**20** [3] - 34:5, 48:3, 65:23
**200** [1] - 7:3
**2002** [1] - 37:8
**2002)** [2] - 25:12, 80:5
**2008** [2] - 47:25, 52:5
**2010** [2] - 36:11, 52:5
**2010)** [1] - 36:14
**2011** [4] - 17:3, 58:22, 74:19, 75:7
**2012** [5] - 1:10, 14:10, 25:6, 46:14, 84:16
**206** [1] - 80:4
**20th** [2] - 37:7, 38:3
**21** [3] - 48:4, 48:11, 48:16
**210** [1] - 25:12
**25** [2] - 18:13, 72:2
**26** [2] - 65:13, 69:12, 76:10, 81:25

**26(b)(2)(C)** [1] - 80:1
**26(b)(2)(C)(i)** [2] - 48:24, 49:21
**271** [1] - 36:14
**28** [1] - 2:24
**29** [1] - 17:3
**29th** [2] - 9:22, 9:24
**2d** [1] - 80:3

**3**

**3** [1] - 46:20
**30** [8] - 21:2, 22:13, 29:17, 34:16, 45:14, 65:23, 84:24, 85:9
**30(b)(6** [36] - 11:7, 29:5, 31:20, 33:19, 35:5, 35:16, 36:17, 37:6, 37:10, 37:20, 38:7, 38:9, 38:21, 38:23, 39:2, 39:5, 40:1, 42:3, 42:12, 44:5, 44:13, 46:16, 46:25, 47:5, 47:8, 47:16, 48:14, 48:21, 49:4, 49:6, 49:15, 50:8, 80:16, 80:19, 80:22, 82:24
**30(b)(6)** [4] - 39:22, 40:11, 44:23, 46:12
**30-month** [1] - 5:24

**4**

**4** [1] - 46:20
**40,000** [2] - 21:2, 22:13
**409** [2] - 1:7, 46:12
**411** [1] - 1:7
**415** [2] - 1:7, 25:4
**42(b** [1] - 25:7
**45** [1] - 81:23

**5**

**5** [2] - 46:20, 46:21
**519** [1] - 25:12
**520** [1] - 25:12
**525** [1] - 80:4
**5th** [1] - 17:22

**6**

**6** [4] - 46:20, 46:21, 48:11, 48:16

**7**

**7** [3] - 46:20, 46:21, 47:25
**753** [1] - 2:24

**8**

**8** [3] - 46:20, 46:21, 47:23
**82** [1] - 36:14
**894** [1] - 80:3

**9**

**9** [4] - 46:20, 46:21, 48:11, 48:16

**A**

**Abbott** [1] - 36:11
**abilities** [1] - 79:22
**ability** [1] - 39:15
**able** [5] - 7:13, 8:20, 9:20, 75:25, 79:23
**absolute** [1] - 21:5
**absolutely** [9] - 8:7, 17:8, 17:16, 17:19, 19:19, 21:24, 42:24, 56:19, 69:17
**abstract** [1] - 68:10
**accept** [3] - 13:17, 76:22, 77:12
**accepted** [3] - 10:4, 12:4, 13:4
**access** [2] - 34:23, 43:11
**accommodation** [1] - 20:12
**accordingly** [2] - 28:25, 84:17
**account** [4] - 55:20, 56:10, 73:1, 73:8
**accounting** [1] - 6:12
**acknowledge** [1] - 53:14
**acknowledged** [2] - 51:17, 53:21
**act** [4] - 50:10, 54:3, 77:12, 83:10
**ACTION** [1] - 1:4
**action** [2] - 9:8, 9:24
**active** [1] - 24:8
**actual** [3] - 28:13, 30:25, 56:11
**add** [2] - 6:17, 26:11
**added** [2] - 17:4,

54:24
**addition** [8] - 26:25, 27:11, 27:15, 28:2, 34:21, 37:11, 75:20, 80:2
**additional** [5] - 7:10, 8:8, 11:15, 24:12, 75:22
**address** [16] - 4:15, 20:18, 27:9, 28:21, 29:4, 35:14, 43:6, 74:15, 80:14, 80:18, 80:24, 81:14, 82:14, 84:5, 85:11
**addressed** [3] - 41:12, 66:17, 70:20
**addresses** [1] - 26:9
**adjourn** [1] - 79:17
**adjudicating** [1] - 27:7
**adjust** [1] - 84:16
**admissibility** [1] - 78:19
**advance** [1] - 27:3
**advised** [1] - 32:11
**affect** [1] - 28:7
**affidavit** [1] - 53:20
**affidavits** [3] - 76:19, 76:21, 78:10
**afforded** [2] - 49:20, 82:3
**age** [1] - 27:14
**agenda** [1] - 84:4
**ago** [2] - 29:18, 34:15
**agree** [3] - 24:14, 30:7, 51:16, 66:23, 68:23, 79:11, 79:16, 84:18, 85:8
**agreed** [10] - 11:12, 34:13, 52:11, 53:10, 53:14, 57:22, 70:5, 70:13, 70:20, 71:19
**agreement** [32] - 59:14, 60:7, 60:10, 60:15, 60:16, 60:17, 60:21, 61:4, 61:17, 61:20, 61:21, 61:23, 62:3, 62:5, 62:11, 63:1, 63:8, 63:18, 63:22, 63:24, 64:17, 64:19, 64:20, 66:9, 67:3, 67:4, 67:7, 67:10, 68:24, 71:20, 75:25, 82:11
**agreements** [8] - 38:12, 54:1, 54:2, 59:14, 60:1, 63:13, 63:15, 65:23
**agrees** [2] - 74:22, 74:24, 75:1
**aiding** [1] - 50:14

**al** [3] - 1:3, 1:6, 3:4
**allegation** [1] - 31:24
**alleged** [7] - 32:12, 32:23, 56:17, 57:21, 58:9, 68:14, 71:11
**allotted** [1] - 15:12
**allow** [1] - 36:8
**allowed** [5] - 7:15, 36:23, 44:6, 55:5, 80:10
**allowing** [1] - 15:6
**almost** [2] - 13:6
**alternative** [1] - 9:3
**amend** [3] - 6:11, 6:16, 72:7
**amended** [4] - 6:5, 6:8, 6:14, 17:15
**analyses** [2] - 64:23, 67:13, 67:15
**analysis** [16] - 12:7, 28:3, 37:9, 44:24, 59:11, 65:18, 65:19, 67:14, 68:9, 71:1, 71:14, 72:4, 75:8, 78:10, 81:23
**ANDA** [30] - 13:8, 13:11, 13:18, 13:22, 13:24, 13:25, 15:17, 16:7, 16:8, 58:16, 58:25, 59:5, 59:8, 59:19, 60:12, 60:18, 60:21, 61:2, 61:21, 62:3, 62:20, 62:25, 65:11, 66:9, 66:10, 67:1, 74:11, 74:13, 77:6, 77:24
**Andrews** [1] - 18:12
**Andrx** [8] - 1:16, 3:15, 3:18, 22:14, 46:11, 46:21, 52:15, 60:6
**Andrx's** [1] - 30:5
**answer** [16] - 9:21, 21:16, 33:21, 39:9, 39:20, 39:24, 40:3, 41:15, 42:8, 42:9, 42:16, 42:17, 49:10, 67:12, 72:6
**answered** [5] - 6:18, 21:25, 32:10, 33:9, 40:13
**answers** [23] - 32:8, 32:11, 32:13, 32:16, 32:18, 32:24, 33:4, 40:14, 40:18, 40:21, 40:23, 41:3, 41:12, 41:25, 42:2, 42:4, 42:6, 45:22, 47:8, 49:18, 49:22, 49:25, 50:7
**anticipate** [1] - 15:2

**anticompetitive** [1] - 38:11

**antitrust** [1] - 36:13

**apologize** [1] - 53:7

**apparent** [2] - 75:1, 75:17

**appeal** [1] - 6:22

**appear** [2] - 51:17, 79:2

**appearances** [1] - 3:5

**APPEARANCES** [1] - 2:3

**appellate** [1] - 17:12

**Apple** [2] - 70:8, 70:9

**applicable** [2] - 26:14, 82:1

**application** [2] - 37:20, 50:8

**applications** [1] - 41:11

**applies** [1] - 42:3

**apply** [4] - 13:24, 31:1, 31:5

**appreciate** [1] - 4:24

**appreciates** [1] - 77:22

**appropriate** [17] - 12:13, 13:18, 25:17, 28:19, 39:9, 39:25, 46:2, 46:25, 50:15, 77:14, 77:18, 77:19, 79:16, 79:17, 82:12, 84:2, 85:4

**appropriately** [2] - 47:15, 48:14

**appropriateness** [1] - 81:11

**approval** [1] - 5:24

**approved** [2] - 58:6, 84:14

**April** [2] - 1:10, 17:22

**area** [2] - 7:22, 69:24

**areas** [1] - 24:10

**argue** [19] - 19:2, 47:3, 47:6, 47:9, 55:5, 61:24, 62:9, 63:16, 71:8, 74:13, 85:6

**argued** [2] - 74:17, 81:18, 83:18

**argues** [6] - 29:14, 46:23, 46:24, 76:23, 77:4, 78:11

**arguing** [4] - 13:10, 53:4, 65:25, 66:8

**argument** [28] - 12:4, 13:4, 17:25, 18:3, 19:9, 19:12, 20:20, 24:19, 25:6, 26:21, 27:3, 28:17, 29:25, 35:19, 41:2, 42:17,

44:21, 46:14, 74:18, 74:22, 75:10, 76:5, 76:17, 76:18, 76:20, 77:3, 81:1, 83:21

**arguments** [10] - 26:9, 41:24, 43:9, 44:9, 53:3, 63:11, 65:3, 65:9, 74:16, 77:9

**arise** [5] - 16:3, 27:9, 49:9, 49:21, 49:22

**Arsht** [1] - 1:17

**art** [2] - 31:13, 31:15

**aside** [2] - 30:6, 32:24

**assertions** [1] - 70:24

**associated** [1] - 49:6

**assume** [3] - 42:17, 59:7, 67:11

**assumes** [1] - 59:5

**assuming** [1] - 20:8

**assumption** [1] - 84:15

**assurance** [1] - 84:8

**assured** [1] - 84:7

**AST** [1] - 3:20

**Ast** [2] - 1:14, 3:18

**attached** [3] - 31:22, 32:21, 47:20

**attachment** [1] - 32:3

**attempt** [2] - 55:18, 79:11

**attention** [2] - 17:12, 50:1

**attorneys** [8] - 1:16, 1:23, 2:11, 2:14, 19:3, 43:19, 43:22, 44:3

**authorities** [1] - 47:19

**authority** [4] - 36:9, 45:14, 48:23, 57:14

**authorized** [4] - 5:22, 15:20, 15:25, 39:25

**available** [1] - 48:9

**averments** [1] - 76:23

**avoid** [3] - 7:14, 25:13, 27:21

**avoiding** [2] - 13:23, 65:6

**aware** [6] - 34:8, 45:13, 49:6, 49:9, 53:18, 81:15

---

**B**

---

**backed** [1] - 60:7

**background** [3] - 12:22, 74:6

**balancing** [3] - 55:7, 55:11, 80:7

**bar** [2] - 46:15, 76:6

**Barrett** [2] - 2:7, 3:25

**bars** [1] - 35:17

**based** [6] - 51:15, 59:8, 72:13, 76:18, 81:7, 81:25

**basic** [1] - 37:25

**basis** [8] - 31:23, 42:13, 43:15, 45:8, 69:23, 71:18, 73:3, 73:16

**BASSETT** [45] - 3:9, 4:17, 16:21, 16:25, 17:8, 17:16, 17:19, 18:1, 19:19, 19:22, 19:24, 20:3, 20:8, 20:10, 20:17, 20:21, 21:1, 21:8, 21:12, 21:19, 21:22, 21:24, 22:2, 22:5, 22:8, 22:10, 64:11, 64:13, 64:16, 64:20, 65:6, 66:3, 66:10, 66:19, 66:24, 67:5, 67:11, 67:21, 68:5, 68:21, 69:8, 69:17, 72:21, 84:9, 85:12

**Bassett** [3] - 1:18, 3:8, 16:21

**Bayard** [2] - 2:8, 3:22

**bears** [1] - 36:19

**became** [2] - 8:19, 53:13

**become** [4] - 4:14, 5:19, 8:13, 44:11

**becomes** [1] - 78:2

**began** [1] - 71:17

**beginning** [1] - 11:4

**behalf** [3] - 3:17, 3:18, 39:20

**behaved** [1] - 10:1

**behaves** [2] - 24:6, 24:7

**behavior** [1] - 55:23

**beliefs** [2] - 37:13, 45:17

**believes** [7] - 47:11, 49:18, 77:19, 77:23, 81:8, 81:25, 83:9

**benefit** [1] - 80:12

**benefits** [3] - 14:8, 26:19

**best** [3] - 32:14, 32:20, 46:18

**Beth** [3] - 2:6, 3:24, 5:5

**better** [4] - 39:12, 63:8, 63:9, 78:23

**between** [9] - 18:14, 18:25, 21:2, 55:7, 68:9, 68:13, 70:8,

70:12, 82:6

**beyond** [1] - 4:21

**bifurcate** [18] - 4:13, 4:23, 5:1, 5:7, 6:15, 6:19, 8:18, 12:5, 14:6, 15:14, 16:15, 17:15, 18:8, 25:3, 25:24, 26:14, 28:10, 29:2

**bifurcated** [5] - 10:15, 13:12, 18:14, 25:20, 28:15

**bifurcates** [1] - 27:22

**bifurcating** [1] - 28:13

**bifurcation** [34] - 4:19, 5:15, 9:1, 9:4, 11:25, 12:7, 12:9, 12:13, 13:5, 13:10, 13:18, 14:4, 14:9, 16:8, 16:10, 18:3, 18:25, 19:13, 20:23, 25:11, 25:13, 25:17, 25:24, 26:18, 26:22, 27:2, 27:4, 27:5, 27:11, 27:15, 28:12, 28:18, 28:19

**big** [2] - 9:24, 78:24

**bigger** [2] - 8:21, 83:19

**binding** [4] - 39:21, 40:1, 40:2, 74:20

**bit** [1] - 29:9

**blind** [1] - 37:24

**bluff** [1] - 37:24

**Blumenfeld** [3] - 1:18, 3:7, 29:8

**BLUMENFELD** [18] - 3:7, 3:10, 3:12, 3:14, 29:7, 30:3, 30:10, 31:21, 32:14, 33:1, 33:10, 33:14, 33:18, 34:1, 35:9, 35:12, 45:12, 85:16

**body** [3] - 24:2, 24:7, 24:8

**bolts** [1] - 83:15

**bond** [1] - 6:8

**book** [1] - 23:16

**boost** [1] - 72:14

**brand** [11] - 5:23, 15:19, 15:24, 55:24, 57:2, 57:3, 58:24, 59:14, 63:24, 71:7, 73:5

**brands** [1] - 73:9

**bread** [1] - 50:19

**brief** [11] - 29:23, 32:4, 32:21, 34:3, 36:9, 37:1, 47:11, 47:20, 53:12, 53:22, 82:15

**Brief** [2] - 77:2, 78:12

**briefed** [2] - 81:18, 83:18

**briefing** [3] - 19:10, 54:16, 69:9

**briefly** [1] - 37:4

**briefs** [2] - 59:23, 59:24

**bright** [2] - 27:19, 29:19

**bring** [4] - 11:11, 42:25, 45:24, 50:1

**bringing** [1] - 43:15

**brings** [1] - 69:20

**broad** [3] - 22:23, 25:10, 79:2

**broader** [1] - 67:23

**brought** [2] - 17:1, 85:14

**brush** [1] - 79:2

**burden** [8] - 25:16, 26:13, 27:9, 44:25, 50:13, 56:21, 69:25, 71:2

**burdens** [1] - 44:22

**burdensome** [4] - 26:11, 44:21, 49:2, 80:11

**business** [10] - 8:5, 50:18, 52:4, 52:18, 54:8, 57:13, 64:5, 80:19, 81:16, 84:21

**businesses** [1] - 57:14

**buy** [3] - 71:6, 71:7, 73:11

---

**C**

---

**calculate** [1] - 73:2

**calculating** [1] - 23:7

**calculation** [3] - 63:19, 74:14, 77:1

**calculations** [2] - 8:23, 63:21

**California** [1] - 34:9

**Camden** [2] - 1:9, 85:19

**candid** [1] - 83:16

**candidly** [1] - 36:15

**cannot** [3] - 50:2, 79:16, 82:11

**capable** [1] - 39:16

**carries** [1] - 56:10

**carve** [1] - 76:9

**carve-out** [1] - 76:9

**case** [145] - 4:4, 5:9, 6:3, 6:7, 6:12, 6:14, 7:24, 8:13, 8:17,

8:22, 9:5, 9:13, 9:19, 10:2, 10:6, 10:19, 11:24, 12:1, 12:3, 12:6, 12:8, 12:11, 12:13, 12:14, 12:17, 12:18, 12:20, 13:1, 13:6, 13:8, 13:9, 13:11, 13:13, 13:17, 13:18, 13:21, 13:22, 13:24, 13:25, 14:4, 14:13, 14:19, 14:22, 14:23, 15:14, 15:17, 16:6, 16:8, 17:11, 18:14, 18:17, 18:24, 18:25, 19:4, 19:5, 19:8, 19:11, 19:13, 19:14, 19:16, 20:11, 21:3, 23:9, 23:10, 23:11, 23:17, 25:11, 25:15, 25:21, 25:24, 26:2, 26:7, 26:14, 27:5, 27:12, 28:9, 28:10, 30:14, 30:15, 30:25, 31:7, 31:9, 31:24, 32:2, 33:2, 33:25, 34:1, 34:7, 34:10, 34:17, 35:24, 36:8, 36:11, 36:12, 36:16, 36:19, 36:23, 37:5, 37:7, 37:8, 38:4, 38:6, 38:8, 38:12, 40:18, 41:9, 41:16, 45:5, 47:12, 47:25, 48:12, 52:12, 58:3, 61:7, 63:3, 68:2, 70:8, 70:13, 70:25, 71:22, 72:1, 72:17, 72:19, 72:24, 73:22, 75:16, 76:9, 76:12, 77:1, 78:18, 79:22, 79:23, 81:4, 82:1, 83:4, 83:5, 84:16

**Cases** [1] - 71:24

**cases** [33] - 9:4, 11:25, 12:5, 12:9, 12:12, 12:19, 13:25, 15:17, 16:8, 16:14, 18:4, 18:13, 18:15, 25:17, 26:1, 26:7, 26:9, 26:25, 34:3, 34:9, 35:18, 37:18, 42:3, 54:19, 57:18, 59:12, 63:10, 66:20, 66:21, 70:7, 76:8, 77:5, 77:7

**category** [3] - 52:9, 83:24

**caused** [1] - 80:12

**cautioning** [1] - 50:3

**Century** [2] - 37:7, 38:4

**certain** [2] - 30:2, 46:16

**certainly** [15] - 7:24, 8:7, 12:17, 13:6, 13:7, 13:15, 14:7, 15:13, 18:18, 19:1, 22:21, 23:2, 32:17, 36:5, 44:22

**certified** [2] - 39:9, 39:25

**Certified** [1] - 2:3

**chains** [1] - 73:10

**characteristics** [2] - 23:21, 23:22

**characterize** [1] - 46:22

**characterized** [1] - 76:6

**characterizes** [1] - 50:24

**chase** [1] - 38:18

**checking** [2] - 6:10, 23:1

**chemistry** [2] - 12:20

**chide** [1] - 36:8

**choose** [1] - 15:10

**Christopher** [1] - 1:20, 76:22

**Ciena** [1] - 25:11

**Cir** [1] - 80:3

**Circuit** [7] - 6:21, 8:20, 17:9, 17:10, 29:13, 66:17, 72:24

**Circuit's** [1] - 9:8

**cite** [1] - 36:10

**cited** [6] - 12:19, 29:11, 30:14, 30:16, 34:3, 53:2

**cites** [3] - 25:17, 26:5, 59:12

**citing** [1] - 36:9

**CIVIL** [1] - 1:4

**Civil** [5] - 25:7, 37:22, 46:12, 48:23, 76:10

**claim** [14] - 6:6, 6:7, 6:9, 6:13, 7:13, 23:25, 35:16, 58:2, 63:12, 66:2, 66:4, 67:2, 74:14, 78:17

**claiming** [2] - 7:11, 58:14

**claims** [13] - 17:4, 25:9, 25:10, 30:24, 31:1, 31:5, 31:14, 36:13, 42:13, 50:12, 50:14

**clarified** [1] - 81:1

**clarifies** [1] - 41:22

**clarify** [3] - 5:1, 24:21, 60:9

**clarifying** [1] - 4:24

**clarity** [1] - 26:19

**classified** [2] - 47:17, 82:18

**classify** [1] - 52:7

**clear** [5] - 19:4, 24:18, 53:7, 53:13, 81:20

**clearly** [3] - 9:21, 18:3, 70:1

**CLERK** [1] - 85:21

**click** [1] - 71:24

**client** [1] - 54:24

**client's** [1] - 32:24

**cliff** [1] - 51:5

**Clifford** [2] - 2:8, 3:24

**close** [1] - 64:22

**closed** [2] - 46:6, 74:1

**clutter** [1] - 26:16

**code** [2] - 70:10, 70:14

**Cohen** [1] - 1:8

**coin** [1] - 70:11

**colleague** [2] - 3:25, 4:9

**colleagues** [1] - 3:23

**collection** [1] - 21:13

**collects** [1] - 57:6

**comfort** [1] - 54:25

**comfortable** [2] - 16:23, 69:19

**coming** [2] - 15:2, 30:17

**commenced** [1] - 71:20

**comment** [1] - 75:1

**commenting** [1] - 38:2

**comments** [1] - 74:18

**commercial** [4] - 8:10, 74:4, 74:5, 74:20

**communicated** [1] - 44:11

**companies** [2] - 72:11, 72:14

**company** [2] - 59:1, 62:6

**compelled** [1] - 36:17

**compete** [1] - 52:17

**competing** [1] - 57:2

**competition** [1] - 16:2

**competitors** [9] - 52:15, 53:23, 54:3, 70:7, 70:9, 70:12, 72:18, 74:25

**complained** [1] - 32:15

**complaint** [5] - 6:5, 6:8, 6:14, 6:17, 10:6

**complete** [2] - 11:3,

42:16

**completely** [4] - 20:4, 59:11, 73:9, 76:21

**completes** [1] - 84:4

**completion** [1] - 64:22

**complex** [14] - 12:14, 12:25, 13:9, 18:16, 18:20, 18:21, 25:19, 25:22, 25:23, 25:25, 26:4, 26:8, 26:23, 27:1

**complexities** [1] - 15:15

**complexity** [2] - 26:11, 27:4

**compliance** [1] - 80:11

**complicated** [13] - 5:19, 5:20, 6:1, 8:23, 12:2, 12:16, 13:2, 13:7, 13:8, 13:9, 15:18, 16:14

**complicating** [1] - 24:12

**complication** [1] - 13:19

**complications** [1] - 6:1

**comprehension** [1] - 25:14

**computer** [1] - 70:15

**concerned** [2] - 52:12, 53:6

**concerning** [2] - 38:4, 74:4

**conclude** [1] - 26:15

**concluded** [1] - 85:22

**concludes** [2] - 28:19, 50:3

**conclusion** [2] - 27:4, 38:3

**concrete** [1] - 55:15

**conduct** [1] - 28:8

**conducted** [1] - 48:7

**confer** [13] - 32:12, 32:17, 41:13, 49:25, 52:19, 52:22, 62:14, 79:4, 79:11, 81:13, 82:22, 84:11, 84:25

**conference** [1] - 17:22

**conferences** [2] - 41:18, 41:21

**confers** [1] - 69:3

**confidences** [1] - 72:16

**confident** [3] - 9:13, 19:16, 28:4

**confidential** [22] - 8:5, 34:21, 43:12, 43:14, 43:21, 50:18, 50:25,

51:1, 52:8, 75:2, 75:6, 75:14, 75:15, 76:7, 76:14, 81:16, 82:4, 82:18, 83:3, 84:21

**confidentiality** [5] - 54:1, 54:2, 54:12, 61:8, 80:8

**confines** [1] - 54:18

**Confoy** [2] - 2:10, 4:1

**CONFOY** [1] - 4:2

**confuse** [1] - 26:16

**confusion** [3] - 13:24, 19:8, 51:14

**congratulate** [1] - 85:19

**conjecture** [1] - 70:2

**connected** [1] - 70:16

**connection** [4] - 7:2, 11:15, 58:16, 59:17

**Connell** [2] - 1:22, 3:13

**consequential** [2] - 7:11, 7:16

**conservation** [1] - 27:6

**conserve** [1] - 25:13

**consider** [4] - 25:13, 26:23, 27:1, 59:4

**consideration** [2] - 27:25, 45:1

**considerations** [2] - 9:5, 13:22

**considered** [2] - 5:15, 32:11

**considering** [2] - 58:5, 65:17

**consistent** [3] - 37:21, 37:23, 48:18

**consultants** [1] - 55:3

**contended** [1] - 24:22

**contention** [31] - 4:20, 29:5, 29:14, 29:20, 29:21, 30:1, 30:13, 30:18, 31:25, 32:1, 32:9, 32:25, 33:8, 33:19, 34:4, 34:11, 34:14, 34:16, 38:20, 40:19, 40:22, 40:25, 41:12, 42:11, 45:14, 47:7, 47:10, 47:18, 47:19, 48:6, 48:13

**contentions** [24] - 30:2, 30:5, 30:12, 30:13, 30:23, 31:2, 31:6, 31:8, 31:15, 32:5, 32:6, 32:7, 33:6, 33:11, 33:12, 33:23, 35:2, 43:18, 45:16, 45:19, 45:23,

46:23, 46:24, 48:2
**contest** [1] - 37:25
**context** [13] - 10:1, 38:13, 38:15, 59:21, 61:1, 62:24, 65:2, 65:4, 65:6, 65:10, 68:6, 68:10, 77:15
**continue** [1] - 9:20
**CONTINUED** [1] - 2:3
**contract** [2] - 68:19, 81:5
**contracted** [2] - 68:18, 81:12
**contracts** [3] - 51:9, 51:10, 57:4
**contrary** [1] - 69:23
**control** [2] - 37:20, 71:16
**convenient** [2] - 49:1, 49:5
**conversely** [1] - 50:9
**convinced** [1] - 28:4
**copies** [1] - 63:13
**copy** [1] - 38:11
**core** [1] - 45:5
**Corp** [2] - 25:11, 25:12
**corporate** [2] - 39:9, 47:1
**corporation** [4] - 38:23, 39:20, 39:21, 40:1
**corporation's** [5] - 37:10, 37:12, 37:13, 39:5, 45:16
**correct** [8] - 2:24, 4:18, 23:2, 41:10, 42:14, 42:15, 44:10, 51:21
**corrected** [1] - 41:8
**correctly** [1] - 48:5
**Corvis** [1] - 25:11
**cost** [2] - 57:24, 64:3
**costs** [2] - 45:1, 79:20
**counsel** [39] - 3:23, 4:3, 4:5, 4:6, 13:5, 14:3, 14:18, 18:5, 20:11, 20:14, 22:7, 24:21, 24:24, 29:3, 35:8, 45:9, 46:5, 50:16, 50:18, 50:23, 57:19, 58:17, 64:6, 64:8, 66:12, 66:16, 69:2, 69:20, 70:9, 72:20, 73:25, 79:22, 83:16, 84:6, 84:11, 85:1, 85:17
**Counsel** [1] - 50:20
**counsel's** [1] - 70:14
**counterclaim** [1] - 23:11

**counterclaims** [2] - 23:18, 25:9
**country** [1] - 18:11
**couple** [2] - 15:8, 57:3
**course** [10] - 12:3, 14:23, 16:12, 18:19, 28:9, 48:9, 54:8, 76:5, 82:1, 83:13
**COURT** [132] - 1:1, 3:1, 3:21, 4:3, 4:6, 4:11, 4:24, 5:9, 6:3, 7:16, 8:5, 10:10, 10:16, 10:21, 11:23, 12:15, 13:4, 14:3, 14:13, 14:17, 14:25, 16:18, 16:23, 17:6, 17:14, 17:17, 17:24, 19:18, 19:21, 19:23, 20:1, 20:7, 20:9, 20:16, 20:19, 20:24, 21:7, 21:10, 21:16, 21:20, 21:23, 21:25, 22:3, 22:7, 22:9, 22:11, 24:18, 24:24, 29:25, 30:7, 31:17, 32:8, 32:23, 33:7, 33:12, 33:15, 33:25, 35:8, 35:10, 35:19, 35:21, 35:24, 36:2, 36:21, 37:2, 38:7, 38:18, 38:20, 39:6, 39:8, 39:19, 39:24, 40:8, 40:13, 40:19, 41:1, 41:6, 41:11, 42:11, 42:16, 43:17, 44:2, 45:9, 45:11, 46:5, 50:23, 51:12, 51:21, 52:3, 52:7, 52:19, 52:24, 54:11, 54:22, 57:11, 57:13, 58:17, 58:20, 59:17, 59:23, 60:13, 60:17, 60:20, 61:5, 61:9, 61:13, 61:20, 61:24, 62:2, 62:8, 63:10, 64:6, 64:8, 64:12, 64:15, 64:17, 65:4, 65:25, 66:8, 66:16, 66:20, 66:25, 67:9, 67:18, 67:25, 68:16, 69:6, 69:13, 72:20, 73:25, 84:10, 85:17
**court** [150] - 4:12, 4:22, 6:12, 8:12, 9:3, 9:14, 10:6, 14:1, 14:4, 14:21, 15:3, 15:13, 15:15, 18:3, 18:10, 19:14, 20:5, 21:15, 24:25, 25:2, 25:5, 25:8, 25:10,

25:12, 25:19, 25:20, 26:6, 26:8, 26:14, 27:5, 27:12, 27:20, 27:22, 27:24, 28:3, 28:4, 28:6, 28:11, 28:19, 28:20, 29:1, 33:22, 34:13, 35:7, 35:14, 36:16, 36:20, 36:23, 37:9, 37:15, 38:3, 41:12, 41:18, 41:20, 44:23, 45:25, 46:7, 46:9, 46:12, 46:18, 47:11, 47:13, 47:22, 48:3, 48:4, 48:17, 48:22, 48:24, 49:5, 49:8, 49:14, 49:18, 49:22, 49:23, 50:3, 50:5, 50:9, 50:16, 51:2, 61:12, 74:1, 74:3, 74:7, 74:15, 74:21, 74:22, 74:23, 75:1, 75:4, 75:11, 75:18, 75:21, 76:5, 76:21, 77:11, 77:17, 77:20, 77:22, 78:1, 78:4, 78:18, 78:21, 78:24, 79:1, 79:5, 79:10, 79:13, 79:20, 79:23, 79:24, 80:2, 80:5, 80:13, 80:15, 80:17, 80:24, 81:2, 81:8, 81:10, 81:12, 81:14, 81:15, 81:18, 81:19, 81:20, 81:25, 82:5, 82:7, 82:14, 82:25, 83:1, 83:5, 83:7, 83:9, 83:11, 83:17, 83:20, 83:22, 83:25, 84:2, 84:13, 85:3, 85:5, 85:7, 85:15
**Court** [1] - 84:19
**Court's** [4] - 48:10, 51:1, 77:15, 81:6
**court's** [19] - 4:24, 17:19, 25:1, 26:4, 27:15, 27:25, 28:2, 28:3, 36:24, 37:1, 38:6, 39:4, 50:1, 79:6, 81:22, 81:24, 82:9, 82:16, 85:2
**Courthouse** [1] - 1:8
**courts** [2] - 34:3, 39:13
**create** [1] - 27:16
**credible** [1] - 77:13
**cross** [4] - 25:9, 55:18, 65:12, 66:13
**cross-examination** [2] - 65:12, 66:13

**crown** [1] - 70:12
**CRR** [1] - 2:25
**crux** [1] - 76:16
**CSR** [1] - 2:25
**cumbersome** [1] - 40:6
**current** [5] - 9:18, 19:15, 19:17, 22:20, 75:11
**custody** [1] - 71:16
**customer** [10] - 51:8, 51:9, 51:11, 54:5, 55:16, 70:22, 71:1, 73:3
**customers** [14] - 51:9, 51:10, 52:13, 52:14, 52:18, 54:2, 54:4, 56:11, 71:4, 71:5, 71:6, 71:10, 73:10
**cut** [3] - 38:18, 66:22

**D**

**damage** [17] - 5:8, 6:3, 8:16, 14:18, 21:7, 21:17, 21:20, 25:21, 25:23, 27:19, 32:25, 65:19, 66:1, 78:7, 78:15, 80:6, 84:21
**damages** [80] - 4:21, 5:11, 5:14, 5:18, 6:4, 6:6, 6:7, 6:13, 6:20, 6:23, 7:4, 7:8, 7:10, 7:12, 7:22, 7:23, 8:2, 8:10, 8:12, 8:15, 8:21, 9:8, 9:17, 9:19, 9:23, 10:8, 10:10, 10:14, 10:17, 11:17, 14:15, 14:23, 15:4, 15:5, 15:12, 15:19, 15:22, 16:15, 17:4, 18:15, 18:20, 19:1, 19:6, 19:12, 19:14, 20:15, 21:3, 21:6, 21:22, 21:25, 22:15, 22:16, 22:22, 22:24, 22:25, 23:3, 23:5, 25:3, 25:19, 26:11, 26:15, 26:18, 27:8, 27:20, 28:13, 28:18, 28:20, 29:2, 34:20, 66:4, 66:22, 70:24, 76:19, 76:22, 76:25, 78:5
**danger** [1] - 72:5
**data** [11] - 57:6, 57:18, 64:14, 65:9, 65:19, 72:11, 72:15, 73:17, 73:22, 78:14
**date** [9] - 14:22, 19:23,

19:24, 20:1, 20:2, 25:6, 46:14, 79:18, 83:1
**dates** [4] - 10:3, 10:5, 11:8, 15:4
**Daubert** [2] - 77:18, 77:19
**Dave** [2] - 3:8, 16:21
**David** [1] - 1:18
**days** [2] - 84:24, 85:9
**de** [1] - 13:5
**deadline** [2] - 10:9, 84:18
**deadlines** [1] - 9:20
**deal** [7] - 5:18, 16:5, 16:15, 35:16, 49:22, 54:7, 85:9
**dealing** [7] - 15:23, 50:17, 51:24, 57:1, 62:19, 83:5, 83:18
**dealings** [1] - 71:6
**deals** [2] - 24:5, 24:8
**dealt** [1] - 24:11
**December** [4] - 14:10, 14:14, 14:22
**decide** [9] - 14:5, 77:13, 77:15, 77:20, 79:24, 80:7, 83:13, 83:21, 84:20
**decided** [5] - 14:12, 34:13, 63:5, 68:3, 81:18
**decides** [1] - 28:11
**deciding** [2] - 25:10, 27:25
**decision** [5] - 23:15, 28:7, 28:15, 28:23, 77:25
**Decision** [2] - 36:14, 80:4
**decisions** [3] - 29:10, 29:14, 29:23
**declaration** [3] - 53:25, 55:13, 55:14
**declarations** [3] - 53:8, 53:10, 55:10
**decreased** [1] - 56:18
**defend** [1] - 77:8
**defendant** [3] - 19:11, 46:10, 72:2
**Defendant** [2] - 2:11, 2:14
**defendant's** [1] - 30:24
**Defendants** [1] - 1:7
**defendants** [7] - 3:23, 4:8, 5:6, 25:4, 26:3, 26:13, 33:8
**defense** [2] - 42:14, 77:7

defenses [3] - 50:12,
50:14, 78:17
deference [1] - 48:2
deferred [1] - 81:19
deficiencies [1] -
32:24
deficient [4] - 32:11,
32:13, 40:15, 41:4
defined [2] - 15:21,
70:1
Del [2] - 25:12, 80:4
Delaware [27] - 3:4,
3:22, 4:3, 4:6, 13:7,
13:16, 16:11, 18:6,
18:7, 18:14, 29:10,
29:15, 29:16, 29:20,
33:21, 34:9, 34:17,
35:6, 35:22, 36:3,
36:9, 38:2, 45:13,
47:7, 47:14, 48:19,
48:20
DELAWARE [1] - 1:1
delay [4] - 9:25, 21:4,
27:11, 27:13
delayed [1] - 5:18
deliberations [1] -
26:12
demand [2] - 55:22,
56:11
demanded [1] - 17:12
demonstrate [2] -
26:10, 36:5
denied [8] - 4:15,
21:11, 21:17, 23:12,
29:3, 45:7, 82:19
deny [2] - 14:4, 28:20,
47:2
denying [2] - 27:21,
28:12
dependent [3] - 37:17,
55:25, 56:8
deposed [1] - 34:24
deposition [23] - 4:21,
11:13, 11:15, 30:13,
30:19, 34:17, 38:9,
39:2, 39:18, 40:1,
40:4, 41:23, 44:1,
44:13, 44:20, 45:14,
46:16, 46:25, 47:9,
47:16, 47:17, 48:21,
49:14
depositions [36] -
10:16, 10:19, 11:17,
11:19, 11:21, 27:23,
29:5, 29:14, 29:22,
31:20, 33:19, 33:24,
34:4, 34:12, 34:14,
35:5, 35:22, 38:23,
39:12, 42:3, 46:11,
47:5, 47:10, 48:1,

48:13, 48:15, 49:4,
49:6, 49:8, 49:10,
49:15, 50:8, 80:19,
80:22, 82:24
DEPUTY [1] - 85:21
designee [2] - 37:10,
39:5
desperation [1] - 15:3
detail [3] - 8:23, 74:8,
78:7
detailed [3] - 69:4,
69:18, 79:3
determinative [2] -
75:8, 82:6
determine [4] - 44:24,
46:18, 55:22, 56:24
determined [1] - 55:23
determining [3] -
58:16, 58:18, 73:22
developed [1] - 52:25
development [1] -
7:19
devoted [1] - 79:19
dicta [2] - 36:21, 36:22
differ [1] - 12:11
difference [1] - 30:11
differences [1] - 27:17
different [16] - 8:10,
23:19, 24:10, 30:18,
31:11, 31:13, 39:8,
59:11, 62:22, 62:25,
65:3, 65:10, 73:9,
73:12, 75:4, 81:23
differs [1] - 31:15
difficult [9] - 12:21,
16:14, 19:8, 25:19,
25:22, 25:23, 26:5,
50:17, 51:2
difficulty [2] - 13:20,
15:11
direct [3] - 52:14,
70:9, 70:12
directed [6] - 27:18,
28:8, 44:19, 46:19,
46:20, 80:15, 82:21
directly [8] - 36:19,
36:25, 66:3, 66:15,
67:8, 67:14, 68:8,
70:24
disagree [4] - 12:15,
18:5, 21:1, 84:19
disagrees [3] - 57:19,
75:11, 85:7
disclose [1] - 54:9
disclosed [4] - 37:25,
43:20, 52:14, 55:8
disclosing [1] - 55:2
disclosure [1] - 69:25
disclosures [2] - 7:11,
23:4

discount [2] - 76:21,
77:17
discounts [1] - 56:18
discover [2] - 8:22,
43:13
discoverable [2] -
65:13, 77:25
discovered [2] - 76:8,
76:9
discovery [117] - 5:8,
6:20, 6:24, 6:25, 7:4,
7:5, 7:14, 7:23, 8:1,
8:8, 8:15, 8:16, 8:17,
9:22, 9:23, 10:1,
10:10, 10:21, 12:2,
12:9, 14:4, 14:9,
14:10, 14:15, 14:18,
15:6, 15:8, 15:18,
17:22, 19:1, 20:2,
20:15, 21:2, 21:4,
21:5, 21:20, 21:22,
22:18, 23:6, 24:16,
25:3, 26:5, 26:7,
27:16, 27:18, 27:20,
28:9, 28:13, 28:17,
28:21, 28:22, 29:2,
29:20, 29:21, 30:1,
31:9, 32:19, 35:2,
35:3, 35:16, 35:17,
36:7, 36:10, 36:17,
36:23, 36:25, 37:7,
37:17, 37:18, 37:20,
37:22, 37:23, 38:4,
38:21, 41:3, 41:8,
41:18, 42:12, 42:23,
43:4, 43:21, 44:18,
44:25, 45:8, 48:6,
48:9, 48:25, 49:12,
49:17, 50:5, 52:21,
64:25, 68:23, 69:3,
71:21, 71:22, 72:7,
72:8, 72:15, 77:23,
78:7, 78:18, 79:7,
79:15, 79:25, 80:10,
81:11, 82:2, 82:17,
82:21, 82:25, 83:2,
83:6, 83:10, 83:23,
84:7, 84:22
Discovery [1] - 71:24
discretion [7] - 9:3,
15:13, 15:15, 15:16,
25:10, 25:18, 49:20
discuss [2] - 45:24,
67:24, 85:14
discussed [2] - 38:5,
39:13
discussing [2] - 37:3,
37:5
discussion [4] -
10:25, 23:23, 36:24,

43:22
discussions [4] -
61:1, 62:19, 63:4,
83:13
disfavors [1] - 48:1
disorganized [1] -
22:13
dispensed [1] - 56:5
dispute [12] - 8:3,
8:11, 36:19, 38:25,
45:3, 57:17, 57:19,
63:14, 76:1, 77:9,
82:6, 84:23
disputes [15] - 12:2,
15:10, 26:5, 26:6,
26:7, 26:8, 27:16,
27:21, 49:17, 82:22,
83:6, 83:9, 83:11,
83:12, 83:13
disrespect [1] - 81:7
distinction [1] - 30:10
distributing [1] -
73:12
distribution [1] -
73:10
district [6] - 18:10,
29:12, 34:18, 47:10,
48:1, 48:6
DISTRICT [2] - 1:1, 1:1
District [24] - 3:4,
13:7, 13:16, 16:11,
18:6, 18:7, 18:13,
29:10, 29:15, 29:19,
33:21, 34:5, 34:6,
34:8, 34:10, 34:17,
35:6, 35:21, 36:3,
37:8, 45:13, 47:6,
47:14, 48:20
districts [3] - 33:25,
34:2
dividing [1] - 27:19
docket [1] - 26:5
Docket [1] - 46:12
docketed [1] - 3:4
document [10] -
10:13, 11:2, 21:23,
22:4, 22:21, 25:4,
80:21, 82:23, 83:24,
84:1
documents [38] -
6:24, 7:3, 7:5, 8:11,
10:3, 10:13, 10:24,
15:9, 20:25, 21:2,
21:4, 21:7, 21:14,
21:17, 22:13, 22:16,
22:18, 23:6, 37:14,
42:6, 51:16, 53:17,
55:9, 56:23, 58:5,
58:10, 58:14, 60:14,
60:24, 63:21, 64:1,

64:3, 67:22, 68:4,
70:21, 74:10, 80:17,
83:20
done [10] - 8:24,
33:19, 33:20, 35:6,
60:1, 64:23, 67:13,
70:2, 72:25, 84:7
dotted [1] - 60:2
doubt [5] - 15:10,
19:5, 39:6, 65:14
down [5] - 8:17, 14:5,
17:10, 56:25, 81:6
dozen [1] - 7:8
drug [9] - 36:12,
55:21, 56:4, 57:2,
58:4, 58:6, 63:25,
64:3, 76:24
drugs [4] - 56:13,
57:3, 73:21, 73:23
Drye [3] - 2:6, 3:24,
5:5
duplicate [1] - 27:23
duplication [1] - 44:17
during [1] - 54:16
duty [2] - 19:3, 38:23
dwell [1] - 37:4

## E

eager [2] - 10:2, 15:5
easier [2] - 16:5, 16:25
Eastern [2] - 34:5,
34:6
easy [1] - 15:1
economy [1] - 19:10
effect [6] - 7:17, 7:18,
7:19, 13:10, 54:17,
84:3
efficiencies [1] -
27:22
efficiency [3] - 26:20,
27:7, 28:14
efficient [1] - 28:21
efficiently [1] - 19:6
effort [1] - 49:16
efforts [2] - 83:8,
83:12
either [12] - 8:9, 9:15,
11:3, 11:17, 12:18,
18:1, 26:16, 30:5,
58:6, 73:11, 74:20,
77:9
elements [1] - 9:1
eluded [1] - 18:3
emphatic [1] - 29:24
encouraged [1] -
22:16
encouraging [1] - 9:7
end [7] - 9:22, 11:4,

14:19, 60:3, 73:14, 84:7, 84:18
**ends** [1] - 22:18
**engage** [1] - 44:24
**enhance** [1] - 25:14
**enjoined** [1] - 16:4
**enormous** [2] - 49:7, 49:13
**enter** [6] - 64:17, 64:19, 67:2, 67:3, 81:5, 84:2
**entered** [5] - 29:3, 50:15, 62:11, 64:4, 64:21
**entering** [2] - 29:1, 66:9
**Enterprises** [1] - 37:8
**entire** [3] - 54:5, 54:6, 57:7
**entitled** [5] - 64:25, 69:12, 72:10, 75:15, 82:1
**entity** [1] - 81:12
**entries** [1] - 3:5
**entry** [1] - 71:9
**envisioned** [1] - 49:19
**equally** [2] - 28:4, 62:18
**equivalent** [3] - 51:18, 57:10, 73:21
**erosion** [3] - 56:14, 56:16, 56:23
**escape** [1] - 54:18
**especially** [1] - 13:17
**Esquire** [16] - 1:14, 1:16, 1:18, 1:18, 1:19, 1:20, 1:21, 1:22, 2:6, 2:7, 2:7, 2:8, 2:9, 2:10, 2:12, 2:14
**essentially** [3] - 40:10, 59:25, 77:3
**establish** [1] - 72:25
**established** [2] - 47:13, 78:4
**et** [3] - 1:3, 1:6, 3:4
**Ethypharm** [2] - 36:11, 45:15
**evaluate** [2] - 62:10, 80:1
**evaluating** [1] - 59:2
**event** [2] - 4:25, 9:6
**events** [1] - 37:14
**eventually** [1] - 68:18
**evidence** [5] - 26:23, 27:1, 47:22, 56:17, 56:20
**evidenced** [2] - 76:11, 76:12
**evident** [2] - 28:6,

79:1
**exactly** [7] - 5:1, 30:13, 38:16, 66:5, 68:12, 68:13, 71:15
**examination** [2] - 65:12, 66:13
**examine** [1] - 80:5
**example** [7] - 27:23, 43:10, 47:23, 48:10, 51:24, 55:18, 56:1
**exceedingly** [1] - 5:20
**except** [1] - 43:18
**exception** [2] - 18:4, 18:10
**exceptional** [1] - 31:24
**exceptions** [1] - 63:4
**excessive** [1] - 77:23
**exchange** [1] - 6:23
**exchanged** [3] - 33:11, 70:10, 76:12
**exclusivity** [2] - 59:9, 62:23
**executed** [1] - 62:3
**exhaust** [2] - 83:7, 83:11
**Exhibit** [2] - 47:23, 48:10
**exhibits** [1] - 51:22
**Exhibits** [1] - 47:21
**exist** [3] - 12:5, 12:8, 81:24
**existence** [2] - 13:9, 25:22
**exists** [3] - 26:24, 47:12, 47:14
**expand** [2] - 15:23, 67:17
**expanded** [1] - 71:8
**expanding** [1] - 23:24
**expansion** [4] - 57:1, 71:11, 71:12, 73:20
**expect** [1] - 75:18
**expects** [2] - 50:10, 79:23
**expedition** [1] - 81:9
**experience** [1] - 77:4
**experiences** [1] - 77:24
**expert** [16] - 14:10, 31:9, 35:3, 46:2, 53:8, 55:10, 55:13, 55:14, 56:22, 66:15, 76:19, 76:22, 77:13, 77:14, 78:1
**experts** [11] - 8:24, 11:16, 24:11, 31:9, 31:10, 55:2, 55:5, 57:17, 72:12, 73:17, 77:16

**expires** [1] - 5:25
**explained** [2] - 56:22, 78:7
**explanations** [1] - 77:16
**explicitly** [1] - 53:9
**extend** [1] - 84:18
**extensive** [4] - 10:14, 21:22, 22:23, 82:4
**extent** [9] - 27:8, 31:14, 38:1, 40:2, 72:5, 75:10, 76:4, 79:16, 85:8
**extremely** [1] - 15:11
**eyes** [3] - 43:19, 43:22, 44:3

---

## F

**F.R.D** [1] - 25:12
**facially** [1] - 77:16
**fact** [34] - 5:14, 9:22, 12:7, 12:14, 14:9, 18:8, 20:1, 22:18, 26:2, 27:8, 31:2, 31:12, 34:22, 35:1, 35:5, 36:8, 36:10, 40:17, 44:11, 44:12, 53:17, 55:12, 61:8, 68:12, 69:1, 71:22, 72:8, 73:8, 76:1, 76:11, 76:13, 77:12, 82:10
**fact-finder** [1] - 77:12
**fact-specific** [2] - 12:7
**facto** [1] - 13:5
**factor** [2] - 24:12, 27:24
**factors** [2] - 71:15, 80:1
**facts** [2] - 30:1, 30:9, 30:11, 30:12, 30:17, 30:22, 31:2, 31:4, 31:14, 37:12, 37:25, 43:13, 43:17, 44:8, 44:10, 44:12, 46:24, 47:1, 47:18, 63:8, 74:6, 81:1
**factual** [3] - 43:15, 45:8, 48:7
**factually** [1] - 59:19
**fair** [4] - 20:4, 20:9, 34:15, 37:25
**fairness** [3] - 17:14, 26:20, 28:14
**faith** [4] - 69:20, 79:11, 83:8, 83:10
**fall** [3] - 7:3, 53:23, 71:11

**familiar** [1] - 12:25
**far** [9] - 7:9, 9:24, 21:3, 33:22, 44:21, 60:4, 60:5, 73:16, 81:6
**Farnan** [1] - 47:24
**fast** [1] - 16:12
**faulty** [1] - 41:7
**favor** [2] - 19:13, 36:6
**FDA** [2] - 58:6, 62:7
**features** [1] - 58:5
**Fed** [1] - 80:3
**federal** [2] - 18:10, 18:13
**Federal** [14] - 6:21, 8:20, 9:8, 17:9, 17:10, 25:7, 36:14, 37:22, 46:11, 48:23, 66:17, 72:24, 76:10, 80:4
**fell** [1] - 60:3
**few** [3] - 17:13, 29:18, 72:22
**fighting** [1] - 72:18
**figuring** [1] - 23:7
**file** [9] - 62:22, 68:17, 68:19, 71:23, 77:18, 83:1, 84:23, 85:8
**filed** [4] - 25:4, 62:6, 79:17, 82:13
**filer** [1] - 59:10
**filled** [2] - 73:5
**final** [12] - 5:24, 28:14, 60:16, 61:20, 61:23, 62:11, 63:17, 67:3, 67:4, 67:7, 67:10, 81:5
**finalized** [2] - 60:1, 60:10, 63:2
**finally** [1] - 81:12
**financial** [4] - 64:2, 70:23, 74:10, 78:13
**finder** [1] - 77:12
**fine** [3] - 10:6, 16:24, 84:19
**FINEMAN** [1] - 3:16
**Fineman** [3] - 1:16, 3:14, 3:17
**Finger** [2] - 1:15, 3:17
**finish** [1] - 15:12
**first** [21] - 4:12, 16:16, 22:13, 30:3, 31:23, 35:16, 41:17, 43:15, 45:13, 45:19, 48:18, 54:14, 59:10, 62:8, 62:22, 64:9, 67:5, 68:25, 74:17, 80:18, 85:14
**fishing** [1] - 81:9
**fit** [1] - 52:8

**five** [1] - 29:12
**focus** [3] - 50:10, 68:3, 77:6
**focused** [2] - 6:21, 50:9
**focusing** [1] - 78:23
**Foley** [2] - 1:22, 3:13
**follow** [4] - 40:5, 42:10, 44:18, 45:21
**follow-up** [3] - 40:5, 42:10, 44:18
**follows** [1] - 82:17
**FOR** [1] - 1:1
**forecast** [1] - 68:10
**forecasting** [1] - 74:10
**forecasts** [13] - 8:2, 51:17, 51:25, 52:1, 52:2, 52:12, 53:11, 53:16, 57:22, 57:23, 64:5, 68:1, 69:10
**foreclosed** [1] - 77:23
**foregoing** [1] - 28:25
**foreign** [1] - 36:18
**forget** [1] - 84:10
**form** [2] - 24:19, 46:2
**formal** [1] - 41:19
**Formaroli** [1] - 2:25
**formed** [1] - 24:2
**formulate** [1] - 31:8
**formulation** [1] - 23:20
**Fortamet®** [8] - 16:3, 23:17, 51:18, 56:1, 56:19, 57:2, 57:9, 64:4
**forth** [1] - 33:3
**forward** [7] - 11:18, 15:5, 17:11, 22:23, 24:17, 35:1, 36:24
**four** [2] - 23:10, 26:3
**Fox** [2] - 37:7, 38:4
**frankly** [1] - 43:24
**free** [1] - 50:4
**fresh** [1] - 64:10
**full** [3] - 32:2, 32:22, 49:7
**fullest** [1] - 38:1
**fully** [3] - 32:10, 40:13, 49:12
**fulsome** [2] - 69:4, 69:18
**furthermore** [2] - 26:17, 48:19

---

## G

**game** [1] - 37:24
**games** [1] - 68:1
**gaps** [1] - 11:1

**Garden** [1] - 3:25
**general** [4] - 76:4, 78:5, 79:6, 79:13
**generally** [2] - 74:9, 78:13
**generic** [14] - 5:22, 15:20, 15:25, 16:2, 51:18, 55:24, 55:25, 57:9, 57:10, 59:1, 71:6, 73:4, 73:5, 73:21
**generics** [2] - 5:23, 73:9
**Gerardi** [8] - 55:13, 76:22, 76:23, 77:5, 77:8, 77:9
**Gerardi's** [1] - 78:10
**Gerry** [1] - 1:9
**given** [15] - 11:8, 15:4, 15:8, 32:1, 42:1, 42:2, 44:18, 49:13, 49:20, 57:25, 79:19, 79:21, 83:15, 83:19
**Glucophage** [1] - 73:20
**Glucophage®** [4] - 57:3, 57:5, 57:8
**Glumetza** [1] - 73:20
**Glumetza®** [2] - 57:4, 57:5
**grant** [7] - 4:23, 9:3, 18:8, 48:17, 48:22, 49:23, 79:8
**granted** [12] - 4:14, 5:3, 5:7, 8:9, 9:11, 16:9, 16:10, 25:25, 27:2, 27:17, 75:9, 77:20
**granting** [2] - 4:19, 9:4
**greater** [2] - 27:7, 27:9
**gritty** [2] - 52:20, 79:25
**guarantee** [2] - 54:15, 54:20
**guess** [3] - 35:15, 61:6, 67:12
**guessing** [1] - 68:1
**guidance** [1] - 82:8
**guided** [2] - 80:2, 83:14

## H

**Hale** [1] - 1:20
**half** [1] - 7:8
**hands** [3] - 53:23, 70:3, 74:25
**happy** [1] - 43:7
**hard** [3] - 16:12,

**harm** [5] - 53:22, 55:7, 55:12, 80:8, 80:12
**harmed** [1] - 74:24
**Hatch** [2] - 13:22, 77:1
**Hatch-Waxman** [2] - 13:22, 77:1
**hear** [3] - 20:16, 20:18, 22:16
**heard** [5] - 20:14, 24:22, 38:22, 40:14, 57:19
**hearing** [1] - 53:4
**hearings** [1] - 41:17
**hearsay** [1] - 72:13
**held** [5] - 25:6, 30:14, 30:15, 46:13, 79:3
**help** [3] - 58:17, 58:21, 61:16
**helpful** [3] - 43:2, 69:11
**hesitate** [1] - 79:20
**high** [1] - 58:13
**highly** [13] - 8:5, 43:12, 50:24, 51:7, 52:7, 52:11, 52:23, 74:4, 74:19, 74:20, 76:6, 76:13, 82:18
**historical** [1] - 45:18
**historically** [1] - 33:22
**history** [1] - 74:7
**Hoffman** [7] - 53:9, 53:21, 53:25, 76:19, 76:23, 77:4, 78:1
**Hoffman's** [2] - 76:20, 77:22
**hold** [5] - 11:12, 19:18, 19:23, 19:24, 82:24
**holder** [1] - 68:13
**holding** [1] - 38:6
**Honor** [78] - 3:7, 3:9, 3:11, 3:16, 4:7, 4:17, 5:5, 10:12, 10:18, 12:10, 13:14, 16:17, 16:21, 17:1, 17:8, 17:16, 18:1, 19:3, 19:19, 19:25, 20:3, 20:21, 21:9, 21:19, 22:6, 22:8, 22:12, 24:23, 29:8, 30:3, 32:14, 33:11, 33:18, 35:13, 36:5, 36:15, 36:23, 37:4, 39:3, 39:12, 40:4, 40:16, 41:2, 41:15, 41:23, 42:15, 42:24, 43:7, 44:16, 45:3, 45:6, 45:12, 46:3, 51:5, 60:24, 61:11, 62:16,

64:13, 64:21, 64:25, 65:7, 65:11, 65:22, 66:4, 66:15, 67:5, 67:11, 67:22, 68:5, 68:21, 68:22, 69:17, 70:24, 71:21, 84:9, 85:12, 85:13, 85:16
**HONORABLE** [1] - 1:11
**hope** [1] - 68:22
**hopefully** [4] - 82:9, 82:22, 85:1, 85:7
**hopes** [1] - 82:7
**hundred** [1] - 54:15
**hypothetical** [6] - 59:3, 59:6, 59:15, 66:5, 68:9, 71:19

## I

**identical** [2] - 31:22, 76:2
**identified** [8] - 7:7, 7:9, 11:6, 42:21, 43:18, 60:20, 60:22, 75:13
**identify** [3] - 55:15, 61:10, 75:24
**identifying** [3] - 12:23, 52:13, 61:1
**ignores** [1] - 76:23
**image** [1] - 72:14
**imagine** [3] - 30:21, 31:6, 55:3
**importance** [2] - 27:13, 45:1
**important** [3] - 70:11, 75:3, 83:20
**importantly** [2] - 65:18, 67:7
**impose** [1] - 79:20
**imposed** [1] - 44:22
**impressed** [1] - 39:15
**impression** [4] - 20:19, 59:25, 61:14, 69:6
**improper** [1] - 4:23
**IMS** [8] - 57:6, 57:11, 57:12, 57:15, 57:18, 72:11, 73:17, 73:22
**inadequate** [5] - 53:3, 54:12, 70:5, 75:12, 75:14
**INC** [1] - 1:3
**include** [1] - 51:17
**included** [1] - 10:14
**includes** [1] - 51:8
**including** [3] - 12:19, 40:22, 47:20

**incomplete** [1] - 42:18
**inconsistent** [2] - 28:12, 44:14
**independent** [1] - 68:3
**indicated** [1] - 44:17
**indication** [2] - 9:9, 9:10
**individual** [1] - 51:11
**industry** [1] - 57:14
**information** [129] - 6:2, 8:6, 22:24, 23:7, 24:3, 31:19, 34:21, 34:23, 37:19, 38:24, 39:1, 39:15, 40:11, 41:25, 42:19, 42:20, 42:25, 43:1, 43:12, 43:14, 43:16, 43:20, 43:25, 44:3, 44:8, 45:2, 46:17, 47:3, 47:4, 47:7, 47:15, 47:18, 48:7, 48:8, 48:21, 48:25, 49:3, 49:15, 49:24, 50:6, 50:11, 50:13, 50:18, 50:25, 51:1, 51:8, 51:23, 52:8, 52:23, 53:5, 53:23, 53:25, 54:4, 54:9, 54:13, 54:18, 55:2, 55:4, 55:6, 55:16, 55:22, 56:15, 57:15, 57:18, 57:23, 57:24, 58:2, 61:18, 62:10, 62:13, 63:12, 63:17, 65:14, 65:24, 65:25, 66:14, 67:1, 67:6, 67:19, 68:11, 69:13, 69:15, 70:17, 70:22, 70:23, 71:15, 71:18, 72:3, 72:10, 72:13, 74:5, 74:11, 74:13, 74:20, 74:23, 74:25, 75:2, 75:6, 75:14, 75:16, 75:19, 76:3, 76:7, 76:10, 76:11, 76:14, 76:15, 76:25, 77:25, 78:5, 78:11, 78:17, 78:22, 79:7, 79:9, 79:12, 79:14, 80:9, 81:3, 81:9, 81:11, 81:16, 82:4, 82:19, 83:3
**infringe** [1] - 23:12
**infringed** [5] - 59:4, 59:5, 59:7, 59:9, 59:16
**infringement** [21] - 18:13, 30:18, 30:22, 30:23, 31:25, 32:5, 33:6, 33:10, 34:20,

35:1, 35:4, 36:12, 38:14, 38:15, 38:17, 46:1, 59:3, 71:3, 71:17, 71:20, 72:18
**infringer** [1] - 68:14
**infringer's** [2] - 58:4, 58:10
**infringing** [1] - 23:14
**ingredient** [1] - 24:8
**inherent** [1] - 15:15
**initial** [2] - 7:11, 23:4
**injunction** [12] - 5:21, 6:9, 7:2, 7:21, 8:20, 9:10, 15:21, 17:7, 32:3, 54:17, 75:3, 75:8
**injury** [2] - 7:20, 70:1
**inordinate** [1] - 49:16
**input** [1] - 77:22
**inserted** [1] - 75:22
**insist** [1] - 83:25
**insists** [2] - 82:15, 83:11
**instances** [1] - 79:2
**instead** [3] - 46:17, 47:3, 64:18
**insufficiency** [1] - 32:16
**insufficient** [1] - 26:10
**intend** [1] - 21:10
**intended** [1] - 11:3
**intending** [1] - 81:7
**intense** [1] - 22:19
**interest** [2] - 62:18, 76:2
**interests** [4] - 28:14, 75:12, 75:21, 75:23
**internet** [1] - 70:16
**interpretation** [1] - 37:14
**interpretations** [1] - 37:21
**interprets** [1] - 56:4
**interrogatories** [33] - 21:23, 22:1, 22:25, 29:21, 31:19, 31:21, 31:25, 32:1, 32:10, 32:24, 32:25, 33:8, 33:13, 33:14, 33:16, 33:24, 39:2, 39:12, 40:7, 40:10, 40:19, 40:23, 40:24, 46:18, 47:4, 47:16, 48:2, 48:14, 48:20, 49:5, 80:16, 80:18, 82:23
**interrogatory** [23] - 31:23, 33:4, 33:20, 39:9, 39:17, 39:24, 40:18, 40:25, 41:3, 41:25, 42:2, 42:8,

42:12, 42:18, 44:14, 45:22, 47:8, 48:7, 49:18, 49:21, 49:25, 50:7, 80:21
**interrupt** [1] - 63:7
**intervening** [1] - 6:20
**intervention** [1] - 83:9
**intrinsic** [2] - 13:19, 13:20
**intrinsically** [1] - 12:21
**introduce** [2] - 3:14, 43:3
**invalid** [2] - 59:5, 59:9
**invalidity** [2] - 32:6, 33:6
**invariable** [1] - 49:9
**invariably** [1] - 49:11
**inventions** [1] - 31:16
**inventors** [2] - 10:19, 11:22
**invitation** [1] - 77:12
**involved** [4] - 18:15, 18:17, 62:17, 70:7
**involves** [1] - 26:2
**involving** [2] - 36:12, 74:5
**irrelevant** [7] - 28:2, 62:18, 62:23, 65:9, 65:13, 68:14, 76:18
**irreparable** [1] - 7:20
**irrespective** [1] - 72:23
**issue** [60] - 6:4, 6:12, 6:18, 8:13, 11:10, 12:11, 12:12, 17:7, 17:22, 17:23, 28:3, 28:15, 29:4, 29:15, 29:17, 30:20, 34:10, 35:15, 36:15, 36:18, 38:12, 38:13, 38:17, 38:25, 39:11, 40:3, 43:8, 44:16, 45:2, 50:16, 50:17, 51:2, 58:10, 58:11, 61:16, 63:5, 64:9, 64:10, 66:18, 68:2, 68:25, 75:3, 75:4, 75:5, 76:1, 76:16, 77:15, 79:19, 80:24, 81:14, 81:15, 82:15, 83:19, 84:11, 84:22
**issues** [64] - 5:12, 5:14, 5:16, 5:18, 6:3, 7:19, 12:20, 12:24, 14:6, 15:19, 15:23, 16:3, 16:5, 18:19, 18:20, 19:6, 25:9, 25:15, 25:19, 25:20, 25:21, 25:23, 26:23,

**judiciously** [1] - 17:11
**June** [4] - 9:22, 9:24, 84:8, 84:18
**juror** [2] - 13:23, 25:14
**jurors** [2] - 12:21, 27:10
**jury** [13] - 12:24, 13:21, 13:23, 14:2, 14:12, 16:14, 19:5, 19:7, 26:17, 26:23, 26:25, 27:8, 77:20
**jury's** [1] - 26:11
**justification** [1] - 25:24
**justified** [2] - 7:13, 25:11
**justifies** [1] - 18:25
**justify** [2] - 7:22, 13:10

### J

**Jack** [3] - 1:18, 3:7, 29:8
**JACOB** [23] - 5:5, 5:11, 6:6, 7:17, 8:7, 10:12, 10:18, 10:22, 12:10, 12:16, 13:14, 14:7, 14:15, 14:21, 15:1, 22:12, 24:21, 41:15, 60:24, 61:6, 61:11, 62:16, 85:13
**Jacob** [2] - 2:6, 3:24
**Jacobs** [3] - 1:19, 3:10, 5:5
**James** [1] - 2:13
**January** [1] - 6:13
**Jersey** [3] - 1:9, 4:6, 34:11
**jewel** [1] - 70:12
**jobs** [1] - 7:17
**JOEL** [1] - 1:11
**John** [1] - 1:9
**joined** [1] - 6:18
**Jordan** [1] - 30:15
**judge** [3] - 13:25, 18:9, 30:14
**JUDGE** [1] - 1:11
**Judge** [26] - 14:5, 14:19, 18:11, 28:7, 28:10, 28:11, 28:16, 28:23, 30:15, 30:16, 37:3, 45:15, 47:24, 48:11, 53:2, 54:16, 74:18, 74:22, 74:24, 75:1, 75:5, 78:20, 84:15
**judges** [9] - 13:15, 13:16, 13:25, 16:13, 18:7, 18:10, 29:12, 36:6, 36:7
**judicial** [4] - 19:10, 25:14, 27:6, 37:21

### K

**Karen** [4] - 1:19, 2:10, 3:10, 3:25
**KATZ** [27] - 51:5, 51:14, 52:1, 52:4, 52:10, 52:22, 53:7, 54:14, 55:1, 57:12, 57:16, 58:18, 58:22, 59:21, 60:5, 60:9, 60:15, 60:19, 60:22, 61:19, 61:22, 62:1, 62:5, 62:14, 63:23, 64:7, 72:22
**Katz** [4] - 2:8, 3:24, 51:5, 63:9
**keep** [2] - 70:17, 72:16
**Kelley** [1] - 2:6
**Kelly** [2] - 3:23, 5:5
**kept** [2] - 9:19, 70:14
**key** [3] - 39:4, 39:19, 76:17
**kind** [1] - 24:4
**kinds** [1] - 8:10
**Kirk** [2] - 2:9, 3:22
**KIRK** [2] - 3:22, 4:5
**knowing** [2] - 68:21, 71:4
**knowledge** [5] - 32:15, 32:20, 37:12, 47:1, 53:10
**known** [1] - 74:6
**knows** [3] - 5:25, 49:7, 63:9
**KRATZ** [1] - 4:10
**Kratz** [2] - 2:12, 4:9
**Kugler** [11] - 14:5, 14:19, 28:11, 28:16, 53:3, 54:16, 74:23, 74:24, 75:5, 78:20,

84:16
**Kugler's** [6] - 28:7, 28:10, 28:23, 74:18, 75:1, 75:5

### L

**Laboratories** [1] - 36:12
**lacking** [1] - 44:15
**language** [2] - 36:19, 38:2
**largely** [2] - 55:24, 56:8
**last** [14] - 6:16, 11:4, 15:7, 16:18, 17:13, 22:11, 29:17, 35:10, 45:11, 50:16, 50:23, 64:8, 64:9, 81:14
**late** [2] - 17:2, 17:23
**latest** [1] - 74:1
**launch** [2] - 15:20, 16:4, 58:1
**launched** [2] - 5:19, 17:2
**law** [8] - 6:12, 26:1, 26:14, 39:14, 56:3, 63:9, 69:23, 82:1
**laws** [4] - 55:25, 56:12, 73:4
**lawsuit** [1] - 59:22
**lawyer** [1] - 44:12
**lawyers** [2] - 31:8, 39:17
**Layton** [1] - 1:15, 3:17
**lead** [3] - 27:17, 49:16, 65:13
**leads** [1] - 49:11
**learn** [1] - 46:25
**least** [5] - 40:24, 59:24, 81:18, 84:4, 85:5
**leave** [2] - 78:2, 81:13
**leaves** [1] - 79:10
**left** [3] - 28:16, 60:2, 78:19
**less** [6] - 15:18, 26:8, 37:24, 39:14, 49:1, 75:15
**letter** [2] - 41:19, 82:15
**level** [2] - 61:8, 70:18
**liability** [25] - 5:16, 5:17, 7:25, 10:8, 10:20, 10:21, 10:24, 11:17, 11:20, 16:16, 18:15, 19:1, 19:6, 22:15, 25:3, 25:20, 25:23, 26:15, 26:18,

26:22, 27:7, 27:18, 27:20, 28:18, 29:2
**license** [2] - 62:21, 63:13, 63:14, 63:24, 65:23, 71:19
**licenses** [4] - 64:4, 65:20, 65:21, 65:22
**licensing** [2] - 59:13, 59:14, 66:9
**lieu** [1] - 62:13
**likewise** [1] - 71:14
**limit** [2] - 48:25, 66:13
**limited** [2] - 47:21, 50:9
**line** [3] - 27:19, 29:19, 60:2
**lines** [4] - 47:24, 48:4, 48:11, 48:16
**lineups** [1] - 24:11
**listed** [2] - 23:16, 46:22
**literally** [1] - 71:23
**litigation** [10] - 17:5, 25:25, 27:14, 38:14, 38:15, 65:2, 65:4, 65:7, 69:18, 77:24
**live** [2] - 42:9, 46:1
**LLP** [2] - 1:17, 2:13
**local** [7] - 4:3, 4:5, 35:17, 43:8, 48:19, 50:1
**logical** [1] - 37:15
**look** [15] - 9:14, 20:3, 32:3, 32:21, 56:23, 56:24, 57:5, 57:15, 57:24, 58:4, 58:9, 58:12, 59:2, 64:25, 66:14
**looked** [3] - 8:17, 64:24
**looking** [5] - 15:22, 64:2, 65:16, 71:15, 83:18
**looks** [3] - 66:6, 68:9, 85:18
**lose** [3] - 14:8, 28:5, 45:3
**loss** [1] - 7:17
**lost** [15] - 7:12, 7:16, 18:22, 18:23, 57:21, 63:18, 63:20, 65:17, 66:1, 71:1, 72:4, 73:2, 74:14, 78:8
**Louden** [2] - 1:19, 3:10
**LTD** [1] - 1:6
**Ltd** [1] - 2:11
**luck** [1] - 85:19
**lunch** [3] - 50:19, 50:20, 85:18

**LUPIN** [1] - 1:6
**Lupin** [101] - 2:11, 3:4, 3:23, 5:2, 5:4, 5:6, 5:10, 5:12, 5:19, 7:5, 8:1, 8:8, 10:10, 11:13, 15:24, 17:1, 17:14, 18:5, 19:9, 20:24, 21:20, 23:24, 25:4, 25:16, 25:17, 25:21, 26:5, 26:17, 27:3, 29:14, 29:23, 30:25, 31:18, 32:9, 32:10, 32:23, 33:16, 34:24, 38:21, 39:1, 40:10, 40:14, 45:11, 46:15, 46:17, 46:23, 46:24, 47:3, 47:15, 48:22, 49:3, 49:17, 49:24, 50:6, 50:10, 51:3, 51:6, 51:15, 52:11, 53:1, 53:10, 53:22, 53:24, 53:25, 54:4, 55:12, 56:3, 56:6, 57:4, 58:23, 58:24, 59:10, 59:18, 60:9, 60:10, 60:18, 64:14, 68:23, 69:2, 69:15, 69:16, 69:20, 71:18, 71:23, 73:11, 74:17, 74:24, 75:12, 75:18, 75:24, 76:13, 76:23, 77:18, 78:10, 78:22, 79:9, 81:5, 81:12, 82:6, 85:5
**Lupin's** [55] - 8:2, 10:22, 21:5, 25:5, 26:9, 26:21, 27:17, 27:21, 28:17, 28:20, 29:1, 29:25, 31:3, 31:5, 34:21, 35:14, 43:11, 43:14, 46:10, 46:13, 47:17, 49:13, 50:7, 50:23, 51:7, 51:17, 51:19, 51:20, 52:2, 52:14, 52:16, 54:6, 54:8, 55:19, 63:25, 64:1, 71:2, 71:9, 74:3, 74:9, 74:11, 74:12, 74:13, 75:8, 75:12, 75:14, 76:17, 76:19, 76:20, 77:3, 77:9, 77:12, 77:13, 79:8, 82:16

### M

**Magistrate** [1] - 37:3
**MAGISTRATE** [1] - 1:11
**main** [2] - 26:21, 36:18

**maintain** [1] - 48:15
**majority** [1] - 34:2
**man's** [1] - 37:24
**management** [1] - 14:4
**mandatory** [2] - 56:3, 56:12
**manner** [1] - 78:5
**Mannington** [3] - 66:21, 80:4, 80:9
**March** [1] - 47:25
**margins** [1] - 58:13
**marked** [1] - 43:21
**market** [26] - 5:13, 5:20, 5:22, 8:21, 15:20, 15:23, 16:1, 51:18, 52:17, 55:21, 57:1, 57:6, 57:7, 57:18, 64:24, 65:16, 67:15, 67:17, 71:8, 71:9, 73:2, 73:14, 73:20, 73:23, 76:24
**market-wide** [1] - 57:6
**marketing** [6] - 52:5, 52:16, 53:21, 54:6, 74:10, 78:14
**Markman** [2] - 11:16, 41:17
**marvel** [1] - 37:7
**Mary** [2] - 2:14, 4:7
**master** [1] - 29:13
**material** [3] - 26:19, 27:6, 65:12
**materially** [1] - 50:14
**matter** [11] - 3:3, 21:14, 25:2, 46:9, 55:8, 71:22, 73:14, 74:3, 76:4, 79:6, 79:13
**Matterer** [2] - 2:14, 4:8
**MATTERER** [1] - 4:7
**matters** [1] - 26:4
**Mc** [1] - 3:25
**McGuire** [2] - 2:12, 4:9
**McKesson** [1] - 48:12
**McVary** [1] - 2:7
**mean** [14] - 8:7, 13:14, 22:17, 30:24, 31:5, 34:19, 38:16, 53:2, 56:6, 65:8, 65:12, 66:17, 69:8, 85:1
**meaningful** [1] - 27:3
**means** [2] - 15:16, 38:16
**measures** [2] - 75:22, 75:24
**mechanism** [1] - 23:22
**mechanisms** [1] - 48:9

**meet** [15] - 9:20, 10:8, 32:12, 32:17, 41:13, 49:25, 52:19, 52:22, 69:3, 79:4, 79:11, 81:13, 82:22, 84:11, 84:25
**meet-and-confer** [11] - 32:12, 32:17, 41:13, 49:25, 52:19, 52:22, 79:4, 81:13, 82:22, 84:11, 84:25
**meet-and-confers** [1] - 69:3
**membrane** [3] - 23:21, 23:25, 24:1
**memory** [1] - 41:7
**mentioned** [1] - 38:10
**mere** [2] - 13:8, 25:22
**merit** [2] - 20:20, 44:15
**merits** [1] - 9:15
**met** [2] - 9:5, 26:13
**methodology** [1] - 77:10
**Micro** [4] - 66:20, 72:24, 80:3, 80:8
**middle** [1] - 85:8
**midst** [1] - 21:3
**might** [14] - 8:4, 44:13, 55:8, 56:1, 56:3, 56:7, 56:11, 56:15, 58:9, 62:18, 70:3, 73:9
**mill** [1] - 16:7
**Mills** [3] - 66:21, 80:4, 80:9
**minimal** [1] - 55:8
**minutia** [1] - 50:12
**misspoke** [1] - 59:6
**Mitchell** [1] - 1:8
**mitigate** [1] - 27:4
**moment** [3] - 5:11, 9:21, 17:2
**money** [1] - 7:22
**month** [3] - 17:17, 22:18, 22:19
**months** [2] - 6:19, 6:20
**moot** [4] - 4:14, 4:19, 4:22, 5:3
**moreover** [1] - 71:8
**morning** [10] - 3:1, 3:9, 3:11, 3:16, 3:20, 3:21, 4:2, 4:7, 4:10, 35:13
**Morris** [4] - 1:17, 2:13, 3:8, 29:8
**most** [11] - 7:4, 12:16, 12:18, 12:25, 28:21, 40:22, 50:17, 51:2,

65:18, 66:3, 70:11
**Motion** [4] - 66:20, 72:24, 80:3, 80:9
**motion** [60] - 4:13, 4:15, 4:19, 4:20, 4:23, 4:25, 5:6, 5:7, 8:15, 16:19, 17:2, 21:11, 21:16, 24:25, 25:2, 27:17, 27:21, 27:25, 29:1, 29:6, 29:7, 35:11, 35:15, 40:17, 41:4, 41:6, 45:7, 46:6, 46:9, 46:19, 47:9, 48:17, 48:18, 48:22, 49:11, 49:23, 50:23, 50:24, 51:3, 69:20, 74:1, 74:3, 75:9, 76:17, 77:11, 77:18, 77:19, 78:3, 78:4, 79:18, 80:15, 80:20, 82:12, 82:15, 82:16, 82:17
**Motions** [1] - 1:6
**motions** [15] - 4:12, 4:14, 4:16, 5:4, 17:21, 18:8, 21:4, 41:9, 41:19, 79:17, 83:2, 84:5, 84:24, 85:9
**motivation** [2] - 4:25, 54:3
**motivations** [1] - 4:23
**movant** [1] - 37:6
**move** [6] - 5:16, 9:12, 10:2, 17:15, 18:2, 42:21
**moved** [1] - 6:19
**moving** [2] - 17:10, 25:16
**MR** [124] - 3:7, 3:9, 3:10, 3:11, 3:12, 3:13, 3:14, 3:16, 3:22, 4:5, 4:10, 4:17, 16:21, 16:25, 17:8, 17:16, 17:19, 18:1, 19:19, 19:22, 19:24, 20:3, 20:8, 20:10, 20:17, 20:21, 21:1, 21:8, 21:12, 21:13, 21:18, 21:19, 21:22, 21:24, 22:2, 22:5, 22:8, 22:10, 29:7, 30:3, 30:10, 31:21, 32:14, 33:1, 33:10, 33:14, 33:18, 34:1, 35:9, 35:12, 35:13, 35:20, 35:23, 36:1, 36:4, 36:22, 37:3, 38:9, 38:19, 39:3, 39:7, 39:11, 39:23,

40:2, 40:12, 40:16, 40:20, 41:2, 41:10, 41:14, 41:22, 42:15, 42:24, 43:20, 44:6, 45:10, 45:12, 51:5, 51:14, 52:1, 52:4, 52:10, 52:22, 53:7, 54:14, 55:1, 57:12, 57:16, 58:18, 58:22, 59:21, 60:5, 60:9, 60:15, 60:19, 60:22, 61:19, 61:22, 62:1, 62:5, 62:14, 63:23, 64:7, 64:11, 64:13, 64:16, 64:20, 65:6, 66:3, 66:10, 66:19, 66:24, 67:5, 67:11, 67:21, 68:5, 68:21, 69:8, 69:17, 72:21, 72:22, 84:9, 85:12, 85:16
**MS** [26] - 3:20, 4:2, 4:7, 5:5, 5:11, 6:6, 7:17, 8:7, 10:12, 10:18, 10:22, 12:10, 12:16, 13:14, 14:7, 14:15, 14:21, 15:1, 22:12, 24:21, 41:15, 60:24, 61:6, 61:11, 62:16, 85:13
**Murphy** [2] - 1:22, 3:13
**MURPHY** [1] - 3:13
**must** [10] - 18:4, 25:12, 27:8, 43:13, 44:8, 78:6, 78:22, 79:9, 79:12, 79:17
**Mylan** [6] - 2:14, 4:8, 5:12, 5:14, 5:24, 11:19

### N

**name** [3] - 61:13, 71:7, 71:25
**near** [1] - 69:12
**necessarily** [1] - 73:10
**necessary** [8] - 75:20, 75:25, 76:25, 79:15, 81:4, 83:22, 85:4, 85:6
**necessitates** [1] - 11:25
**necessity** [2] - 55:9, 84:1
**need** [34] - 8:25, 22:24, 23:5, 23:6, 23:15, 41:5, 42:1, 45:21, 55:12, 55:16, 56:15, 56:22, 58:2,

58:12, 58:14, 58:17, 58:20, 61:13, 62:9, 63:17, 64:12, 64:18, 66:25, 68:4, 70:19, 72:15, 72:25, 73:2, 74:8, 80:8, 80:10, 84:17, 85:13

**needed** - 7:23, 11:13, 55:22, 61:16

**needless** [1] - 27:23

**needs** [4] - 7:5, 50:11, 55:4, 57:21

**negotiate** [2] - 65:15, 68:25

**negotiated** [4] - 65:8, 70:4, 70:20, 71:19

**negotiating** [2] - 58:23, 59:18

**negotiation** [4] - 66:6, 68:6, 68:9, 68:13

**negotiations** [13] - 58:15, 59:13, 59:18, 59:21, 59:25, 60:4, 60:10, 64:22, 67:13, 67:23, 68:11, 74:6, 74:12

**net** [6] - 51:10, 51:19, 53:11, 53:19, 63:25, 73:6

**never** [20] - 9:7, 9:17, 18:14, 20:5, 34:16, 35:6, 40:14, 48:13, 54:15, 56:17, 57:19, 60:10, 60:15, 60:16, 61:20, 61:22, 71:6, 71:7, 72:2

**New** [4] - 1:9, 4:6, 34:10, 37:8

**new** [1] - 84:13

**newer** [1] - 41:16

**next** [2] - 14:11, 29:4

**nexus** [1] - 78:14

**Nicholes** [1] - 3:8

**Nichols** [2] - 1:17, 29:8

**nitty** [2] - 52:20, 79:25

**nobody** [1] - 61:6

**non** [11] - 81:15, 81:17, 81:21, 81:22, 81:24, 82:2, 82:3, 82:7, 82:8, 82:11, 82:14

**non-parties** [7] - 81:17, 81:24, 82:2, 82:3, 82:8, 82:11, 82:14

**non-party** [4] - 81:15, 81:21, 81:22, 82:7

**none** [5] - 11:14, 11:17, 51:12, 53:2,

53:4

**nonetheless** [1] - 78:21

**Northern** [1] - 34:8

**noted** [1] - 80:8

**notes** [2] - 16:25, 27:24

**nothing** [13] - 6:15, 18:25, 28:12, 29:22, 30:18, 55:17, 58:8, 64:7, 72:19, 85:5, 85:6, 85:13, 85:16

**notice** [4] - 38:8, 38:11, 46:19, 46:20

**notices** [3] - 4:21, 46:10, 47:17

**notwithstanding** [1] - 29:13

**nowhere** [3] - 55:13, 56:15, 69:11

**Noyes** [1] - 1:20

**NUMBER** [1] - 1:4

**Number** [1] - 46:12

**number** [7] - 12:18, 13:15, 25:4, 48:13, 50:9, 54:4, 54:5

**numbers** [1] - 8:9

**numerous** [2] - 26:4, 49:16

**nuts** [1] - 83:15

## O

**obfuscate** [1] - 50:5

**object** [2] - 50:4, 53:16

**objecting** [1] - 51:23

**objection** [4] - 44:13, 44:15, 62:12, 63:2

**objections** [3] - 43:6, 43:9, 43:10

**obligated** [1] - 37:19

**obligation** [1] - 44:22

**obligations** [1] - 38:4

**obscure** [1] - 78:11

**observes** [1] - 76:5

**obtain** [5] - 46:17, 47:4, 47:7, 49:24, 50:6

**obtained** [4] - 39:1, 47:15, 48:25, 49:4

**obtaining** [1] - 76:6

**obviously** [8] - 9:9, 10:15, 17:11, 19:11, 40:5, 43:14, 72:3, 78:18

**occur** [1] - 27:22

**occurs** [1] - 50:6

**October** [2] - 74:19,

75:7

**OF** [1] - 1:1

**offer** [1] - 54:20

**offered** [1] - 56:19

**offering** [1] - 10:5

**office** [1] - 70:14

**often** [5] - 13:25, 27:19, 27:20, 72:12, 72:13

**once** [3] - 8:19, 33:4, 43:8

**one** [44] - 4:18, 8:21, 9:1, 9:5, 9:9, 11:10, 11:15, 11:16, 15:20, 16:4, 16:7, 22:18, 23:20, 24:4, 25:8, 27:10, 27:24, 28:22, 29:13, 34:4, 34:12, 40:24, 40:25, 41:23, 41:24, 44:9, 47:23, 48:13, 50:17, 54:4, 55:18, 55:19, 58:17, 58:20, 62:17, 63:3, 66:21, 71:14, 77:1, 77:4, 77:17, 79:21, 81:18

**One** [1] - 1:9

**ones** [3] - 16:9, 71:11, 71:12

**open** [2] - 29:15, 29:17

**opinion** [13] - 25:1, 27:18, 36:11, 36:14, 37:2, 38:10, 39:4, 45:15, 46:7, 74:2, 81:20, 82:8, 85:2

**opinions** [4] - 30:16, 37:13, 39:13, 45:17

**opportunity** [8] - 40:5, 40:6, 42:4, 42:5, 44:18, 45:21, 45:25, 79:5

**opposed** [4] - 11:24, 15:17, 47:18, 62:20

**opposing** [3] - 20:11, 39:15, 69:20

**opposition** [3] - 25:5, 51:15, 53:13

**oral** [7] - 25:1, 25:6, 46:7, 46:13, 74:2, 74:18, 81:1

**orange** [1] - 23:16

**order** [47] - 4:20, 9:19, 9:22, 17:19, 17:20, 19:15, 22:13, 25:8, 28:7, 28:8, 29:1, 29:3, 34:23, 35:15, 43:24, 44:5, 44:7, 45:7, 46:10, 46:15, 50:15, 53:3, 54:11,

54:15, 54:19, 54:24, 55:1, 69:18, 69:21, 70:4, 70:6, 70:13, 70:18, 70:19, 70:22, 72:6, 72:7, 72:17, 72:23, 74:4, 75:11, 75:13, 75:17, 75:23, 78:21, 80:7, 84:2

**ordering** [1] - 80:17

**orders** [2] - 54:20, 75:18

**osmotic** [1] - 23:23

**otherwise** [2] - 7:24, 8:3

**outset** [1] - 8:16

**outside** [1] - 70:14

**outweighs** [2] - 55:12, 80:12

**overall** [5] - 8:8, 51:19, 51:20, 64:1

**overbroad** [1] - 79:2

**overlapping** [2] - 15:18, 73:11

**overlaps** [1] - 27:20

**overstate** [2] - 35:24, 47:12

**own** [7] - 12:6, 54:7, 57:22, 57:23, 57:24, 64:25

## P

**page** [6] - 25:12, 47:11, 47:23, 48:3, 48:11, 48:15

**pages** [6] - 32:4, 32:5, 32:6

**paint** [1] - 79:1

**pairs** [1] - 23:11

**paper** [1] - 82:25

**papers** [13] - 7:8, 9:11, 31:22, 36:4, 41:24, 48:5, 52:25, 53:1, 53:8, 55:14, 61:15, 61:17, 74:17

**par** [1] - 12:3

**parallel** [1] - 33:7

**parameters** [1] - 83:14

**parent** [1] - 7:18

**part** [14] - 8:22, 14:23, 15:14, 19:14, 37:1, 38:6, 39:4, 44:2, 58:24, 64:21, 65:8, 67:12, 67:21, 69:9

**particular** [7] - 37:17, 43:23, 44:25, 46:6, 54:7, 61:7, 63:8

**particularity** [2] - 80:5, 83:17

**particularized** [1] - 78:16

**particularly** [1] - 39:16

**parties** [53] - 5:16, 6:2, 6:21, 9:16, 15:2, 17:21, 32:18, 33:23, 34:11, 34:13, 35:2, 49:25, 50:3, 61:11, 63:1, 63:11, 66:6, 68:10, 70:10, 71:17, 72:14, 73:21, 74:7, 74:16, 75:16, 75:25, 78:23, 79:3, 79:11, 79:16, 79:23, 80:18, 80:25, 81:17, 81:19, 81:24, 82:2, 82:3, 82:5, 82:8, 82:11, 82:14, 82:21, 82:23, 83:1, 83:4, 83:5, 83:6, 83:7, 83:10, 83:11, 85:10

**parties'** [5] - 26:7, 75:20, 75:23, 81:13, 82:20

**parts** [1] - 67:21

**party** [22] - 25:9, 25:16, 37:6, 37:16, 37:18, 39:16, 55:3, 57:6, 57:11, 57:12, 60:11, 60:22, 61:1, 62:17, 68:6, 71:25, 81:15, 81:21, 81:22, 82:7

**pass** [1] - 50:4

**passageway** [1] - 24:2

**past** [2] - 43:8, 58:1

**patent** [40] - 9:12, 11:25, 12:3, 12:12, 12:14, 12:17, 12:18, 13:1, 13:6, 13:11, 13:17, 15:14, 18:4, 18:13, 18:19, 18:24, 19:8, 24:5, 26:1, 26:9, 26:25, 30:24, 31:1, 31:4, 31:14, 36:12, 59:4, 59:5, 59:7, 59:8, 59:16, 64:24, 68:13, 68:14, 71:22, 72:18, 76:8, 77:5, 77:24

**Patent** [1] - 71:24

**patent's** [1] - 66:12

**patented** [2] - 31:16, 58:5

**patents** [13] - 18:18, 18:20, 23:8, 23:9, 23:10, 23:11, 23:14, 23:16, 23:20, 24:9, 26:3, 38:13

**patient** [2] - 56:2,

73:15
**patients** [1] - 56:13
**pause** [4] - 60:8, 60:23, 62:4, 62:15
**pause)** [1] - 50:22
**peculiarities** [1] - 77:6
**Pennsylvania** [2] - 34:5, 34:7
**people** [3] - 3:15, 31:7, 61:7
**perceive** [1] - 11:1
**percent** [1] - 54:15
**perfectly** [2] - 81:20, 84:19
**perhaps** [2] - 23:5, 24:9
**period** [4] - 15:3, 15:21, 33:2, 59:10
**permeable** [1] - 23:25
**permits** [1] - 36:10
**permitted** [5] - 14:18, 34:4, 36:25, 45:8, 47:10
**permitting** [1] - 45:14
**person** [1] - 60:20
**personal** [2] - 37:11, 39:13
**personally** [1] - 35:7
**perspective** [1] - 10:22
**persuaded** [1] - 47:13
**persuasive** [2] - 38:5, 74:21
**pertain** [1] - 42:25
**Pharma** [1] - 1:23
**pharma** [1] - 13:11
**PHARMA** [1] - 1:3
**pharmaceutical** [3] - 13:8, 77:5, 77:6
**pharmaceuticals** [1] - 77:24
**Pharmaceuticals** [1] - 47:25
**Pharmacia** [1] - 30:15
**pharmacokinetics** [2] - 13:3, 24:6
**pharmacy** [3] - 55:19, 56:2, 56:6
**phase** [1] - 28:22
**phases** [1] - 28:9
**physician** [1] - 56:1
**physicians** [2] - 55:23, 56:12
**pick** [1] - 30:22
**picture** [3] - 54:5, 78:24, 83:19
**pipeline** [1] - 7:18
**place** [3] - 4:16, 43:15, 69:18
**plainly** [1] - 26:1

**plaintiff** [8] - 4:18, 16:20, 18:23, 36:16, 40:8, 49:14, 84:6, 84:8
**Plaintiff** [2] - 1:16, 1:23
**plaintiffs** [75] - 3:6, 3:18, 6:5, 6:8, 6:13, 6:25, 7:1, 7:6, 7:10, 9:12, 9:25, 10:11, 11:1, 11:7, 11:12, 11:22, 12:19, 15:4, 21:21, 23:3, 23:12, 23:25, 24:15, 26:3, 33:7, 33:9, 33:15, 33:17, 34:22, 46:15, 46:22, 47:2, 47:6, 47:9, 47:11, 50:4, 50:13, 51:7, 51:13, 51:15, 51:22, 52:20, 54:13, 58:23, 60:25, 61:3, 62:2, 62:9, 62:12, 62:23, 63:16, 69:14, 73:23, 74:9, 74:11, 74:13, 76:14, 76:17, 77:8, 78:4, 78:7, 78:13, 78:16, 78:22, 79:14, 79:15, 81:2, 82:1, 82:6, 82:9, 82:11, 83:25, 85:4, 85:14
**Plaintiffs** [1] - 1:4
**plaintiffs'** [22] - 25:5, 29:6, 29:7, 35:14, 46:9, 46:13, 46:24, 47:1, 47:20, 48:17, 48:22, 49:23, 59:24, 74:19, 76:22, 77:14, 78:25, 79:1, 79:4, 79:7, 79:25, 80:6
**Plaintiffs'** [1] - 47:23
**plan** [6] - 52:4, 52:5, 73:19, 73:23
**plans** [1] - 64:5
**plausible** [1] - 77:16
**played** [1] - 32:2
**Plaza** [1] - 1:9
**pleadings** [2] - 6:11, 17:15
**plus** [1] - 5:23
**PM** [1] - 85:22
**podium** [3] - 16:22, 30:8, 40:8
**point** [13] - 9:2, 9:18, 20:13, 30:20, 39:3, 41:2, 41:22, 41:23, 45:19, 45:20, 54:22, 56:14, 65:19
**pointed** [1] - 32:23
**pointing** [1] - 24:15

**points** [6] - 20:22, 28:6, 45:12, 47:22, 64:14, 72:22
**Points** [1] - 51:24
**Polsinelli** [2] - 1:14, 3:19
**polymer** [1] - 23:25
**position** [7] - 25:18, 37:11, 39:5, 48:15, 51:12, 53:1, 85:7
**positions** [1] - 80:25
**possession** [2] - 43:1, 71:16
**possibility** [4] - 5:23, 9:15, 70:2, 75:21
**possible** [2] - 5:25, 14:7
**potential** [3] - 11:10, 56:14, 80:12
**power** [1] - 19:20
**Power** [1] - 51:24
**practicable** [1] - 38:1
**practice** [17] - 12:5, 13:12, 13:15, 17:12, 18:6, 36:3, 36:5, 40:17, 41:5, 41:6, 47:6, 47:13, 47:22, 48:1, 48:19, 48:20, 49:12
**practiced** [1] - 39:14
**practicing** [2] - 29:16, 34:16
**precautions** [1] - 75:22
**precisely** [2] - 13:16, 49:19
**precluded** [1] - 35:17
**predict** [2] - 9:1, 9:9
**predictable** [1] - 49:17
**predicting** [1] - 8:25
**prediction** [1] - 28:1
**predicts** [1] - 49:14
**preference** [3] - 48:6, 50:19, 50:21
**prejudice** [1] - 25:13
**prejudiced** [1] - 9:25
**preliminarily** [1] - 74:15
**preliminary** [10] - 5:21, 6:9, 7:2, 7:20, 9:10, 17:7, 32:3, 54:17, 75:3, 75:7
**preparation** [2] - 41:20, 43:25
**prepare** [1] - 42:13
**prepared** [6] - 24:25, 43:6, 46:7, 53:19, 79:9, 83:23
**prerogative** [1] - 28:10
**prescribe** [1] - 56:1

**prescribing** [1] - 55:23
**prescription** [3] - 55:21, 56:2, 76:24
**present** [8] - 43:11, 75:9, 76:16, 77:11, 77:16, 78:3, 83:6, 84:13
**presentation** [1] - 26:15
**presented** [3] - 25:15, 28:23, 81:8
**presents** [2] - 37:10, 39:5
**president** [1] - 53:20
**presumably** [3] - 68:16, 68:18, 68:20
**presume** [2] - 64:23, 67:12, 69:22
**presumed** [1] - 59:16
**presumes** [1] - 28:18
**presumption** [2] - 66:11, 69:21
**pretrial** [2] - 28:9, 28:22
**pretty** [5] - 9:23, 11:3, 16:13, 20:10, 24:13
**prevail** [1] - 28:1
**prevent** [1] - 82:17
**previous** [1] - 74:18
**previously** [1] - 42:21
**price** [3] - 56:14, 56:16, 56:23
**prices** [4] - 51:10, 56:18, 56:24
**pricing** [2] - 52:16, 54:6
**primarily** [2] - 22:14, 22:15, 76:18
**primary** [2] - 20:22, 36:15
**principle** [3] - 37:20, 60:18, 61:21
**privilege** [2] - 44:10, 44:13
**privileged** [1] - 44:11
**probed** [1] - 48:8
**problem** [6] - 19:7, 40:3, 43:4, 55:4, 72:9, 83:5
**problems** [7] - 45:22, 49:6, 49:9, 49:21, 75:17, 75:19, 85:20
**procedural** [1] - 74:7
**Procedure** [5] - 25:7, 37:23, 46:12, 48:24, 76:10
**proceed** [2] - 28:21, 84:15
**Proceeding** [1] -

**85:22
**proceeding** [1] - 26:16
**proceedings** [2] - 7:2, 27:13
**process** [2] - 22:6, 69:9
**produce** [19] - 20:24, 22:3, 22:5, 30:25, 37:19, 38:25, 44:7, 49:15, 51:16, 52:11, 53:10, 53:14, 53:19, 57:22, 62:6, 69:1, 75:18, 78:22, 79:9
**produced** [28] - 8:1, 8:3, 8:9, 10:22, 21:2, 21:7, 21:8, 21:17, 22:14, 42:6, 43:21, 51:22, 52:4, 53:2, 53:5, 53:17, 55:6, 60:24, 62:2, 62:5, 65:16, 75:7, 75:16, 76:15, 78:6, 79:12, 82:12
**producing** [5] - 21:3, 21:15, 22:6, 53:16, 62:12
**product** [25] - 23:24, 24:7, 30:25, 31:1, 31:3, 31:5, 53:18, 55:19, 55:20, 56:4, 56:7, 58:6, 58:13, 58:25, 59:14, 64:24, 65:1, 65:7, 65:23, 67:15, 68:7, 73:12, 73:13, 74:11
**production** [8] - 6:25, 7:1, 11:2, 11:3, 80:7, 80:12, 80:17, 80:19
**products** [8] - 7:18, 16:1, 51:19, 51:20, 52:6, 58:13, 65:24, 71:7
**professionalism** [1] - 79:22
**profit** [2] - 63:18, 64:3
**profitability** [3] - 57:23, 58:10, 58:11
**profits** [14] - 7:12, 7:16, 18:22, 18:23, 57:21, 63:20, 65:17, 66:1, 71:1, 72:4, 73:3, 74:14, 78:8
**progress** [1] - 10:6
**prohibited** [1] - 44:4
**promote** [1] - 58:24
**promptly** [1] - 29:3
**proportionality** [1] - 44:24
**proposed** [1] - 30:24
**propound** [1] - 21:20

**propounded** [4] - 10:10, 11:8, 22:21, 22:25
**protect** [7] - 14:12, 54:12, 72:16, 75:12, 75:20, 75:23, 79:10
**protected** [1] - 70:17
**protecting** [2] - 13:23, 76:2
**protection** [2] - 13:23, 75:15
**protections** [2] - 81:23, 82:3
**protective** [30] - 4:20, 34:23, 35:15, 43:24, 44:5, 44:7, 45:7, 46:10, 46:15, 54:11, 54:15, 54:19, 54:20, 55:1, 69:18, 69:21, 70:4, 70:6, 70:13, 70:18, 70:19, 70:22, 72:6, 72:7, 72:16, 72:23, 74:4, 75:11, 75:13, 75:23
**protects** [1] - 53:25
**prove** [4] - 18:22, 18:23, 24:4, 71:4
**provide** [4] - 26:18, 36:17, 55:2, 73:6
**provided** [1] - 7:6
**proving** [1] - 71:2
**provisions** [1] - 37:22
**published** [2] - 36:11, 36:13
**purchasing** [1] - 60:12
**purely** [1] - 19:10
**purport** [1] - 34:24
**purpose** [3] - 37:23, 42:11, 78:3
**purposes** [6] - 14:5, 19:1, 68:7, 75:7, 77:11, 78:18
**pursuant** [4] - 25:7, 46:11, 48:23, 50:1
**pursuing** [3] - 50:12, 65:24, 78:15
**pushed** [1] - 15:7
**pushing** [1] - 20:15
**put** [10] - 7:10, 30:20, 30:21, 53:8, 53:20, 55:10, 55:12, 66:7, 68:22, 71:25
**putting** [1] - 30:5

**Q**

**quantifications** [1] - 8:24
**questions** [5] - 20:22,

42:10, 44:19, 66:13
**quick** [1] - 72:22
**quite** [4] - 9:21, 10:2, 29:18, 29:24

**R**

**raise** [4] - 9:18, 17:22, 17:23, 32:18
**raised** [8] - 7:20, 17:21, 33:5, 37:6, 43:7, 43:9, 49:11, 66:12
**raising** [1] - 32:19
**rapid** [1] - 9:8
**rapidly** [2] - 5:16, 10:2
**rare** [1] - 18:10
**rarely** [1] - 12:21
**rather** [10] - 27:10, 37:10, 47:4, 47:8, 47:13, 47:16, 48:21, 50:12, 50:13, 78:24
**reach** [3] - 8:12, 20:12, 82:11
**read** [7] - 16:25, 37:1, 45:15, 46:7, 59:23, 59:24, 74:2
**ready** [2] - 14:11, 19:16
**real** [1] - 72:15
**realities** [2] - 55:21, 73:1
**reality** [2] - 24:16, 76:24
**really** [20] - 6:17, 6:20, 7:23, 8:14, 8:16, 10:2, 11:10, 15:11, 16:3, 23:10, 23:15, 24:3, 30:9, 36:2, 41:5, 52:25, 61:14, 62:21, 63:4, 70:18
**realm** [1] - 70:11
**reason** [9] - 5:15, 6:16, 37:16, 48:18, 56:15, 58:4, 63:23, 69:22, 75:18
**reasonable** [25] - 7:12, 18:24, 20:12, 58:3, 58:12, 58:18, 59:2, 62:21, 63:5, 65:18, 66:4, 66:5, 67:14, 68:8, 71:14, 72:4, 74:14, 78:8, 78:14, 79:15, 83:8, 83:12, 84:12, 84:14, 85:3
**reasonably** [3] - 50:10, 50:11, 84:17
**reasons** [5] - 9:13, 28:25, 45:6, 77:3,

83:17
**rebates** [2] - 51:11, 56:19
**received** [5] - 6:24, 10:13, 25:5, 46:13, 53:13
**recent** [1] - 34:6
**recognized** [3] - 54:16, 57:13, 57:14
**recollects** [1] - 80:15
**reconsider** [1] - 50:7
**record** [15] - 3:3, 23:2, 26:16, 35:3, 46:6, 46:8, 51:22, 51:24, 56:20, 61:9, 74:1, 74:2, 81:5, 81:8, 83:21
**recourse** [1] - 43:4
**recreate** [2] - 52:16, 54:10
**reevaluate** [1] - 14:17
**refer** [1] - 57:1
**references** [1] - 48:3
**referencing** [1] - 55:18
**referring** [1] - 52:1
**refers** [3] - 78:24, 79:25, 82:25
**refusal** [1] - 21:5
**refuse** [1] - 72:2
**refusing** [1] - 70:21
**regard** [10] - 32:8, 64:4, 74:22, 78:3, 81:10, 81:22, 82:5, 82:20, 84:6, 84:21
**regarding** [28] - 25:19, 32:12, 40:18, 46:10, 50:24, 51:18, 52:22, 57:5, 57:7, 58:15, 59:12, 63:17, 65:20, 67:1, 73:20, 74:10, 74:12, 74:19, 74:21, 80:25, 81:3, 81:11, 82:22, 82:24, 83:2, 84:5
**regular** [1] - 54:8
**regularly** [1] - 73:18
**related** [5] - 21:4, 36:25, 65:23, 67:22, 72:8
**relates** [1] - 4:20
**relating** [1] - 52:5
**relationship** [4] - 7:18, 20:11, 56:8, 78:15
**relationships** [1] - 74:5
**relative** [3] - 26:18, 26:19, 27:7
**release** [2] - 23:22, 23:23
**released** [1] - 24:7

**relevance** [7] - 45:2, 55:9, 56:22, 66:17, 72:25, 80:8, 81:10
**relevant** [46] - 28:22, 37:5, 38:24, 45:4, 47:3, 50:10, 51:13, 59:13, 61:14, 61:25, 63:4, 63:12, 63:13, 63:14, 63:18, 63:20, 63:23, 63:25, 64:14, 65:14, 66:1, 66:3, 66:22, 67:2, 67:14, 68:8, 68:11, 69:11, 70:24, 72:4, 74:13, 76:25, 78:6, 78:9, 78:12, 78:17, 79:7, 79:14, 80:6, 80:10, 80:20, 81:1, 81:4, 82:2, 85:6
**reliable** [3] - 57:15, 72:12, 73:17
**Reliant** [2] - 47:25, 48:5
**rely** [5] - 47:1, 57:18, 72:11, 73:17, 73:19
**relying** [4] - 44:3, 69:19, 73:22
**remedy** [1] - 43:3
**remember** [3] - 11:5, 23:1, 29:18
**reminding** [1] - 84:9
**removed** [1] - 56:11
**repeat** [1] - 74:8
**repeatedly** [1] - 45:20
**rephrase** [2] - 12:10, 14:21
**reply** [9] - 7:7, 25:5, 32:4, 32:21, 36:9, 46:13, 53:12, 77:1, 78:12
**represent** [1] - 20:4
**representations** [1] - 18:5
**representative** [2] - 39:10, 39:25
**represented** [3] - 39:16, 65:21, 67:6
**request** [17] - 11:7, 28:20, 37:17, 42:23, 45:6, 46:15, 54:13, 74:9, 74:11, 74:19, 78:5, 78:14, 78:17, 78:23, 79:8, 79:15, 81:8
**requested** [15] - 10:24, 11:9, 40:11, 46:17, 47:2, 47:4, 74:23, 74:25, 75:2, 75:19, 76:13, 80:9, 81:3, 81:16, 83:20

**requesting** [4] - 5:2, 51:7, 51:13, 63:12
**Requests** [1] - 71:24
**requests** [26] - 6:24, 10:14, 21:23, 22:22, 47:15, 48:22, 49:24, 52:21, 67:20, 67:22, 67:23, 69:3, 71:22, 76:17, 78:9, 78:25, 79:1, 79:4, 79:7, 80:6, 80:16, 80:18, 82:21, 82:23, 84:1
**require** [5] - 26:22, 43:11, 46:17, 49:16, 49:24
**required** [3] - 2:24, 33:23, 49:14
**requirement** [1] - 9:6
**requires** [1] - 72:24
**requiring** [2] - 11:12, 27:10
**research** [1] - 7:19
**researched** [1] - 37:16
**reserve** [1] - 64:7
**resisting** [1] - 71:23
**resolution** [5] - 5:17, 27:12, 68:25, 82:10, 84:12
**resolve** [5] - 9:16, 50:2, 80:21, 82:22, 83:8, 83:12
**resolved** [1] - 83:1
**resources** [4] - 25:14, 27:6, 49:8, 79:19
**respect** [12] - 5:14, 7:24, 33:5, 36:17, 40:6, 40:15, 40:22, 48:12, 58:1, 58:11, 59:8, 73:19
**respond** [1] - 42:10
**responded** [2] - 10:4, 48:14
**responding** [2] - 37:16, 37:18
**response** [5] - 35:14, 40:16, 42:22, 46:13, 69:1
**responses** [6] - 32:2, 32:6, 32:21, 32:22, 41:3, 44:19
**responsive** [6] - 11:7, 22:4, 38:24, 42:19, 49:13, 67:23
**result** [4] - 13:5, 27:6, 71:9, 82:10
**return** [1] - 23:8
**revealed** [1] - 42:22
**revenues** [1] - 57:24
**Richard** [2] - 2:9, 3:22
**Richards** [2] - 1:15,

3:17
**ripe** [3] - 6:3, 6:4, 10:5
**rise** [1] - 85:21
**risk** [2] - 17:3, 72:17
**road** [2] - 14:5, 81:6
**Robert** [1] - 53:21
**Robinson** [2] - 18:9, 48:11
**Robinson's** [1] - 30:16
**Robyn** [1] - 1:14, 3:18
**roll** [1] - 83:23
**rounds** [4] - 40:17, 41:4, 41:16, 41:21
**routine** [2] - 26:6, 26:8
**routinely** [2] - 25:25, 76:8
**royalty** [23] - 7:12, 18:24, 58:3, 58:12, 58:18, 59:2, 62:10, 62:21, 63:6, 63:12, 63:19, 63:20, 65:18, 66:1, 66:4, 66:5, 67:2, 67:14, 68:8, 71:14, 72:4, 74:14, 78:9
**rule** [16] - 12:4, 13:11, 13:12, 16:12, 18:4, 18:9, 24:25, 29:19, 35:17, 35:21, 43:8, 47:12, 47:14, 48:24, 74:21, 81:25
**Rule** [23] - 25:7, 37:9, 44:23, 45:14, 46:11, 46:16, 46:25, 47:5, 47:8, 47:16, 48:21, 48:23, 49:4, 49:6, 49:21, 50:8, 65:13, 69:12, 76:10, 80:1, 81:23, 81:25, 82:24
**Rules** [3] - 36:14, 37:22, 80:4
**rules** [2] - 38:5, 50:1
**ruling** [12] - 23:13, 37:1, 50:4, 75:6, 78:19, 79:6, 79:13, 81:10, 81:20, 82:5, 82:16, 83:14
**rulings** [1] - 80:2
**run** [1] - 16:7

**S**

**sake** [1] - 42:17
**sale** [7] - 17:9, 58:15, 65:11, 67:1, 68:1, 68:7, 74:12
**sales** [20] - 15:24, 15:25, 51:19, 52:16, 53:11, 53:19, 53:20,

54:6, 55:19, 57:7, 57:24, 63:25, 67:16, 70:23, 71:3, 71:12, 73:7, 74:9, 78:14
**Samsung** [1] - 70:9
**Sandoz** [34] - 58:15, 59:19, 60:10, 60:11, 60:14, 60:15, 60:16, 61:17, 61:21, 61:23, 61:25, 62:10, 62:13, 62:19, 63:2, 63:17, 63:21, 64:9, 64:18, 64:22, 65:15, 67:3, 67:9, 67:23, 68:3, 68:4, 68:17, 74:12, 80:25, 81:4, 81:6, 81:9
**Sandoz's** [1] - 61:18
**sat** [1] - 8:17
**satisfied** [2] - 42:7, 50:13
**saw** [2] - 51:15, 51:24
**schedule** [6] - 14:1, 19:17, 22:20, 84:6, 84:13, 84:17
**scheduling** [4] - 9:19, 9:22, 17:20, 19:15
**SCHNEIDER** [1] - 1:11
**SCIELE** [1] - 1:3
**science** [3] - 12:22, 24:4, 24:10
**scope** [3] - 36:25, 49:13, 53:6
**scores** [1] - 11:24
**search** [1] - 38:24
**seated** [1] - 3:2
**second** [6] - 4:16, 24:5, 40:23, 45:20, 62:18, 80:24
**secondly** [1] - 75:10
**secrets** [1] - 82:3
**Section** [1] - 2:24
**see** [9] - 5:2, 6:10, 11:13, 24:16, 57:7, 68:25, 72:15, 73:18, 73:19
**seek** [1] - 79:14
**seeking** [6] - 31:19, 31:20, 37:6, 38:21, 69:15, 79:10
**seeks** [3] - 30:1, 49:3, 50:6
**seem** [2] - 14:8, 53:14
**sees** [1] - 28:12
**select** [1] - 29:22
**sell** [6] - 60:18, 60:21, 61:21, 61:23, 62:3, 65:7
**selling** [4] - 66:8, 66:10, 66:11, 71:10

**semipermeable** [1] - 24:1
**sense** [6] - 5:15, 8:18, 8:19, 34:18, 34:25, 35:4
**sensible** [1] - 8:19
**sensitive** [11] - 8:5, 50:24, 51:8, 52:11, 52:23, 74:4, 74:20, 74:23, 76:7, 76:13, 82:18
**sensitivity** [1] - 52:8
**sent** [2] - 31:24, 31:25
**separate** [2] - 25:8
**separately** [1] - 58:6
**separates** [1] - 16:6
**September** [2] - 6:15, 17:3
**serious** [1] - 70:1
**serve** [3] - 25:1, 48:20, 50:13
**served** [8] - 31:18, 31:21, 33:7, 33:9, 33:15, 33:16, 33:19, 40:10
**set** [4] - 15:11, 20:14, 24:15, 79:18
**sets** [3] - 14:21, 24:9, 83:12
**settle** [1] - 59:22
**settlement** [12] - 58:23, 58:24, 59:17, 60:3, 60:5, 60:7, 61:1, 61:3, 63:1, 63:4, 65:8, 74:5
**several** [4] - 18:6, 18:7, 25:17, 41:18
**shall** [1] - 49:25
**shape** [1] - 24:19
**Shionogi** [33] - 1:23, 3:3, 3:8, 7:3, 22:17, 30:5, 46:11, 46:19, 52:3, 52:4, 52:11, 52:15, 53:24, 55:3, 55:4, 55:11, 55:12, 55:20, 56:10, 56:21, 56:23, 57:21, 59:12, 59:22, 60:6, 64:2, 64:3, 64:4, 71:3, 71:5, 72:24, 73:12, 85:12
**Shionogi's** [5] - 4:19, 52:1, 53:22, 55:9, 55:14
**Short** [5] - 50:22, 60:8, 60:23, 62:4, 62:15
**short** [2] - 26:9, 50:19
**shorten** [1] - 50:25
**show** [3] - 56:21, 66:16, 83:25

**showed** [1] - 56:17
**showing** [5] - 25:16, 44:4, 69:25, 78:11, 81:3
**shown** [6] - 25:21, 26:17, 43:23, 43:25, 78:13, 80:11
**Shughart** [2] - 1:14, 3:19
**shy** [1] - 32:19
**side** [5] - 13:2, 28:5, 34:20, 79:21
**sides** [5] - 10:7, 28:4, 33:11, 73:18, 85:2
**sign** [2] - 60:2, 60:6
**signal** [1] - 85:2
**signed** [2] - 60:9, 68:20, 68:24
**similar** [2] - 16:1, 33:8
**simply** [2] - 46:23, 50:13
**single** [6] - 19:13, 26:16, 27:8, 72:1, 72:17
**sit** [2] - 27:10, 31:12
**situation** [8] - 26:24, 29:9, 49:19, 59:3, 59:6, 59:15, 62:22, 65:22
**Sleet** [1] - 18:11
**sleeves** [1] - 83:24
**small** [1] - 16:5
**sold** [6] - 51:20, 53:11, 53:18, 57:25, 64:1, 73:6
**solution** [1] - 42:21
**solve** [1] - 72:9
**someone** [3] - 30:23, 43:11, 54:9
**sometime** [1] - 14:11
**somewhat** [2] - 16:6, 22:12
**Somil** [2] - 1:21, 3:10
**soon** [1] - 21:12
**sorry** [6] - 11:14, 38:14, 42:17, 62:16, 63:7, 69:14
**sort** [3] - 24:20, 49:19, 58:7
**sorts** [1] - 63:11
**sought** [2] - 48:8, 48:25
**sounds** [1] - 38:16
**source** [4] - 49:1, 49:5, 70:10, 70:13
**sources** [2] - 37:16, 72:9
**Southern** [1] - 37:8
**special** [2] - 11:24, 29:13

**specific** [15] - 12:7, 43:6, 45:18, 49:10, 51:8, 51:9, 52:13, 54:22, 55:16, 61:13, 68:4, 70:20
**specifically** [4] - 38:10, 53:9, 53:12, 75:13
**specificity** [1] - 83:15
**specifics** [5] - 9:14, 77:7, 78:25, 79:4, 82:20
**speculative** [1] - 19:10
**spent** [1] - 12:23
**spring** [3] - 5:25, 14:11, 58:22
**stage** [1] - 77:16
**stages** [2] - 14:12, 15:2
**stake** [1] - 27:14
**stakes** [2] - 79:21, 83:19
**stall** [1] - 50:5
**stand** [2] - 10:21, 20:4
**standard** [3] - 18:21, 18:24, 71:21
**Standard** [1] - 71:23
**stands** [1] - 12:6
**Stapleton** [1] - 30:14
**Stark** [1] - 18:11
**start** [8] - 4:16, 4:25, 13:2, 13:3, 16:13, 23:7, 51:4, 64:9
**started** [1] - 69:2
**starting** [2] - 3:5, 29:18
**State** [1] - 3:25
**statement** [2] - 20:9, 39:4
**statements** [1] - 65:1
**STATES** [2] - 1:1, 1:11
**states** [2] - 47:24, 48:4
**States** [2] - 1:8, 11:11
**statistics** [1] - 57:15
**status** [1] - 41:20
**statute** [1] - 9:2
**stay** [9] - 4:13, 5:1, 5:24, 12:9, 25:3, 28:17, 28:20, 29:2, 30:8
**stayed** [5] - 5:8, 5:21, 8:20, 17:9, 80:20
**Stein's** [1] - 45:15
**step** [3] - 24:4, 30:8, 31:12, 55:7
**Stephen** [1] - 2:7
**steps** [1] - 70:16
**Sterns** [2] - 2:10, 4:1
**Steven** [3] - 1:16, 3:17, 3:24

**stick** [1] - 22:19
**still** [5] - 41:4, 48:15, 48:22, 62:19, 83:10
**stood** [1] - 40:8
**straightforward** [3] - 12:18, 18:21, 19:4
**strategy** [3] - 52:16, 54:6, 54:10
**strike** [1] - 42:22
**strongest** [1] - 17:24
**subject** [1] - 38:7
**subjective** [2] - 37:13, 45:17
**submitted** [1] - 41:20
**subpoena** [2] - 81:21, 82:7
**subpoenas** [3] - 81:16, 81:17, 81:22
**subsidiary** [1] - 36:18
**substance** [2] - 18:2, 76:20
**substantial** [2] - 26:23, 27:1
**substantially** [1] - 10:23
**substituted** [3] - 55:24, 56:4, 58:7
**substitution** [5] - 55:25, 56:3, 56:12, 73:4
**subsumed** [1] - 67:19
**success** [3] - 8:10, 8:25, 9:1
**sue** [1] - 23:14
**suffer** [1] - 53:22
**sufficiency** [4] - 32:15, 40:18, 42:5, 42:9
**sufficient** [5] - 13:9, 25:24, 80:22, 81:3, 83:21
**suggest** [1] - 24:14
**suit** [1] - 43:15
**sum** [3] - 49:23, 76:20, 82:16
**summer** [3] - 5:25, 14:11, 58:22
**supplemental** [3] - 23:4, 40:21, 40:23
**supplemented** [2] - 33:3, 40:20
**supplementing** [1] - 21:10
**support** [8] - 5:6, 9:4, 26:21, 30:2, 30:17, 30:22, 47:9, 50:11
**supported** [1] - 47:19
**supporting** [3] - 43:17, 46:24, 47:19
**suppose** [1] - 63:16,

68:17
**surprise** [1] - 77:8

**T**

**table** [1] - 30:8
**tag** [1] - 62:16
**tag-team** [1] - 62:16
**team** [1] - 62:16
**technically** [1] - 6:17
**technologies** [4] - 12:24, 23:9, 23:19, 24:10
**technology** [5] - 18:16, 24:4, 38:12, 38:15
**tee** [1] - 84:22
**ten** [3] - 29:10, 29:11, 29:13
**term** [1] - 45:17
**terms** [13] - 7:5, 7:7, 8:1, 8:2, 8:8, 11:1, 11:21, 15:22, 26:19, 51:9, 52:13, 54:7, 56:22
**terribly** [2] - 72:11, 75:2
**test** [4] - 42:4, 42:8, 45:25, 72:10
**testified** [1] - 11:14
**testifies** [1] - 37:12
**testify** [2] - 30:23, 31:3
**testifying** [1] - 37:11
**testing** [2] - 38:12, 38:14
**THE** [134] - 1:1, 1:11, 3:1, 3:21, 4:3, 4:6, 4:11, 4:24, 5:9, 6:3, 7:16, 8:5, 10:10, 10:16, 10:21, 11:23, 12:15, 13:4, 14:3, 14:13, 14:17, 14:25, 16:18, 16:23, 17:6, 17:14, 17:17, 17:24, 19:18, 19:21, 19:23, 20:1, 20:7, 20:9, 20:16, 20:19, 20:24, 21:7, 21:10, 21:16, 21:20, 21:23, 21:25, 22:3, 22:7, 22:9, 22:11, 24:18, 24:24, 29:25, 30:7, 31:17, 32:8, 32:23, 33:7, 33:12, 33:15, 33:25, 35:8, 35:10, 35:19, 35:21, 35:24, 36:2, 36:21, 37:2, 38:7, 38:18, 38:20, 39:6, 39:8, 39:19, 39:24,

40:8, 40:13, 40:19, 41:1, 41:6, 41:11, 42:11, 42:16, 43:17, 44:2, 45:9, 45:11, 46:5, 50:23, 51:12, 51:21, 52:3, 52:7, 52:19, 52:24, 54:11, 54:22, 57:11, 57:13, 58:17, 58:20, 59:17, 59:23, 60:13, 60:17, 60:20, 61:5, 61:9, 61:13, 61:20, 61:24, 62:2, 62:8, 63:10, 64:6, 64:8, 64:12, 64:15, 64:17, 65:4, 65:25, 66:8, 66:16, 66:20, 66:25, 67:9, 67:18, 67:25, 68:16, 69:6, 69:13, 72:20, 73:25, 84:10, 85:17, 85:21
**Theodore** [1] - 2:25
**theories** [4] - 23:5, 78:8, 78:15, 80:6
**theory** [1] - 30:18
**therefore** [3] - 48:17, 75:5, 79:8
**therein** [1] - 38:5
**they've** [13] - 7:19, 31:24, 31:25, 34:3, 40:13, 40:14, 40:20, 41:24, 41:25, 43:7, 43:9, 45:21, 56:17
**thinking** [2] - 14:17, 82:9
**third** [6] - 25:9, 55:3, 57:6, 57:11, 57:12, 76:4
**Third** [1] - 29:12
**third-party** [5] - 25:9, 55:3, 57:6, 57:11, 57:12
**three** [5] - 4:12, 11:16, 70:18, 80:13, 84:5
**thrust** [1] - 26:21
**Thynge** [1] - 37:3
**Tico** [1] - 30:14
**timing** [1] - 85:19
**Timothy** [2] - 2:12, 4:9
**tiny** [1] - 45:12
**Title** [1] - 2:24
**today** [1] - 79:18
**took** [2] - 85:1, 85:5
**topic** [3] - 37:11, 49:7, 80:16
**topics** [10] - 30:4, 38:10, 45:4, 46:16, 46:19, 46:21, 46:22, 50:9, 80:23
**total** [7] - 51:20,

53:11, 53:18, 53:19, 57:25, 73:6, 73:14
**totally** [3] - 24:10, 62:23, 62:25
**toto** [2] - 79:8, 82:17
**touch** [1] - 19:15
**trade** [1] - 82:3
**traditionally** [1] - 33:20
**transcript** [2] - 47:23, 48:4
**transcripts** [1] - 47:20
**transfer** [3] - 58:25, 59:19, 62:20
**transferred** [3] - 61:2, 61:3, 61:5
**transferring** [1] - 21:14, 62:22, 62:24
**trema** [1] - 24:6
**trial** [26] - 14:6, 14:11, 14:22, 19:2, 19:7, 19:12, 19:16, 19:24, 20:1, 25:8, 27:9, 27:10, 28:1, 28:8, 28:11, 28:13, 28:16, 28:23, 37:24, 42:14, 42:20, 43:1, 43:3, 47:2, 65:12, 78:19
**tried** [2] - 13:25, 22:22
**Trivedi** [2] - 1:21, 3:10
**TRIVEDI** [3] - 3:11, 21:13, 21:18
**true** [10] - 2:24, 18:8, 18:9, 19:13, 26:24, 47:17, 54:8, 61:19, 65:11, 66:10
**try** [8] - 10:7, 14:13, 14:19, 14:22, 42:20, 72:14, 83:8, 84:16
**trying** [4] - 18:12, 24:14, 65:7, 68:6
**Tunnell** [1] - 1:17
**turns** [1] - 72:12
**twice** [1] - 40:20
**two** [40] - 4:14, 4:16, 5:3, 5:23, 6:19, 6:20, 10:18, 11:22, 14:12, 17:18, 20:6, 21:18, 21:19, 22:17, 23:9, 23:19, 24:9, 26:2, 26:3, 27:10, 29:12, 40:17, 40:23, 40:24, 41:4, 41:9, 41:21, 45:12, 54:5, 55:10, 66:6, 68:6, 68:9, 71:16, 72:18, 77:5, 81:15, 81:17
**twofold** [1] - 77:4
**type** [19] - 33:16, 35:17, 36:6, 36:10,

38:21, 51:23, 57:17, 58:8, 59:15, 67:19, 69:13, 69:15, 72:3, 76:7, 76:11, 80:20, 83:24, 83:25, 84:1
**types** [3] - 17:20, 66:13, 70:21
**typically** [3] - 42:2, 44:23, 63:10

**U**

**U.S.C** [1] - 2:24
**ultimate** [2] - 26:10, 27:11
**ultimately** [5] - 28:1, 31:7, 61:2, 79:24
**unable** [1] - 50:6
**uncomfortable** [1] - 54:23
**uncontroversial** [2] - 25:18, 38:22
**under** [15] - 26:13, 34:23, 37:19, 43:24, 44:5, 44:23, 48:23, 48:24, 49:20, 65:13, 69:12, 70:12, 72:16, 81:25, 84:15
**undercut** [1] - 52:17
**underlying** [3] - 30:11, 30:12, 67:15
**undermined** [1] - 43:10
**understandable** [1] - 83:17
**understood** [1] - 61:16
**underway** [2] - 8:15, 21:13
**undoubtedly** [2] - 27:11, 27:16
**unduly** [3] - 25:19, 25:22, 80:11
**unequivocal** [1] - 29:22
**unfortunately** [1] - 63:7
**unique** [3] - 11:24, 13:13, 72:19
**uniquely** [2] - 18:20, 18:21
**UNITED** [1] - 1:1
**United** [2] - 1:8, 11:11
**uNITED** [1] - 1:11
**units** [6] - 51:20, 53:11, 53:18, 57:25, 64:1, 73:6
**unless** [4] - 8:12, 20:21, 71:9, 71:17

**unnecessary** [4] - 27:16, 76:18, 77:23, 79:3
**unqualified** [1] - 77:10
**unreasonable** [1] - 79:21
**unusual** [1] - 29:9
**up** [18] - 15:11, 17:9, 17:10, 20:14, 24:15, 30:8, 30:21, 31:12, 40:5, 40:8, 42:10, 44:18, 45:21, 58:19, 75:23, 79:10, 83:24, 84:22
**usual** [1] - 13:21

## V

**vacuum** [1] - 65:15
**valid** [5] - 23:13, 59:4, 59:7, 59:16, 66:12
**validity** [7] - 31:11, 32:1, 32:7, 33:6, 33:11, 35:4, 46:1
**validly** [1] - 23:17
**valuable** [1] - 66:14
**value** [8] - 59:4, 59:8, 62:25, 65:1, 66:6, 67:15, 68:7
**valued** [2] - 64:23, 64:24
**valuing** [1] - 65:16
**Various** [1] - 1:6
**Vary** [1] - 3:25
**varying** [1] - 15:2
**vast** [1] - 34:2
**vehicle** [1] - 37:18
**versus** [4] - 3:4, 45:1, 55:8, 71:12
**via** [7] - 39:2, 46:18, 47:8, 47:15, 48:14, 49:15, 49:24
**vice** [1] - 53:20
**view** [10] - 27:13, 27:15, 28:2, 39:13, 48:10, 51:1, 63:20, 77:15, 81:7, 81:24
**violated** [1] - 69:22
**virtually** [4] - 7:4, 25:25, 26:25, 31:22
**virtue** [1] - 59:10
**vista** [1] - 16:6
**vivo** [1] - 24:2
**vs** [1] - 1:5

## W

**waited** [1] - 6:16

**waiting** [3] - 22:3, 22:5, 60:6
**walked** [1] - 61:3
**wants** [10] - 9:14, 14:6, 14:19, 28:10, 39:1, 49:18, 70:15, 80:13, 80:24, 81:14
**warranted** [1] - 44:25
**warrants** [1] - 12:9
**Warren** [2] - 2:6, 3:24
**Watson** [2] - 52:15, 56:7
**Waxman** [2] - 13:22, 77:1
**ways** [2] - 55:15, 73:13
**week** [3] - 11:4, 20:5
**weeks** [4] - 15:8, 21:18, 21:19, 22:17
**weigh** [1] - 28:3
**Weinroth** [2] - 2:10, 4:1
**welcome** [1] - 4:11
**whole** [4] - 6:21, 7:22, 8:11, 54:10
**wholesaler** [2] - 56:9
**wide** [1] - 57:6
**willing** [3] - 27:12, 68:23, 69:1
**Wilmer** [1] - 1:20
**Wilmington** [1] - 29:8
**win** [2] - 28:5, 35:19
**wins** [1] - 19:11
**wish** [1] - 83:14
**withdraw** [1] - 10:15
**witness** [15] - 11:11, 30:21, 31:3, 34:19, 38:25, 39:18, 42:5, 42:9, 43:23, 43:25, 44:5, 44:19, 46:1, 49:10, 49:12
**witnesses** [14] - 7:7, 7:8, 7:9, 7:10, 10:4, 10:5, 11:6, 11:9, 11:14, 15:4, 15:18, 27:23, 31:12, 34:22
**WOOD** [26] - 35:13, 35:20, 35:23, 36:1, 36:4, 36:22, 37:3, 38:9, 38:19, 39:3, 39:7, 39:11, 39:23, 40:2, 40:12, 40:16, 40:20, 41:2, 41:10, 41:14, 41:22, 42:15, 42:24, 43:20, 44:6, 45:10
**Wood** [3] - 2:7, 3:24, 41:16
**Woods** [2] - 2:12, 4:9
**word** [6] - 16:18,

22:11, 35:10, 40:14, 45:11, 64:8
**words** [2] - 29:23, 78:16
**works** [2] - 10:7, 14:1
**world** [1] - 64:18
**worse** [1] - 78:23
**written** [5] - 30:4, 38:23, 45:22, 49:7
**wrote** [1] - 37:2

## Y

**year** [1] - 14:20
**years** [7] - 18:13, 29:17, 29:18, 34:5, 34:16, 39:14, 72:2
**York** [1] - 37:8
**yourselves** [1] - 84:13

## ®

® [2] - 73:20

# EXHIBIT B

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| THE TORO COMPANY, a Delaware Corporation, and EXMARK MFG. CO., a Nebraska Corporation, | ) ) ) ) | 8:01CV279 |
| Plaintiffs, | ) ) | |
| vs. | ) ) | MEMORANDUM AND ORDER |
| SCAG POWER EQUIPMENT, INC., a Wisconsin Corporation, and METALCRAFT OF MAYVILLE, INC., a Wisconsin Corporation, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

Before me is the defendants' appeal, Filing No. 180, of Magistrate Judge Thalken's order denying the defendants' motion, Filing No. 177, for a bifurcated trial in this matter.

Very shortly before the pretrial conference, the defendants moved to separate trial of the liability issues from the damages and willfulness issues, using the same jury for both phases. During the pretrial conference, Magistrate Judge Thalken overruled the motion, finding that: 1) the motion to bifurcate was untimely, coming as it did just before trial; 2) at least two witnesses, one for each side, would by inconvenienced by a bifurcated trial; and 3) the case was not complex enough to merit bifurcation.

I have now carefully reviewed the pretrial order, Filing No. 179, the parties' briefs, Filing Nos. 178, 181, and 184, and the applicable law. I conclude that because the magistrate judge's order is neither clearly erroneous nor contrary to law, *see* 28 U.S.C. § 636(b)(1)(A); NELR 72.3(d), the defendants' appeal should be dismissed.

A trial court may, in its discretion, bifurcate a trial as a convenience, to avoid prejudice, to expedite, or as a matter of judicial economy. *See* Fed. R. Civ. P. 42(b). The defendants have failed to establish to my satisfaction that any of these grounds for bifurcation exists.

The defendants' motion was filed only after the parties had completed the proposed pretrial order, one business day before the pretrial conference itself. While the defendants, as a matter of strategy, may have planned from the outset on a bifurcated trial, the plaintiffs argue that they prepared the witness list and documentary proof for the pretrial order on the assumption this would be a unitary trial. If separation of the liability and damages issues is as fundamental as the defendants now insist, the need for separation should have been raised and discussed much earlier, at least during initial discovery, rather than near the end of the game.

Further, despite the defendants' protestations that this is a complicated suit, the mechanical and engineering questions raised by the four patents at issue are not so complex that they will intimidate a jury of normal intelligence. If counsel properly order the presentation of the evidence, using appropriate demonstrative exhibits, the jury will quickly comprehend the issues with regard to each patent. Carefully worded instructions and verdict forms will enable the jury to decide both liability and damages without confusion or prejudice toward either party.

The defendants have also not convinced me that the damages calculations in this case are so complex that they merit a separate trial. Indeed, artificially separating damages from the infringement and invalidity issues might create evidentiary problems. For example, one of the defenses the defendants are using to establish the invalidity of the patents is

2

obviousness under 35 U.S.C. § 103. To establish one element of that defense, the defendants may need to offer evidence about the economic success of the patented invention – evidence that also goes directly to damages, but that would nevertheless become duplicative in a separate damages phase. Moreover, several witnesses will testify on both liability and damages issues. The inconvenience to those witnesses if required to appear twice must also weigh in the balance.

I have concluded that a bifurcated trial will not serve any of the purposes set forth in Rule 42(b). Accordingly,

IT IS HEREBY ORDERED that the defendants' appeal, Filing No. 180, of Magistrate Judge Thalken's order denying the defendants' motion, Filing No. 177, for a bifurcated trial in this matter is dismissed.

DATED this 24th day of January, 2003.

BY THE COURT:

s/Joseph F. Bataillon
United States District Judge

# EXHIBIT C

**CONFIDENTIAL – FILED UNDER SEAL**

| | |
|---|---|
| **From:** | Schickel, Samoneh |
| **To:** | Li, Vincent; Matthew Friedrichs; Astellas_MyrbetriqMWETeam; dsilver@mccarter.com; "Jack Phillips"; ajoyce@mccarter.com; kford@mccarter.com |
| **Cc:** | "Megan C. Haney"; bill.zimmerman; Andrea.Cheek@knobbe.com; Carol Pitzel Cruz; Linda Dunn; KMOB-Mira |
| **Subject:** | RE: Correspondence from Simon Roberts |
| **Date:** | Monday, August 5, 2024 10:45:36 AM |

Counsel,

We write to summarize our August 2nd meet and confer.

The parties' positions with respect to Lupin's discovery deficiencies that the parties agreed that they are at an impasse are noted below.

- **Requests for Production:**
  - Lupin-Specific RFP No. 1: Production of *Ex Parte* Transcript During PI Hearing
    - Lupin stated that it will not produce an unredacted version of the *Ex Parte* Transcript, because circumstances have not changed. Lupin further stated that to the extent Astellas raises this issue with the Court, Lupin will oppose Astellas' request on the merits. Astellas stated that it had agreed to the Lupin *ex parte* communication with the Court to belay any concern that there was a potential anti-trust with telling its competitors what its launch plans were. That antitrust concern no longer exists and should not be used to shield production of information that has now become relevant in this case since Lupin has launched its ANDA product at risk. The parties agreed that they are at an impasse.
  - Lupin-Specific RFP No. 2: Production of Documents and Things Concerning the Decision to Develop, Manufacture, and Sell Defendant's ANDA Product including documents concerning drug and compound reviews, documents comparing the benefits of Mirabegron against other treatment options for overactive bladder, business plans, regulatory plans, product or project proposals and approvals, meeting minutes, patent clearance or infringement reviews or investigations, strategic plans or forecasts, market or sales projections or forecasts, marketing and business plans, and competitive analyses.
    - Lupin stated that it will not produce information responsive to this request because it is irrelevant. Astellas stated that the requested information is relevant to secondary considerations of nonobviousness, including long felt unmet need and commercial success. As an example, Astellas stated that Lupin's decision documents might explain their reasons for wanting to make a generic copy, including an analysis of comparisons with other treatments already on the market that would go to long felt unmet need. Astellas further stated that the decision documents will also likely look at market share, costs, and potential profits, which are relevant to commercial success. The parties agreed

that they are at an impasse.

- ○ Lupin-Specific RFP No. 5: Production of Documents and Things Concerning Defendant's Plans for and Actual Commercial Launches etc.
    - ■ Lupin stated that it will produce relevant documents concerning Lupin's actual launch but not plans for the launch.  Lupin states that information relating to its planned launch is irrelevant.  Astellas disagreed, stating that the requested information relates to damages and commercial success.  The parties agreed that they are at an impasse.
- **Interrogatories:**
    - ○ ROG No. 2: Describe in detail, all steps you have taken in preparation to sell, offer to sell, or import Defendant's ANDA Product in the United Sates.
        - ■ Lupin stated that it will not respond to this interrogatory, because it is irrelevant.  Astellas stated that this interrogatory is relevant to at least infringement.  The parties agreed that they are at an impasse.
    - ○ ROG No. 9: Asks Defendant to provide detail about its decision to launch Defendant's ANDA Product.
        - ■ Lupin stated that it will not respond to this interrogatory, because it is irrelevant.  Astellas disagreed, noting that this interrogatory is relevant to at least infringement and secondary considerations of nonobviousness.  The parties agreed that they are at an impasse.

The parties' positions with respect to Astellas' remaining discovery requests are noted below. Astellas notes that during the meet and confer, Lupin refused to provide a date in which it would supplement its responses to Rog Nos. 5-7 and RFP No. 4 and could not commit to doing so within two weeks.  Astellas reiterates its request that Lupin supplement its responses within two weeks.

- **Requests for Production:**
    - ○ Joint RFP No. 1: Production of 90 unexpired samples of each strength ANDA Product
        - ■ Astellas stated that Lupin's production is deficient because they are refusing to provide any 50 mg samples of its ANDA product unless they are in the final approved closure system.  Lupin represented that they do not have any 50 mg samples other than the ones manufactured 6 years ago.  Lupin further stated that it has not manufactured 50 mg samples since then.  Lupin further stated that to the extent they do manufacture 50 mg samples, they will produce them.
    - ○ Joint RFP No. 2 and Lupin-Specific RFP No. 1: Production of Batch Records and Certificates of Analysis
        - ■ Astellas requested that Lupin produce batch records and certificates of analysis for Lupin's unexpired, 50 mg ANDA product.  Lupin stated that it does not have a 50 mg ANDA product.  Lupin further stated that to the extent they manufacture

50 mg samples, they will produce the requested batch records and certificates of analysis.

- Joint RFP No. 2: Production of Chain of Custody, Shipping, Storage, Handling, and Standard Operating Procedures for Storing and Maintaining Defendants' ANDA Products
    - Lupin stated that it will let Astellas know within 1 week as to whether Lupin will stipulate that it will not contest the chain of custody, shipping, storage, handling, and SOPs for storing and maintaining Defendants' ANDA products up to when Lupin drop-shipped its ANDA products to Scisafe.  To the extent Lupin refuses to stipulate, the parties are at an impasse.  Astellas stated that it would await Lupin's response regarding the stipulation.
- Lupin-Specific RFP No. 1: Production of Documents and Things Concerning the Importation into the United Sales, Preparation, Manufacture, Use, Offer for Sale, Sale, Price, Profit, Purchase, Marketing, and Distribution of Defendant's ANDA Products
    - Lupin stated that it would inquire with its client as to what form the requested information was kept in and would get back to us within two weeks.
- Lupin-Specific RFP No. 4: Production of Documents and Things Concerning Marketing Plans, Marketing Materials, Strategic Plans, pricing strategies, and capacity forecasts for your ANDA
    - Lupin stated that it will produce responsive documents but did not provide a date certain by which it would do so.  Astellas requests that Lupin produce the requested information within two weeks.

- **Interrogatories:**
    - ROG No. 1: Identify and Describe all Batches of Defendant's ANDA Product that Defendant has manufactured
        - Lupin stated that it will provide supplemental information as it becomes available sufficient to identify the amount of Lupin's ANDA product that has been sold in the United States.  Astellas stated that it was also requesting information about the manufacturing of Lupin's ANDA product, because if the manufacturing has changed in any respect from the manufacturing of the exhibit batches, that may provide evidence relating to infringement.  Lupin stated that it would consider our request and let us know within 7-10 days.
    - ROG No. 4: For each claim of the Patent-in-suit that Defendant contends that it does not infringe, state the factual and legal bases for your assertion, identifying each claim element that you contend is not present in Defendant's ANDA Product.
        - Lupin stated that as of the date of the meet and confer, it had nothing further to supplement in response to interrogatory no. 4.  Lupin stated that once Astellas supplements its infringement contentions, it will supplement its response to interrogatory no. 4 at that time.

ROG No. 5: Describe each study, analysis or investigation conducted by any Person, including Defendant, any other Defendant Group, or any third party, related to Defendant's alleged infringement or the validity of the Patent-in-suit

- ■ Lupin stated information responsive to this request may be gleaned from documents produced by Lupin.  Astellas stated that Lupin has not complied with Fed. R. Civ. P. 33(d), because Lupin has failed to identify any documents by Bates number.  Lupin stated that it would supplement to identify the documents by Bates number.  Astellas further requested that Lupin supplement its response to state whether it intends to rely on the opinion of counsel.  Lupin stated that they did not understand this interrogatory to be requesting this information but will evaluate that as part of its supplementation.  Lupin refused to supplement its response to this interrogatory within two weeks.  Astellas reiterates its request that Lupin supplement its response to this interrogatory within two weeks.

- ○ ROG No. 6: For all sales of [Defendant's] ANDA Product, state on a monthly basis the number of units imported, sold, the price at which the units were sold, the revenue earned on the sales, the identity of the customers to whom the sales were made, etc.

  - ■ Lupin stated that it would supplement its response to identify documents by Bates number in accordance with Fed. R. Civ. P. 33(d).  Lupin again refused to commit to supplementing its response within two weeks.  Astellas reiterates its request that Lupin supplement its response to this interrogatory within two weeks.

- ○ ROG No. 7: Identify and describe with particularity any product(s) you contend are a noninfringing substitute for Myrbetriq® Tablets, including the cost and time required to develop and manufacture such substitute(s), whether [Defendant] ever considered such substitute(s), the reason(s) why [Defendant] has not pursued such substitute(s), and whether such substitutes would have required filing of an application with the U.S. Food and Drug Administration.

  - ■ Lupin stated that it would supplement its response.  Lupin again refused to commit to supplementing its response within two weeks.  Astellas reiterates its request that Lupin supplement its response to this interrogatory within two weeks.

- ○ ROG No. 8: State all factual and legal bases for any contention that [Defendant] has not willfully infringed the Patent-in-suit including identification of any opinions of counsel that you intend to rely on, any communications relating to such contentions, the Person(s) most knowledgeable about the foregoing information and the subject matter known by them, and any documents and things that support, refute, or otherwise relate to this contention.

  - ■ Lupin stated that it would supplement its response after Astellas provides detailed contentions regarding its theory of willful infringement.  Astellas stated that Lupin did not need detailed willful infringement contentions to determine

<mark>whether it was going to rely on an opinion of counsel.  Lupin disagreed.</mark>

- **<u>Update Rule 26(a)(1) Disclosures to include Mr. Vineeth Raghavan</u>**
  - Lupin stated that it does not anticipate adding Mr. Raghavan but reserves its right to do so.

Finally, with respect to Lupin-Specific RFP No. 3 and 6 and Rog No. 10, Lupin states that after a reasonable search, Lupin either has not identified any responsive documents or is not aware of any responsive information.  In view of Lupin's representation, please supplement your responses to state that Lupin will produce the requested information, should Lupin identify any relevant documents or become aware of any relevant information.

Regards,
Sammy

SAMMY SCHICKEL
Partner
**McDermott Will & Emery LLP**  300 Colorado Street, Suite 2200, Austin, TX 78701
**Tel** +1 512 298 5686   **Email** sschickel@mwe.com
**Website** | **vCard** | **LinkedIn**

---

**From:** Li, Vincent <Vli@mwe.com>
**Sent:** Monday, July 22, 2024 4:03 PM
**To:** Matthew Friedrichs <Matthew.Friedrichs@knobbe.com>; Bass, Jake <jbass@mwe.com>; Astellas_MyrbetriqMWETeam <Astellas_MyrbetriqMWETeam@mwe.com>; dsilver@mccarter.com; 'Jack Phillips' <jcp@pmhdelaw.com>; ajoyce@mccarter.com; kford@mccarter.com
**Cc:** 'Megan C. Haney' <mch@pmhdelaw.com>; bill.zimmerman <bill.zimmerman@knobbe.com>; Andrea.Cheek@knobbe.com; Carol Pitzel Cruz <Carol.Pitzel.Cruz@knobbe.com>; Linda Dunn <Linda.Dunn@knobbe.com>; KMOB-Mira <KMOB-Mira@knobbe.com>
**Subject:** RE: Correspondence from Simon Roberts

Counsel,

Please see the attached correspondence on behalf of Simon Roberts.

Best Regards,
Vincent

VINCENT LI
Associate
**McDermott Will & Emery LLP**  One Vanderbilt Avenue, New York, NY 10017-3852
**Tel** +1 212 547 5381   **Email** vli@mwe.com
**Website** | **vCard** | **LinkedIn**

---

**From:** Matthew Friedrichs <Matthew.Friedrichs@knobbe.com>
**Sent:** Thursday, May 30, 2024 1:54 PM
**To:** Bass, Jake <jbass@mwe.com>; Astellas_MyrbetriqMWETeam

<Astellas_MyrbetriqMWETeam@mwe.com>; dsilver@mccarter.com; 'Jack Phillips'
<jcp@pmhdelaw.com>; ajoyce@mccarter.com; kford@mccarter.com
**Cc:** 'Megan C. Haney' <mch@pmhdelaw.com>; bill.zimmerman <bill.zimmerman@knobbe.com>;
Andrea.Cheek@knobbe.com; Carol Pitzel Cruz <Carol.Pitzel.Cruz@knobbe.com>; Linda Dunn
<Linda.Dunn@knobbe.com>; KMOB-Mira <KMOB-Mira@knobbe.com>
**Subject:** RE: Correspondence from Simon Roberts

**[ External Email ]**
Counsel,

Please see the attached correspondence.

Best regards,
Matt

**Matthew Friedrichs**
Associate

(212) 849-3029 **Direct**

**Knobbe Martens**

---

**From:** Bass, Jake <jbass@mwe.com>
**Sent:** Tuesday, May 28, 2024 5:34 PM
**To:** Matthew Friedrichs <Matthew.Friedrichs@knobbe.com>; 'Jack Phillips' <jcp@pmhdelaw.com>;
'Megan C. Haney' <mch@pmhdelaw.com>; Bill Zimmerman <Bill.Zimmerman@knobbe.com>;
Andrea Cheek <Andrea.Cheek@knobbe.com>; Carol Pitzel Cruz <Carol.Pitzel.Cruz@knobbe.com>;
Linda Dunn <Linda.Dunn@knobbe.com>; KMOB-Mira <KMOB-Mira@knobbe.com>
**Cc:** Astellas_MyrbetriqMWETeam <Astellas_MyrbetriqMWETeam@mwe.com>;
dsilver@mccarter.com; ajoyce@mccarter.com; kford@mccarter.com
**Subject:** RE: Correspondence from Simon Roberts

Counsel,

It has been several weeks and Lupin has yet to provide any substantive response to the various
discovery deficiencies raised in our May 15 letter.  Moreover, our May 22 request for a meet
and confer has gone unanswered.  Please provide your availability for a meet and confer on
May 30 between the hours of 2 p.m. to 4 p.m. EDT.  If Lupin continues to ignore our request for
a meet and confer regarding Lupin's discovery deficiencies, we will have no choice but to raise
these issues with the Court.

Sincerely,

JACOB MICHAEL BASS
Associate

**McDermott Will & Emery LLP** One Vanderbilt Avenue, New York, NY 10017-3852
**Tel** +1 212 547 5680   **Email** jbass@mwe.com
**Website** | **vCard** | **Twitter** | **LinkedIn**

---

**From:** Bass, Jake
**Sent:** Wednesday, May 22, 2024 6:35 PM
**To:** Matthew Friedrichs <Matthew.Friedrichs@knobbe.com>; 'Jack Phillips' <jcp@pmhdelaw.com>;
'Megan C. Haney' <mch@pmhdelaw.com>; bill.zimmerman <bill.zimmerman@knobbe.com>;
Andrea.Cheek@knobbe.com; Carol Pitzel Cruz <Carol.Pitzel.Cruz@knobbe.com>; Linda Dunn
<Linda.Dunn@knobbe.com>; KMOB-Mira <KMOB-Mira@knobbe.com>
**Cc:** Astellas_MyrbetriqMWETeam <Astellas_MyrbetriqMWETeam@mwe.com>;
dsilver@mccarter.com; ajoyce@mccarter.com; kford@mccarter.com
**Subject:** RE: Correspondence from Simon Roberts

Counsel,

Your representation that Lupin will respond "in due course" to our May 15 letter is vague and dilatory. Please commit to responding by tomorrow. Otherwise, please advise as to your availability on Friday at 10:30 a.m. Eastern for a meet and confer regarding the issues raised in our May 15 letter. Please make sure your response addresses whether Lupin agrees to remove the confidentiality designation from its samples, else please be prepared to discuss this at the meet and confer as well.

Sincerely,

JACOB MICHAEL BASS
Associate
**McDermott Will & Emery LLP** One Vanderbilt Avenue, New York, NY 10017-3852
**Tel** +1 212 547 5680    **Email** jbass@mwe.com
**Website** | **vCard** | **Twitter** | **LinkedIn**

---

**From:** Matthew Friedrichs <Matthew.Friedrichs@knobbe.com>
**Sent:** Tuesday, May 21, 2024 10:24 AM
**To:** Bass, Jake <jbass@mwe.com>; 'Jack Phillips' <jcp@pmhdelaw.com>; 'Megan C. Haney'
<mch@pmhdelaw.com>; bill.zimmerman <bill.zimmerman@knobbe.com>;
Andrea.Cheek@knobbe.com; Carol Pitzel Cruz <Carol.Pitzel.Cruz@knobbe.com>; Linda Dunn
<Linda.Dunn@knobbe.com>; KMOB-Mira <KMOB-Mira@knobbe.com>
**Cc:** Astellas_MyrbetriqMWETeam <Astellas_MyrbetriqMWETeam@mwe.com>;
dsilver@mccarter.com; ajoyce@mccarter.com; kford@mccarter.com
**Subject:** RE: Correspondence from Simon Roberts

**[ External Email ]**
Counsel,

We are reviewing the letter with our client and will respond in due course.

Best regards,
Matt

**Matthew Friedrichs**
Associate
(212) 849-3029 **Direct**
**Knobbe Martens**

---

**From:** Bass, Jake <jbass@mwe.com>
**Sent:** Monday, May 20, 2024 9:23 PM
**To:** 'Jack Phillips' <jcp@pmhdelaw.com>; 'Megan C. Haney' <mch@pmhdelaw.com>; Bill Zimmerman <Bill.Zimmerman@knobbe.com>; Andrea Cheek <Andrea.Cheek@knobbe.com>; Matthew Friedrichs <Matthew.Friedrichs@knobbe.com>; Carol Pitzel Cruz <Carol.Pitzel.Cruz@knobbe.com>; Linda Dunn <Linda.Dunn@knobbe.com>; KMOB-Mira <KMOB-Mira@knobbe.com>
**Cc:** Astellas_MyrbetriqMWETeam <Astellas_MyrbetriqMWETeam@mwe.com>; dsilver@mccarter.com; ajoyce@mccarter.com; kford@mccarter.com
**Subject:** Re: Correspondence from Simon Roberts

Counsel,

We have not heard back from you concerning the issues raised in this letter. We would appreciate a prompt response.

Sincerely,

JACOB MICHAEL BASS
Associate
**McDermott Will & Emery LLP**  One Vanderbilt Avenue, New York, NY 10017-3852
**Tel** +1 212 547 5680     **Email** jbass@mwe.com
Website | vCard | LinkedIn

---

**From:** Bass, Jake <jbass@mwe.com>
**Sent:** Wednesday, May 15, 2024 3:56 PM
**To:** 'Jack Phillips' <jcp@pmhdelaw.com>; 'Megan C. Haney' <mch@pmhdelaw.com>; bill.zimmerman <bill.zimmerman@knobbe.com>; Andrea.Cheek@knobbe.com <Andrea.Cheek@knobbe.com>; Matthew.friedrichs@knobbe.com <Matthew.Friedrichs@knobbe.com>; Carol.PitzelCruz@knobbe.com <Carol.PitzelCruz@knobbe.com>; linda.dunn@knobbe.com <linda.dunn@knobbe.com>; KMOB-Mira@knobbe.com <KMOB-Mira@knobbe.com>
**Cc:** Astellas_MyrbetriqMWETeam <Astellas_MyrbetriqMWETeam@mwe.com>;

dsilver@mccarter.com <dsilver@mccarter.com>; ajoyce@mccarter.com <ajoyce@mccarter.com>; kford@mccarter.com <kford@mccarter.com>

**Subject:** Correspondence from Simon Roberts

Counsel,

Please see the attached correspondence.

Sincerely,

JACOB MICHAEL BASS
Associate
**McDermott Will & Emery LLP**  One Vanderbilt Avenue, New York, NY 10017-3852
**Tel** +1 212 547 5680    **Email** jbass@mwe.com
**Website** | **vCard** | **Twitter** | **LinkedIn**

*************************************************************************************************************************
This message is a PRIVATE communication. This message and all attachments are a private communication sent by a law firm and may be confidential or protected by privilege. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of the information contained in or attached to this message is strictly prohibited. Please notify the sender of the delivery error by replying to this message, and then delete it from your system. Our Privacy Policy explains how we may use your personal information or data and any personal information or data provided or made available to us. Thank you.
*************************************************************************************************************************

Please visit http://www.mwe.com/ for more information about our Firm.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

# EXHIBIT D

**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| | : |
| | : MDL Docket No. 1384 |
| | : Master Civil Action No. 00-2931 |
| | : |
| | : **OPINION & ORDER** |
| | : |
| IN RE GABAPENTIN PATENT LITIGATION | : |
| | : Date: May 9, 2011 |
| | : |
| | : |
| | : |

**HOCHBERG, District Judge:**

     This matter comes before the Court on Defendant Purepac's motion to stage the upcoming jury trial in this action.[1]  The Court has reviewed the parties' submissions pursuant to Fed. R. Civ. P. 78.

     Plaintiffs bring claims for infringement of U.S. Patent No. 6,054,482, entitled "Lactam-Free Amino Acids" (the "'482 Patent").  The '482 Patent discloses the manufacturing process for a substantially lactam-free form of gabapentin.[2]

---

[1] Defendants Teva and Ivax join in Purepac's motion.  See Calmann April 14, 2011 Ltr. at 1.  Eon originally joined in the motion but has since been dismissed from the case.

[2] Claim 7 of the '482 Patent claims:

A stable and pure pharmaceutical composition in unit dry medicinal dosage form consisting essentially of:

(I) an active ingredient which is gabapentin in the free amino acid, crystalline anhydrous form containing less than 0.5% by weight of its corresponding lactam and less than 20 ppm of an anion of a mineral acid and

(ii) one or more pharmaceutically acceptable adjuvants that do not promote

This Court presumes familiarity with the facts of this case, which have been set forth repeatedly over the eleven year history of this action.[3]

This action is set to proceed to a jury trial on May 16, 2011.

## DISCUSSION

Federal Rule of Civil Procedure 42(b) provides that, "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, cross claims, counterclaims, or third party claims...."

Under this rule, "a district court has broad discretion in separating issues and claims for trial as part of its wide discretion in trial management." Gardco Mfg., Inc. v. Herst Lighting Co., 820 F.2d 1209, 1212 (Fed. Cir. 1987).

"While courts have generally been more willing to bifurcate patent trials than other types of cases, bifurcation in these cases remains the exception rather than the rule." Innovative Office Prods. v. SpaceCo, Inc., No. 05-04037 (LFS), 2006 U.S. Dist. LEXIS 29439, at *3-4 (E.D. Pa. May 15, 2006); see also Graco, Inc. v. PMC Global, Inc., 08-1304 (FLW), 2009 U.S. Dist. LEXIS 26845, at *125 (D.N.J. Mar. 31, 2009); Fuji Mach. Mfg. Co., Ltd. v. Hover-Davis, Inc., 982 F. Supp. 923, 924 (W.D.N.Y. 1997).

"[T]he party seeking bifurcation bears the burden of showing that bifurcation is proper." Glennon v. Wing Enters., No. 10-0324 (JAP) (DEA), 2010 U.S. Dist. LEXIS 121547, at *38

---

conversion of more than 0.2% by weight of the gabapentin to its corresponding lactam form when stored at 25 s[degree]s C and an atmospheric humidity of 50% for one year.

[3] See e.g., In re Gabapentin Patent Litig., No. 00 Civ. 2931 (FSH), Opinion at 1-10 (D.N.J. Aug. 27, 2009) (Dkt. No. 683).

2

(D.N.J. Nov. 16, 2010); <u>see</u> <u>also</u> <u>Wyeth v. Abbott Labs.</u>, No. 08-230 (JAP), 08-1021 (JAP), 2010

U.S. Dist. LEXIS 116921, at *2 (D.N.J. Nov. 16, 2010); <u>Rodin Properties-Shore Mall, N.V. v.</u>

<u>Cushman & Wakefield of Pennsylvania, Inc.</u>, 49 F. Supp. 2d 709, 721 (D.N.J. 1999).

Purepac seeks not to bifurcate but to "stage" the trial.  Under Purepac's proposal, this

Court would hold a trial on liability issues, after which the jury would deliberate and render a

verdict.  If necessary, this Court would then immediately hold a trial on damages before the same

jury.

I.    <u>CONVENIENCE AND ECONOMY</u>

Purepac argues that staging the trial would make the parties' presentation on damages

shorter and more efficient because the jury's findings as to liability would shape the parameters

of the questions at issue in the damages phase of the trial.  For example, a jury could find that

some Defendants infringed and others did not or that certain of a defendant's products infringed

and others did not.  In a staged trial, the parties could include only the testimony and evidence

that remained relevant after these liability findings in the damages phase of the trial.

Despite this potential advantage to staging the trial, concerns of convenience and

efficiency, on balance, favor a traditional, unified trial.  The evidence and witnesses to be

presented on liability overlap substantially with those to be presented on damages.  Of the 31

witnesses Plaintiffs plan to call at trial,[4] 22 will testify as to both liability and damages.  Of the

49 witnesses Defendants plan to call at trial,[5] 10 will testify as to both liability and damages.

The subject matter at issue in both the liability and damages phases of the trial overlaps

---

[4]  <u>See</u> Plaintiff's April 14, 2011 Witness Chart.

[5]  <u>See</u> Defendants' April 14, 2011 Witness Chart.

and thus the overlap in witnesses and evidence is logical.  For example, technical experts designated to testify as to infringement issues may also testify as the availability of non-infringing alternatives in the "but for" world, as relevant to potential lost profits damages. Similarly, some of the testimony as to secondary considerations of the obviousness of the '482 Patent – including commercial success and long-felt need – will also be relevant to damages.

To require the 32 witnesses whose testimony is relevant to both phases of the trial to appear twice would be inefficient.  Moreover, to ask the jury to listen to repetitive testimony – or to synthesize information from the two phases of the trial, as opposed to considering it in a logical, unified manner – is unreasonable.

II.    JUROR CONFUSION

Purepac contends that in light of the complexity of the issues in this trial and the volume of testimony and exhibits, there is a particular likelihood of the jury being confused by the presentations in a single trial.  Plaintiffs, by contrast, argue that the jurors would be more confused should the trial be staged because the volume of overlapping material will require references to testimony and evidence the jury may have heard some time before.

The parties to this case are asking the jury to consider a large volume of material dealing with complex chemistry and mathematics.  The difficulty of the task presented to the jury would not be substantially reduced by staging the trial.[6]  It is the duty of the attorneys on both sides, as the Court has repeatedly stressed, to present their cases in a clear and logical manner, even as to complex issues.

---

[6] Moreover, while Purepac relies on several patent cases in which courts have chosen to bifurcate trials, Purepac fails to articulate what about this trial differentiates it from any other patent infringement trial and is so complex as to require staging.

III.   <u>PREJUDICE</u>

Purepac claims that Defendants will be prejudiced by a single trial in which both liability and damages are at issue because the jury will hear extensive testimony on damages, all of which will be predicated on the assumption that the jury will find infringement.  This is an issue in any trial in which the jury must make a finding as to both liability and damages and does not necessitate staging the trial.  <u>See e.g.</u>, <u>Synopsis, Inc. v. Magma Design Automation</u>, No. 05-701 (GMS), 2006 WL 1452803, at *4 (D. Del. May 25, 2006) ("[J]urors are quite adept at comprehending and adhering to the instructions they are given, even in the most complex factual and legal scenarios.").

The parties are already asking the jury to sit for long days and to hear dense and complex material for many hours.  To require the jury to continue to hear even more evidence from many of the same witnesses after they have already sat patiently through an extremely arduous period of jury service is not fair.

<b><u>CONCLUSION</u></b>

For the reasons set forth above, Purepac has failed to carry its burden of demonstrating that staging is proper based on the considerations set forth in Fed. R. Civ. P. 42(b).

**IT IS** on this 9th day of May, 2011,

**ORDERED** that Purepac's motion to stage the trial is **DENIED**.

The Clerk of the Court is directed to terminate the motion: Dkt. No. 1082.

_____/s/ Faith S. Hochberg_____
**Hon. Faith S. Hochberg, U.S.D.J.**

5

## **CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that true and correct copies of the foregoing document were caused to be served on September 23, 2024 on the following counsel in the manner indicated below.

### **VIA EMAIL:**

Pilar G. Kraman
Alexis N. Stombaugh
YOUNG CONAWAY STARGATT & TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
pkraman@ycst.com
astombaugh@ycst.com

Michael J. Gaertner
David B. Abramowitz
Carolyn A. Blessing
Emily L. Savas
Jonathan B. Turpin
Leah M. Brackensick
LOCKE LORD LLP
111 South Wacker Drive
Chicago, IL 60606
(312) 443-0700
mgaertner@lockelord.com
dabramowitz@lockelord.com
cblessing@lockelord.com
esavas@lockelord.com
jonathan.turpin@lockelord.com
leah.brackensick@lockelord.com

*Counsel for Defendants Zydus Pharmaceuticals (USA) Inc. and Zydus Lifesciences Limited*

ME1 50131007v.1

**<u>VIA EMAIL:</u>**

John C. Phillips, Jr.
Megan C. Haney
PHILLIPS, MCLAUGHLIN & HALL, P.A.
1200 North Broom Street
Wilmington, DE 19806
jcp@pmhdelaw.com
mch@pmhdelaw.com

William R. Zimmerman
Andrea Cheek
Matthew S. Friedrichs
KNOBBE, MARTENS, OLSON & BEAR, LLP
1717 Pennsylvania Ave. N.W., Ste. 900
Washington D.C. 20006
Tel: (202) 640-6400
Fax: (202) 640-6401
Bill.Zimmerman@knobbe.com
Andrea.Cheek@knobbe.com
Matthew.friedrichs@knobbe.com

Carol Pitzel Cruz
KNOBBE, MARTENS, OLSON & BEAR, LLP
925 Fourth Avenue, Suite 2500
Seattle, WA 98104
Tel: (206) 405-2000
Fax: (206) 405-2001
Carol.Pitzel.Cruz@knobbe.com

*Counsel for Defendants Lupin Ltd. and Lupin Pharmaceuticals, Inc.*

*/s/ Daniel M. Silver*
Daniel M. Silver (#4758)